## UNITED STATES DISTRICT COURT
## DISTRICT OF KANSAS

| | |
|---|---|
| Kenneth P. Kellogg, Rachel Kellogg and Kellogg Farms, Inc., Roland B. Bromley and Bromley Ranch, LLC, individually, and on behalf of all others similarly situated, | File No: 18-cv-02408-JWL-JPO |

Plaintiffs,

v.

Watts Guerra, LLP, Daniel M. Homolka, P.A., Yira Law Office LTD, Hovland and Rasmus, PLLC, Dewald Deaver, P.C., LLO, Givens Law, LLC, Mauro, Archer & Associates, LLC, Johnson Law Group, Wagner Reese, LLP, VanDerGinst Law, P.C., Patton, Hoversten & Berg, P.A., Cross Law Firm, LLC, Law Office of Michael Miller, Pagel Weikum, PLLP, Wojtalewicz Law Firm, Ltd., Mikal C. Watts, Francisco Guerra, and John Does 1-50,

Defendants.

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS BY DEFENDANTS WATTS GUERRA LLP, MIKAL C. WATTS, FRANCISCO GUERRA, DANIEL M. HOMOLKA, P.A., YIRA LAW OFFICE, LTD., HOVLAND & RASMUS, PLCC, DEWALD DEAVER, P.C., LLO, PATTON, HOVERSTEN & BERG, P.A., WOJTALEWICZ LAW FIRM, LTD., MAURO, ARCHER & ASSOCIATES, LLC, JOHNSON LAW GROUP, WAGNER REESE, LLP, VANDERGINST LAW, PC, LAW OFFICE OF MICHAEL MILLER AND PAGELWEIKUM, PLLP**

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................................. 1

STATEMENT OF THE CASE .......................................................................................... 5

STATEMENT OF FACTS ................................................................................................ 6

    A.    The parties and claims in this action ............................................................ 6

    B.    Plaintiffs' claimed injuries .......................................................................... 9

    C.    The Syngenta litigation and settlement ....................................................... 9

QUESTIONS PRESENTED ............................................................................................ 15

STANDARD OF REVIEW ............................................................................................. 16

ARGUMENT ................................................................................................................... 19

I.    All Claims Should Be Dismissed For Lack of Standing ....................................... 19

    A.    Plaintiffs have no injury, much less a live one, from Watts Guerra's handling of their Syngenta claims .............................................................. 21

    B.    Plaintiffs have not, and never will, pay double fees .................................. 26

    C.    Plaintiffs may not represent, much less derive standing from absent members of the putative class ................................................................... 30

II.    Plaintiffs Waived Any Objection to Fee Applications Made Pursuant to the CSA—And No Fee-Related Claim Is Ripe .......................................................... 32

III.    The Fraud-Based Claims Suffer From Several Fatal Flaws ................................... 37

    A.    Plaintiffs have not pleaded pecuniary loss ................................................ 37

    B.    Plaintiffs have failed to plead their claims with particularity .................... 38

    C.    The alleged misrepresentations regarding Watts Guerra's expectations for the Syngenta litigation are not actionable ........................ 40

    D.    The alleged misrepresentations regarding Watts Guerra's professional judgment are too vague and indefinite to be actionable, and are implausible in any event ................................................................ 41

E.      The aiding and abetting claim fails because Plaintiffs have not
        alleged Defendants knew their conduct constituted a breach of duty......... 43

IV.     The Consumer Protection Claims Fail as a Matter of Law .................................... 44

A.      Attorneys have no liability under the Minnesota Consumer
        Protection Statutes........................................................................................ 44

B.      Plaintiffs' request for injunctive relief is incidental to their claim ............. 45

C.      Plaintiffs have not pleaded that they relied on alleged misstatements
        that were made in Minnesota ...................................................................... 47

V.      Plaintiffs May Not Assert Remedies As Independent Claims For Relief.............. 48

CONCLUSION ............................................................................................................. 49

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>

*Arizonans for Official English v. Arizona*, 520 U.S. 43 (1997)…..………………….… 24

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)……………………………….…………..… 19, 42

*Aulick v. Skybridge Americas, Inc.*, 860 F.3d 613 (8th Cir. 2017)…….…………..…… 40

*Aviva Sports, Inc. v. Fingerhut Direct Mktg., Inc.*, No. CIV. 09-1091
JNE/JSM, 2012 WL 3229299 (D. Minn. Aug. 6, 2012)…………...………………..…... 45

*Baycol Prod. Litig.*, 732 F.3d 869 (8th Cir. 2013)……………………………….. 39

*Beardmore v. Am. Summit Fin. Holdings, LLC*, No. CIV.01-948, 2001
WL 1586785 (D. Minn. Dec. 10, 2001)…………....……………………………..… 49

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)……………………………… 18, 42

*Benedict v. Altria Grp., Inc.*, 241 F.R.D. 688  (D. Kan. 2007)…………………..……… 31

*Beyers v. Richmond*, 594 Pa. 654 (Pa. 2007)…………………………………………… 44

*Browe v. Evenflo Co.*, No. CIV. 14-4690 ADM/JJK, 2015 WL
3915868 (D. Minn. June 25, 2015)………………...…………………………………… 40,41

*Buetow v. A.L.S. Enterprises, Inc.*, 888 F. Supp. 2d 956 (D. Minn. 2012)………….. 45, 46

*Burke v. Woods*, 85 F.3d 640 (10th Cir. 1996)…………………………………….. .18, 38

*Bykov v. Radisson Hotels Int'l, Inc.*, 221 F. App'x 490 (8th Cir. 2007)………………... 48

*Caswell*, 905 N.W.2d 507 (Minn. App. 2017)……...…………………………..….. 26

*CCPS Transp., LLC v. Sloan*, 611 Fed. Appx. 931 (10th Cir. 2015)…………………… 48

*Chafin v. Chafin*, 568 U.S. 165 (2013)……………………………………………...…. 24

*Ciba-Geigy Corp., USA*, 317 F.3d 1097 (9th Cir. 2003)….………………….....… 38, 39

*Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013)……….……………………... 27

*Corrugated Container Antitrust Litig.*, 643 F.2d 195  (5th Cir. 1981)……………...….. 33

*Council of & for the Blind of Delaware Cnty. Valley, Inc. v. Regan*,
709 F.2d 1521 (D.C. Cir. 1983)…………………………………………………...21,22

*Davis v. Re-Trac Mfg. Corp.*, 276 Minn. 116, 117, 149 N.W.2d 37 (1967)…………… 38

*Diet Drugs (Phentermine / Fenfluramine / Dexfenfluramine) Prod. Liab. Litig.*,
431 F.3d 141 (3d Cir. 2005)……………………………………………………….. 33

*Disciplinary Action against Montez*, 812 N.W.2d 58 (Minn. 2012)….…………….....… 25

*Dunnigan v. Fed. Home Loan Mortg. Corp.*, 184 F. Supp. 3d 726
(D. Minn. 2016)……………………………………………………………....……. 38

*Faricy Law Firm, P.A. v. API, Inc. Asbestos Settlement Trust*, 912 N.W.2d 652
(Minn. 2018)…………………………………………………………………… 21, 26, 27

*Fountain v. Oasis Legal Fin., LLC*, 86 F. Supp. 3d 1037 (D. Minn. 2015)…………… 25

*Fry Bros. Corp. v. Dep't of Housing and Urban Development*, 614 F.2d 732
(10th Cir. 1980)…………………………………………………………....…… 49

*Golden v. Pac. Mar. Ass'n*, 786 F.2d 1425 (9th Cir. 1986) ………………………........ 33

*Handeen v. Lemaire*, 112 F.3d 1339 (8th Cir. 1997)…………………………….....… 49

*Hill v. Vanderbilt Capital Advisors, LLC*, 702 F.3d 1220 (10th Cir. 2012)…………… 20

*Holt v. United States*, 46 F.3d 1000 (10th Cir. 1995)……………………………....… 17

*Hoover Slovacek LLP v. Walton*, 206 S.W.3d 557 (Tex. 2006)……………………….. 26

*Illinois Farmers Ins. Co. v. Guthman*, No. 17-270, 2017 WL 3971867
(D. Minn. Sept. 7, 2017)………………………………………………………....... 46

*Initiative & Referendum Inst. v. Walker*, 450 F.3d 1082  (10th Cir. 2006)………… 27, 28

*Ireland v. Eckerly*, No. C5-88-1193, 1989 WL 462  (Minn. App. Jan. 10, 1989)…....… 44

*Jackson v. Reiling*, 311 Minn. 562, 563, 249 N.W.2d 896 (1977)…………………..….. 38

*Jacobsen v. Deseret Book Co.*, 287 F.3d 936 (10th Cir. 2002)………………………… 19

*Jenson v. Touche Ross & Co.*, 335 N.W.2d 720 (Minn. 1983)…………………………… 44

*Karnatcheva v. JPMorgan Chase Bank, N.A.*, 871 F. Supp. 2d 834
(D. Minn. 2012)…………………………………………………………………….. 3

*Klinge v. Gem Shopping Network, Inc.*, No. 12-CV-2392 JNE/SER,
2014 WL 7409580 (D. Minn. Dec. 31, 2014)…….………………………………….. 45

*Koehler v. Brody*, 483 F.3d 590 (8th Cir. 2007)…………………………………....… 33

*Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375 (1994)………………………...…… 16

*L & H Airco, Inc. v. Rapistan Corp.*, 446 N.W.2d 372 (Minn. 1989)…………...…... 25

*LaRoe v. FCA US, LLC*, No. 17-2487, 2018 WL 3105378
 (D. Kan. June 25, 2018)…………………………………………………………… 30, 31

*Laskey v. Int'l Union*, 638 F.2d 954 (6th Cir.1981)………………………………....…… 33

*Lawler v. Dunn*, 145 Minn. 281, 176 N.W. 989 (1920)…………………………...….… 21

*Lennartson v. Anoka-Hennepin Indep. Sch. Dist. No. 11*, 662 N.W.2d
125 (Minn. 2003)………………………………………………………………….… 44

*Love v. Anderson*, 240 Minn. 312, 61 N.W.2d 419 (1953)…………………………...… 49

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992)……………………………….... 20

*Ly v. Nystrom*, 615 N.W.2d 302 (Minn. 2000)…………………………………....…… 45

*Maestas v. Lujan*, 351 F.3d 1001 (10th Cir. 2003)………...…………………………… 17

*Marker v. Greenberg*, 313 N.W.2d 4 (Minn. 1981)……………………………………... 3

*Martens v. Minnesota Min. & Mfg. Co.*, 616 N.W.2d 732 (Minn. 2000)…………….… 40

*Martin v. Reid*, 818 F.3d 302 (7th Cir. 2016)………………………………………..... 37

*McDonald v. Stewart,* 182 N.W.2d 437 (1970)………………………………………….. 3

*McGregor v. Gibson*, 248 F.3d 946 (10th Cir. 2001). ………………………………… 19

*MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118 (2007)……………………………….. 27

*Merrill Lynch Bus. Fin. Servs., Inc. v. Nudell*, 363 F.3d 1072 (10th Cir. 2004)……….. 17

*Morgan v. McCotter*, 365 F.3d 882 (10th Cir. 2004)………………………………. 20, 28

*Moua v. Jani–King of Minn., Inc.*, 613 F.Supp.2d 1103 (D. Minn. 2009)……...……… 40

*Murphy v. F.D.I.C.*, 208 F.3d 959 (11th Cir. 2000)……………………………….…. 17

*Murr Plumbing, Inc. v. Scherer Bros. Fin. Servs. Co.*, 48 F.3d 1066
(8th Cir.1995)……………………………………………………………………...…… 39

*Nelson v. Am. Family Mut. Ins. Co.*, 262 F. Supp. 3d 835 (D. Minn. 2017)………...…… 38

*New Mexicans for Bill Richardson*, 64 F.3d at 1495 (10th Cir. 1995) …………....... 16, 36

*Nike, Inc. v. Already, LLC*, 663 F.3d 89 (2d Cir. 2011)…………………..…………….. 27

*OmegaGenesis Corp. v. Mayo Found. for Med. Educ. & Research*, 851 F.3d 800
(8th Cir. 2017)…………………………………………………………………….….... 39

*O'Shea v. Littleton*, 414 U.S. 488 (1974)………………………………...………...….... 31

*Parkhill v. Minnesota Mut. Life Ins. Co.*, 995 F. Supp. 983
(D. Minn. 1998)………………………………………………………………….….. 47, 48

*Prier v. Steed*, 456 F.3d 1209 (10th Cir. 2006)…………………………………….… 49

*Rea v. Selbo*, No. C9-97-295, 1997 WL 435882 (Minn. App. Aug. 5, 1997)……....…… 38

*Rector v. City & Cnty. of Denver*, 348 F.3d 935 (10th Cir. 2003)…………….......…… 31

*Reno v. Catholic Social Services, Inc.*, 509 U.S. 43 (1993)……...………….....….. 36, 37

*Rilley v. MoneyMutual, LLC*, No. CV 16-4001 (DWF/LIB),
2017 WL 3822727 (D. Minn. Aug. 30, 2017)…………………………………...…. 38, 43

*Ritchie v. Deslauriers*, Case No. 17-3003, 2017 WL 4758946
(D. Kan. Oct. 20, 2017)…………………………………………………………....... 16, 17

*Rognlien v. Carter*, 443 N.W.2d 217 (Minn. App. 1989)……………………………… 40

*Sanchez v. U.S. Dept. of Energy*, 870 F.3d 1185 (10th Cir. 2017)………………...…… 18

*Schlesinger v. Reservists Comm. to Stop the War*,
418 U.S. 208 (1974)……………………………………………………...… 30, 31

*Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479 (1985)………………………………...… 38

*Select Comfort Corp. v. Sleep Better Store, LLC*, 796 F. Supp. 2d 981
(D. Minn. 2011)…………………………………………………………………...… 39

*Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26 (1976)……………………………… 30

*Simonson v. Ameriquest Mortg. Co.*, No. 06-2943 ADMAJB,
2006 WL 3463000 (D. Minn. Nov. 30, 2006). …..……………………………....... 46

*Sizova v. Nat'l Institute of Standards & Tech.*, 282 F.3d 1320
(10th Cir. 2002). …………………………………………………………………….. 17

*S. Utah Wilderness Alliance v. Smith*, 110 F.3d 724 (10th Cir. 1997)……………….... 25

*S. Utah Wilderness Alliance v. Palma*, 707 F.3d 1143 (10th Cir. 2013)…………....… 36

*Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016)…………………………………….. 19, 20

*State Farm Mut. Ins. Co. v. Boellstorff*, 540 F.3d 1223 (10th Cir. 2008)…………... 21, 23

*Stewart v. Mitchell Transp., Inc.*, 197 F. Supp. 2d 1310 (D. Kan. 2002)…………...…... 17

*Stowman Law Firm, P.A.*, 870 N.W.2d 755 (Minn. 2015)…………………………....... 27

*Summers v. Earth Island Inst.*, 555 U.S. 488 (2009). …………………………………… 20

*Summit Recovery, LLC v. Credit Card Reseller, LLC*, No. CIV.08-5273(DSD/JSM),
2010 WL 1427322 (D. Minn. Apr. 9, 2010)…………………………………....... 46

*Tatone v. SunTrust Mortg., Inc.*, 857 F.Supp.2d 821 (D. Minn. 2012)…………...….… 39

*Taylor v. Keycorp*, 680 F.3d 609 (6th Cir. 2012)………………………………… 23, 24, 25

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007)…………...……... 19

*Thayer v. Planned Parenthood of Heartland*, 765 F.3d 914
(8th Cir. 2014)………………………………………………………...…………… 39

*Thomas v. Albright*, 77 F. Supp. 2d 114 (D.D.C. 1999)…………………………...…..... 33

*Valspar Refinish, Inc. v. Gaylor's, Inc.*, 764 N.W.2d 359 (Minn. 2009)………..…...….. 38

*Van Woudenberg v. Gibson*, 211 F.3d 560 (10th Cir. 2000)…………………………… 19

*Venier v. Forbes*, 223 Minn. 69, 75, 25 N.W.2d 704 (1946)…………………………… 38

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011)…………………………….…. 30

*Warnick v. Cooley*, 895 F.3d 746 (10th Cir. 2018)……………………………...………… 19

*Warth v. Seldin*, 422 U.S. 490 (1975)………………………………………...…………… 45

*Wyly v. Weiss*, 697 F.3d 131 (2d Cir. 2012)………………………………...……..…… 33

*Zayed v. Associated Bank, N.A.*, 779 F.3d 727 (8th Cir. 2015)…………...……….... 38, 43

**Statutes**

18 U.S.C. § 1962……………………………………………………………….. 17

28 U.S.C. §§ 2201 and 2202…………………………………………………… 48

Minn. Stat. § 8.31…………………………………………………………… 45, 47

Minn. Stat. § 325F.67……………………………………………………….. 47

Minn. Stat. § 325F.68………………………………………………………... 44

Minn. Stat. §§ 481.07  and 481.071……………………………………..49

**Miscellaneous**

Class Settlement Agreement §§ 2.44, 2.45, 2.46……...……………………..……… 11

Class Settlement Agreement § 7.2…...……………………………..…. 4, 32, 36

Class Settlement Agreement § 7.2.2…………………………………....…2, 12

Class Settlement Agreement § 9.18……………………………………...….. 12

## INTRODUCTION

Plaintiffs in this case are farmers who hired (and have since terminated) Defendant Watts Guerra LLP and certain of its associate counsel to assert their MIR 162 claims against Syngenta.  Plaintiffs are also members of the nationwide settlement class whose Syngenta claims likely will be resolved by the Agrisure Viptera/Duracade Class Settlement Agreement (ECF No. 3507-2 (filed March 12, 2018) ("CSA")), now pending before this Court for final approval in the main MDL 2591 proceedings.[1]

As for Plaintiffs' claims against Watts Guerra and the other Defendant law firms in this tagalong action, they fail for lack of injury.  Through their new counsel, Plaintiffs attempt to paint a picture of improper solicitation by Watts Guerra and its hundreds of associate counsel.[2]  The Court will recognize the allegations.  *Compare* ECF No. 2915 (filed Feb. 17, 2017) (memorandum filed by Kansas Co-Lead Counsel seeking to enjoin solicitations of class members).  In the particular version asserted here, Plaintiffs complain that they never should have hired Watts Guerra; they would have been better off as absent class members; Watts Guerra and the other attorney defendants committed fraud by suggesting otherwise and by promising to litigate Plaintiffs' claims consistent

---

[1] Except as otherwise noted, all "ECF No. __" citations refer to filings on the master docket for Case No. 2:14-md-02591-JWL-JPO.

[2] Notably, as established by the retainer agreements attached as Exhibits to their Complaint, Plaintiffs have never been represented by many of the Defendants named in this action, including: Yira Law Office, Hovland and Rasmus, PLLC, Dewald Deaver, PC, LLO, Givens Law, LLC, Mauro, Archer & Associates, LLC, Johnson Law Group, Wagner Reese, LLP, VanDerGinst Law, PC, Patton Hoversten & Berg, PA, and Wojtalewicz Law Firm, Ltd. (hereinafter collectively referred to as "Non-Retained Defendants").

1

with those attorneys' own best judgment; Plaintiffs were improperly excluded from certified litigation classes without their informed consent; and they are at risk of having to pay two sets of attorneys (*i.e.*, a contract fee to Watts Guerra, on top of common-benefit fees ordered by the Court under the CSA).

Plaintiffs' claims are devoid of merit. In a series of fee and expense submissions already made pursuant to the CSA, Watts Guerra has shown the quality of the work performed in the Syngenta litigation by itself and its associate counsel ("the Watts Guerra Group").[3]   In due course, the Court will assess that showing and make an appropriate award pursuant to CSA § 7.2.2. But Watts Guerra's Fee Application is not, and cannot be, at issue in this collateral proceeding. Nor does the quality of Watts Guerra's work make any difference for present purposes. In fact, the Court need not reach the implausibility of Plaintiffs' allegations, or any of Plaintiffs' other pleading failures, because the Court lacks subject matter jurisdiction: Plaintiffs have suffered no injury and thus lack Article III standing to proceed with any of their claims.

Plaintiffs have two theories of injury. ***First***, they say they were improperly prevented from litigating their Syngenta claims as part of a class. But ***no one*** is recovering through the certified litigation class from which Plaintiffs claim to have been excluded, there is no separate settlement track for class members who previously retained counsel, and it is indisputable that Plaintiffs are members of the CSA settlement class. Further, the class from which Plaintiffs claim to have been excluded—the nationwide

---

[3] *See generally* ECF Nos. 3580 (WG Fee App.), 3611 (WG Fee Mem.), 3692 (WG Fee Resp.), 3722 (WG Fee Reply).

Lanham Act class—*lost* its one and only claim on summary judgment.  ECF No. 3501. Thus any prior class exclusion caused these Plaintiffs no injury—and if it did, it is moot.

*Second*, Plaintiffs claim that, having hired Watts Guerra to assert their claims against Syngenta, they now are at risk of having to pay double attorney fees—a contract fee to Watts Guerra, and a common-benefit fee to class counsel.  But ***Plaintiffs have not paid any fee, to anyone***—and they ***never*** will pay a double fee.[4]  Even if the Court were to adopt a framework under the CSA that might allow that result for other class members (which is unlikely), Watts Guerra has no intention of allowing its clients to pay more than absent class members.   Further, Plaintiffs here are *former* clients of Watts Guerra— against whom Watts Guerra has not sought, and never will seek, to enforce any rights arising from its contingency agreement.  Indeed, not only is there no present controversy between the parties over any sort of fee, but Plaintiffs had a right to terminate their contingent fee agreements with Defendants—and did so before any recovery was finalized.  Accordingly, they cannot be subject to a breach of contract suit as a matter of law.  The Complaint asks the Court to terminate their fee agreements, but that deed is already done.

---

[4] Nor was there *ever* a risk Plaintiffs would have to pay Non-Retained Defendants because those attorneys never represented Plaintiffs and there was no fee contract between them.  Furthermore, having no attorney-client relationship with Plaintiffs, Non-Retained Defendants are immune from Plaintiffs' breach of fiduciary duty and attorney misconduct claims.  *McDonald v. Stewart,* 182 N.W.2d 437, 440 (1970) ("attorney acting within the scope of his employment as an attorney is immune from liability to third persons for actions arising out of that professional relationship"); *Marker v. Greenberg*, 313 N.W.2d 4, 5 (Minn. 1981) ("The general rule in legal malpractice is that an attorney is liable for professional negligence only to a person with whom the attorney has an attorney-client relationship …."); *Karnatcheva v. JPMorgan Chase Bank, N.A.*, 871 F. Supp. 2d 834, 839 (D. Minn. 2012), *aff'd,* 704 F.3d 545 (8th Cir. 2013) (same).

Equally fatal, Plaintiffs may not use this proceeding to mount a collateral attack on Watts Guerra's application for a Fee & Expense Award pursuant to CSA § 7.2—and any challenge to any *other* fee Defendants might conceivably seek in the future is obviously unripe.  As class members, Plaintiffs received notice of the CSA, including its provisions for attorney fees, and the schedule for filing objections.  Yet Plaintiffs filed no objection. That is waiver.  Nor, in any event, may class members (like Plaintiffs) use a collateral proceeding (like this one) to relitigate fees awarded pursuant to a class action settlement (like those Watts Guerra has sought).  Plaintiffs may argue that Watts Guerra *could* seek a fee from them in the future, on top of whatever awards the Court may make under the CSA.  But it will not.  And even if such threat of "injury" were sufficiently concrete to support standing (which it is not), it would not be ripe for adjudication now.

Plaintiffs' claims also fail under a Rule 12(b)(6) analysis.  **First**, Plaintiffs' fraud-based claims fail for several reasons, including because Plaintiffs have not alleged a pecuniary loss of any kind, have failed to plead with particularity, do not identify the specific misrepresentations on which each of them allegedly relied, and complain of non-actionable "misstatements", including, for example, Watts Guerra's alleged expression of its opinion as to the potential outcome of the Syngenta MDL.  **Second**, Plaintiffs' claims under the Minnesota Consumer Protection Statutes fail as a matter of law for several reasons, including because those statutes do not apply to professional services, such as those at issue here.  **Third**, at least two of the "Counts" Plaintiffs assert are remedies, not independent causes of action.

4

In short, Plaintiffs' claims cannot proceed as presently pleaded, but more fundamentally, none of the alleged conduct has caused Plaintiffs any concrete injury— nor will it, ever.  The Complaint should be dismissed in its entirety, with prejudice.

## STATEMENT OF THE CASE

This case is a putative class action brought by a few of Defendants' former clients, related to the attorney fees that Defendants may receive as part of their representation of some 60,000 farmers in a mass tort litigation against Syngenta AG.  (*See generally* Complaint, ECF No. 1, Case No. 18-cv-1082 (D. Minn.) (filed April 24, 2018) ("Compl.")).   The 137-page Complaint, although voluminous, largely rests on two general alleged injuries: that Plaintiffs were wrongfully excluded from the Syngenta classes initially recognized by this Court and the Minnesota state court, and wrongfully bound to contingent-fee retainer agreements with certain Defendants that will result in them paying more fees than class members who had not signed such agreements.  (*E.g.*, Compl. ¶ 2.)

The Complaint was filed in the District of Minnesota on April 24, 2018. Proceedings since then have been devoted to whether this case should be transferred to this Court.   Specifically, on April 30, 2018, Defendants identified this action as a potential tagalong action to the Judicial Panel on Multidistrict Litigation ("JPML").   In response, the JMPL issued Conditional Transfer Order No. 85 in *In re: Syngenta AG MIR162 Corn Litigation*, which directed transfer to this Court.  Plaintiffs objected to transfer, Defendants moved the Minnesota court to stay proceedings pending the JPML's resolution of that objection, and the Minnesota court granted that stay.  (*See* ECF No. 83

at 5, Case No. 18-cv-1082 (D. Minn. July 16, 2018)).  On August 1, 2018, the JPML overruled Plaintiffs' objection and directed transfer to this Court.  (Transfer Order, ECF No. 791, Case MDL No. 2591).  Plaintiffs then moved the JPML to reconsider, Defendants moved to stay proceedings in this Court pending the JPML's resolution of that motion, and this Court granted the stay.  (ECF No. 97, at 2, Case No. 18-2408-JWL-JPO (D. Kan.)).  On October 3, 2018, the JPML denied the motion to reconsider.  (ECF No. 801, Case MDL No. 2591).  On October 17, 2018, Plaintiffs filed a petition to the Tenth Circuit seeking a writ of mandamus ordering the JPML to return this action to Minnesota.

In the meantime, however, by order entered October 5, 2018, this Court established an October 22, 2018 deadline to answer or otherwise respond to the Complaint.  (*See* Notice of Order Lifting Stay, ECF No. 3759).  Accordingly, Defendants now move to dismiss Plaintiffs' Complaint pursuant to Rule 12(b)(6) for failure to state a claim and, more fundamentally, pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction.

## STATEMENT OF FACTS

### A. The parties and claims in this action

This action arises out of nationwide litigation involving Syngenta AG ("Syngenta"), which commercialized "genetically-modified ('GMO') corn seed products known as Viptera and Duracade (containing the trait MIR 162) without approval of such corn by China, an expert market." (Compl. ¶ 5).  Corn tainted by the MIR 162 trait became comingled throughout the United States corn supply, prompting China to reject

6

all corn imports from the United States and causing corn prices to drop.  (*Id.*)  As this Court well knows, that price drop sparked thousands of lawsuits filed in federal and state court.  (*Id.*)

This action asserts claims against certain lawyers who represented injured farmers on their claims against Syngenta.  Plaintiffs are North Dakota farmers and their operating entities—Kenneth and Rachel Kellogg, together with Kellogg Farms, Inc. ("the Kelloggs"); and Roland Bromley, together with Bromley Ranch, LLC ("Bromley"). (Compl. ¶¶ 28-29).  Defendants are Watts Guerra LLP, its partners Mikal Watts and Francisco Guerra, and many of Watts Guerra's associate counsel, including Daniel M. Homolka, P.A., as well as the previously-identified Non-Retained Defendants who never represented Plaintiffs.  Collectively, Defendants represent tens of thousands of farmers on claims against Syngenta, including through more than 57,000 individual claims filed in Minnesota state court (*see id.* ¶¶ 1, 31, 46-47), and whose efforts were instrumental in obtaining and closing the $1.51 billion settlement now awaiting final approval (*see generally* ECF Nos. 3580-5 (Watts Decl.) and 3722-4 (Watts Reply Decl.) (detailing the Watts Guerra Group's work on the Syngenta litigation and settlement)).

The gravamen of Plaintiffs' Complaint, which includes fourteen "Counts" under Minnesota and Federal law, is that Watts Guerra and its associate counsel engaged in fraud and malpractice in soliciting and representing farmers on their Syngenta claims. But within Plaintiffs' 137-page, 360-paragraph Complaint, only three paragraphs plead facts related to Plaintiffs themselves.  Though much of the Complaint is directed to various town hall meetings and blog posts through which farmers were purportedly

misled, Plaintiffs do not allege that *they* attended such meetings, or viewed or relied upon such statements.  For example, the Complaint contains allegations related to a town hall meeting with farmers in Storm Lake, Iowa (Compl. ¶ 82), yet does not allege that the Kelloggs or Bromley—who are North Dakota farmers—were present.  Similarly, the numerous allegations related to blog posts give no indication that Plaintiffs had read, much less relied or acted upon the posts.  (*E.g.*, Compl. ¶¶ 88, 112, 120, 144).

As to Plaintiffs themselves, the only alleged facts are that Plaintiffs were represented by Watts Guerra and certain other Defendants.  Specifically, the Complaint alleges that the Kelloggs are North Dakota corn farmers who signed a contingent-fee retainer agreement with four Defendants—Watts Guerra; Law Office of Michael Miller; Cross Law Firm, LLC; and Pagel Weikum, LLP—on May 16, and 21, 2015. (Compl. ¶¶ 28, 55 & Ex. 3).  Those Defendants caused the filing of a lawsuit on the Kelloggs' behalf in the Minnesota MDL on June 18, 2015.  (*Id.* ¶ 28).  Bromley also is a North Dakota farmer.  (Compl. ¶ 29).  He signed a contingent-fee retainer agreement with two Defendants—Watts Guerra and Daniel M. Homolka, P.A.—in April 2015.  (Compl. ¶¶ 29, 55 & Ex. 1).  Those Defendants caused the filing of a lawsuit on Bromley's behalf in the Minnesota MDL on May 1, 2015.  (*Id.* ¶ 29).

But Plaintiffs are no longer represented by any of the Defendants.  Bromley terminated Watts Guerra and Homolka in May 2016.  (*See* Substitution of Counsel, Ex. A to Affidavit of Christopher L. Goodman ("Goodman Aff."), filed herewith).  The Kelloggs terminated Watts Guerra, Miller, Cross, and Pagel Weikum no later than April 2018.  (*See* Correspondence from Attorney Douglas J. Nill, Ex. B to Goodman Aff., filed

herewith).  Upon request from Watts Guerra's counsel, Plaintiffs new counsel supplied

Defendants with a letter signed by the Kelloggs requesting the transfer of their file.  (*See*

Correspondence from Attorney Nill, Ex. C to Goodman Aff., filed herewith).

### B.    Plaintiffs' claimed injuries

Notably, Plaintiffs do not allege that any Defendant has invoiced them for services

rendered, or made any suggestion that it ever would invoice them.  Plaintiffs also do not

claim that any Defendant protested or otherwise interfered with their decision to

terminate Defendants and retain new counsel.

Rather, Plaintiffs complain that, because of Defendants' alleged wrongdoing, (1)

Plaintiffs were excluded from Syngenta class proceedings (Compl. ¶¶ 2, 14-16, 28-29,

54, 85, 106), and subjected to an "odious" two-prong settlement under the Term Sheet

that would have transferred their claims to Texas state court (*id.* ¶¶ 17-18, 135, 192-93,

223); and (2) they might be forced to pay two sets of lawyers, with common-benefit fees

owed to class counsel and a contingency fee owed to Watts Guerra (*id.* ¶¶ 19, 136, 209).

### C.    The Syngenta litigation and settlement

Certain procedural facts from the main Syngenta litigation bear on the claims and

jurisdictional issues in this tagalong action.

1.    A nationwide Lanham Act litigation class was proposed on June 15, 2016,

and certified by this Court on September 26, 2016.  (*See* (ECF No. 2156 (Motion to

Certify Class); ECF No. 2547 (Memorandum and Order)).  Plaintiffs allege that Watts

Guerra clients who filed claims before June 15, 2016 were excluded from the certified

9

class (Compl. ¶ 152), but that is not quite right; rather, the Court certified the following class:

> Asserting claims under the Lanham Act, a nationwide class consisting of all corn producers in the United States who priced any corn for sale after November 18, 2013; excluding … producers who filed suit in Minnesota state court on or before June 15, 2016, *and who are represented by attorneys who executed a joint prosecution agreement with plaintiffs' co-lead counsel*.

(ECF No. 2547 at 30–31 (emphasis added)).

2.      On April 5, 2017, this Court granted summary judgment in Syngenta's favor *against* the claims of the nationwide Lanham Act class.  (ECF No. 3051 at 7, 42).

3.      Neither this Court nor the Minnesota state court has certified a litigation class of farmers from North Dakota.  (*See* ECF No. 2547 at 32-33 (certifying 8 statewide-classes of corn farmers from states other than North Dakota); Compl. ¶ 174 (conceding that class certified in Minnesota consists of "Minnesota producers…")).

4.      Plaintiffs are members of the nationwide settlement class whose claims are governed by the CSA, now pending before the Court for final approval.  In granting preliminary approval, the Court provisionally certified four settlement subclasses, including a class comprised of:

> Any Producer in the United States that, during the Class Period owned any Interest in Corn in the United States priced for sale during the Class Period, excluding Producers that, at any time prior to the end of the Class Period, purchased Agrisure Viptera Corn Seed or Agrisure Duracade Corn Seed and produced Corn grown from Agrisure Viptera Corn Seed and/or Agrisure Duracade Corn Seed.

(ECF No. 3532 at 3).  Plaintiffs concede they are members of this class.  (Compl. ¶ 19 ("Farmers, as class members"), ¶ 209 (same)).

Notably, in rejecting certain objections and granting preliminary approval to the CSA, this Court acknowledged the classes it had previously certified, and held that class members who opted out of those litigation classes would *not* automatically be opted out again.  (*See* ECF No. 3531 at 6, 11-12).  As the Court explained:  "A newly amended master complaint has been filed, with new class definitions, and if the Court certifies a class that includes a plaintiff, that plaintiff is subject to the class action procedure."  (*Id.* at 11).  Rejecting the argument that "that previous opt-outs should not have to opt out again," the Court held that another opt out would indeed be required, explaining that "such a requirement is reasonable because it allows such plaintiffs a second chance to participate in the class" and "give[s] previous opt-outs the chance to reconsider now that there is the opportunity to participate in an actual settlement."  (*Id.*).

Accordingly, Plaintiffs would have been excluded from the CSA and the settlement class if and only if they chose to opt out by the August 10, 2018 deadline. (*See* ECF No. 3532 at 10; CSA §§ 2.44, 2.45, 4.6).  That deadline has come and gone and Plaintiffs did not opt out.  *See* ECF No. 3777-22 (list of opt-outs received by Brown Greer, submitted in support of motion for final approval).[5]

---

[5] They certainly have not pleaded otherwise, and as Article III standing is a matter of jurisdiction, such salient facts must be considered by the Court.  At a minimum, Plaintiffs would need to plead affirmatively a factual basis for any claimed injury; they may not shelter behind silence.  For example, if they did opt out, or if they failed to file a claim under the CSA, they would need to plead how such missteps could possibly support their claims against Watts Guerra—which signed the CSA, advocated that its clients and all class members *not* opt out, and did not represent these Plaintiffs at any point during the CSA claims process.

5.      The CSA has superseded the Term Sheet provisions of which Plaintiffs complain.  (*See* Compl. ¶¶ 17-18, 135, 192-193, 223 (objecting the two-settlement approach, with a class settlement administered by this Court and a settlement of the claims of represented plaintiffs, including Watts Guerra clients, administered by a Texas court)).  As this Court has already ruled, the Term Sheet "was not a binding agreement and was superseded by the eventual Agreement [i.e., the CSA]."  (ECF No. 3531 at 9-10).  The CSA provides for a single nationwide settlement, overseen by this Court with certain limited jurisdictional carve-outs on certain issues in favor of the Honorable David R. Herndon of the United States District Court for the Southern District of Illinois, and the Honorable Laurie J. Miller of the Fourth Judicial District Court, County of Hennepin, State of Minnesota.  (*See* CSA §§ 7.2, 9.18).  There is no provision in the CSA which contemplates transfer of claims filed in Minnesota to a state court in Texas.

6.      Pursuant to CSA § 7.2, on July 10, 2018, Watts Guerra filed for itself and its associate counsel a Fee & Expense Application and supporting memorandum.  (*See* ECF Nos. 3580, 3611; *see also* ECF No. 3692 (response filed August 17, 2018); ECF No. 3722 (reply filed September 17, 2018)).  In that application, Watts Guerra proposed a class-wide fee of 33.33% from the $1.51 billion Settlement Fund.  (*E.g.*, ECF No. 3580 at 3).  Most of the other leading attorneys, including Settlement Class Counsel, likewise proposed a class-wide fee of 33.33%.  (*E.g.*, ECF No. 3587 at 1.)  Under such proposals, the amount awarded to any given law firm pursuant to § 7.2 of the CSA will have absolutely no impact on any class member's share of the settlement.

In addition, under Watts Guerra's proposal, the inverse is also true—the amounts recovered by these Plaintiffs would have no impact on the fees paid to Watts Guerra and its associate counsel.  That is because Watts Guerra's requested award is based on actual gross recoveries by its clients; Watts Guerra does not seek a contingent fee on recoveries by former clients, nor even a *quantum meruit* fee from former clients in their capacity as such.[6]  (ECF No. 3580 at 3).  In other words, the fees for Watts Guerra and the recoveries for these Plaintiffs are independent; neither impacts the other.  Of course, the Court has yet to decide what framework to adopt, but it is difficult to discern in the pending Fee & Expense Applications, the CSA, or the governing law, any approach to fees that could leave these Plaintiffs paying more than class members who never hired Watts Guerra.

Indeed, everyone involved in the Syngenta settlement process—including Watts Guerra, Settlement Class Counsel, the Special Masters, and the Courts—has long since agreed that all class members should receive the same recovery in terms of bushels of corn, net of attorney fees.  (*See* ECF No. 3580-5 (Watts Decl.) ¶¶ 322-323; 12/19/2017 Hrg. Tr. 10:21-23).[7]  This Court acknowledged that feature of the CSA when it rejected

---

[6] Watts Guerra's fee petition does include an alternative request for a common-benefit fee award which is, in a sense, a *quantum meruit* fee from the class as a whole. Even if that is how the Court ultimately awards fees to Watts Guerra, however, being treated like absent class members is exactly what Plaintiffs want and demand.  Further, any "injury" traceable to that status would *not* be traceable to the claims they attempt to plead in this action, nor redressable by litigation of those claims in this action.

[7] Because Plaintiffs' Complaint was filed in April 2018—before and without benefit of Watts Guerra's fee submissions—it is likely this fact was not known to Plaintiffs or their new counsel.  They also likely were unaware that, in late 2017 and early 2018, Mr. Watts demanded and obtained a claims process as part of the CSA— overcoming opposition from class counsel and effectively increasing recoveries for all class members who filed claims, including the Kelloggs and Bromley.  (*See also* ECF

arguments to enforce the Term Sheet's two-settlement structure.  (ECF No. 3531 at 10 ("Plaintiffs have reasonably argued that a single-prong approach made the most sense to the negotiating parties because the final settlement quite reasonably gives the same recovery to all producers (whether or not they have filed individual suits).").)  And Watts Guerra's fee application and related filings argued vociferously that all class members should pay the same amount for attorney fees and expenses.  (*E.g.*, ECF No. 3611 at 35-36; ECF No. 3722 at 9, 15-16).

7.    Finally, Plaintiffs made no objection to the CSA—including to its attorney-fee provisions and Fee & Expense Applications made pursuant thereto.  Under Rule 23(e), a class settlement may not be approved unless the court conducts a hearing and determines the settlement proposal is fair, reasonable, and adequate.  With respect to the CSA, the Court scheduled a Fairness Hearing for November 15, 2018 and established August 17, 2018 as the deadline for class members to "object to the Settlement, the proposed plan of allocation and distribution, the petition for an award of attorneys' fees and expenses, and the service awards."  (*See* ECF No. 3532 at ¶ 13; *see also* ECF No. 3613 (changing deadline for all responses to all fee applications from October 17 to August 17)).  On August 15, the Bromleys and Kelloggs appeared in the MDL through their new counsel.  (ECF No. 3683).  Then, the August 17 deadline passed, with neither the Bromleys nor the Kelloggs raising any objection to the settlement or to any of the Fee & Expense Applications.

---

No. 3580-5 (Watts Decl.) at ¶¶ 254-337 (filed July 10, 2018) (discussing previously confidential settlement negotiations)).

Accordingly, Plaintiffs "have waived and shall forfeit his, her, or its right to object to the Settlement Agreement, its terms, the petition for attorneys' fees and expenses, the proposed plan of allocation and distribution, any request for service/incentive awards, and any other aspect of the settlement or issues relating thereto, including the right to appear and be heard at the Fairness Hearing and the right to appeal from any judgment relating to these matters."  (ECF No. 3532 at ¶ 13).

## QUESTIONS PRESENTED

1.     Whether Plaintiffs have suffered and pleaded a concrete, particularized, and non-moot injury sufficient to support Article III standing—where Plaintiffs have not been excluded from any litigation class; the only certified litigation class they qualified for, the nationwide Lanham Act class lost on summary judgment; Plaintiffs are members of the CSA settlement class and will recover for their Syngenta claims thereunder if the CSA receives final approval; Plaintiffs never hired the Non-Retained Defendants; and there is no threat that the Defendants they did hire will seek any fee from these Plaintiffs.

2.     Whether Plaintiffs' claims are both actionable in this collateral proceeding and presently ripe for adjudication—where Plaintiffs waived any objection to the CSA and Fee & Expense Applications filed pursuant thereto; no Defendant has sought to enforce any rights it may have pursuant to any contingency agreement with any Plaintiff; and the Court has not yet determined whether represented and absent class members will be subject to a different fee burden.

3.     Whether Plaintiffs' fraud-based claims are (A) tenable despite the lack of any pecuniary damage; (B) pleaded with the requisite particularity; (C) viable insofar as

they rely on Defendants' opinions about the likely course of the Syngenta litigation; (D) viable insofar as they rely on Defendants' commitment to proceed consistent with Defendants' own best judgment, and (E) based on sufficiently clear allegations of scienter.

4.     Whether Plaintiffs' claims under the Minnesota Consumer Protection Statutes may proceed despite (A) those statutes' inapplicability to professional services; (B) the lack of public benefit associated with this private action; and (C) Plaintiffs' failure to plead which alleged misstatements, if any, were made in Minnesota.

5.     Whether Plaintiffs may assert stand-alone claims for declaratory relief and damages pursuant to Minnesota Statute §§ 481.07 and 481.071, which are remedies, not causes of action.

## <u>STANDARD OF REVIEW</u>

Dismissal pursuant to Federal Rule of Civil Procedure 12(b)(1) is appropriate if the Court lacks subject matter jurisdiction over claims for relief asserted in a complaint. Federal courts are courts of limited jurisdiction, which possess only that power authorized by the Constitution and statute. *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994).  Accordingly, it is *presumed* that a cause of action lies outside of a federal court's limited jurisdiction, and the party asserting jurisdiction bears the burden of proving otherwise.  *Id.* at 377.  Ripeness, mootness, and standing may properly be heard on motions to dismiss brought under Rule 12(b)(1).  *New Mexicans for Bill Richardson v. Gonzales*, 64 F.3d 1495, 1499 (10th Cir. 1995) (ripeness); *Ritchie v. Deslauriers*, Case

No. 17-3003, 2017 WL 4758946, at *2 (D. Kan. Oct. 20, 2017) (mootness); *Stewart v. Mitchell Transp., Inc.*, 197 F. Supp. 2d 1310, 1312 (D. Kan. 2002) (standing).[8]

Rule 12(b)(1) challenges are generally presented in one of two forms: "[t]he moving party may (1) facially attack the complaint's allegations as to the existence of subject matter jurisdiction, or (2) go beyond allegations contained in the complaint by presenting evidence to challenge the factual basis upon which subject matter jurisdiction rests." *Merrill Lynch Bus. Fin. Servs., Inc. v. Nudell*, 363 F.3d 1072, 1074 (10th Cir. 2004) (quoting *Maestas v. Lujan*, 351 F.3d 1001, 1013 (10th Cir. 2003)). In a factual attack, the district court does not presume the truthfulness of the complaint and "has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1)." *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995) (citations omitted). The district court may consider such extrinsic evidence without converting the motion into a motion for summary judgment under Rule 56. *Id.*[9]

---

[8] This Court, as an MDL transferee court, applies the federal law of the circuit in which it sits, and the state law that would have applied in the jurisdiction from which the case was transferred in accordance with the original forum's choice of law rules. *Murphy v. F.D.I.C.*, 208 F.3d 959, 964–65 (11th Cir. 2000).

[9] An inapplicable exception to this general rule requires converting a Rule 12(b)(1) motion to a Rule 56 motion when "[t]he jurisdictional question is intertwined with the merits of the case," which occurs "if subject matter jurisdiction is dependent on the same statute which provides the substantive claim in the case." *Holt*, 46 F.3d at 1003. However, the mere fact that the same statute is at issue is not enough to trigger this exception; rather the resolution of the jurisdictional question under the statute must also require resolving the merits of the claim. *Sizova v. Nat'l Institute of Standards & Tech.*, 282 F.3d 1320, 1324–25 (10th Cir. 2002). The exception is not applicable here because Defendants' motion is not addressed to the application of the facts to 18 U.S.C. § 1962—

Defendants' motion here is a factual attack on subject-matter jurisdiction based on standing, ripeness, and mootness, as argued below.  Accordingly, although not strictly necessary given the allegations in the Complaint and the procedural facts subject to judicial notice (*see* below), Defendants respectfully request that the Court accept and consider extrinsic evidence on these issues, which confirms that Plaintiffs have not placed a live case or controversy before this Court.

Under Rule 12(b)(6), a plaintiff's "[f]actual allegations must be enough to raise a right to relief above a speculative level," and the plaintiff must make a "showing, rather than a blanket assertion, of entitlement to relief."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 & n.3 (2007) (internal quotation omitted).  To avoid dismissal, a complaint must include "enough facts to state a claim to relief that is plausible on its face."  *Id.* at 547.  To determine whether the claim to relief is "plausible on its face," the Court must "examine the elements of the particular claim and review whether the plaintiff has pleaded 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  *Sanchez v. U.S. Dept. of Energy*, 870 F.3d 1185, 1199 (10th Cir. 2017) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

Further, claims that sound in fraud are subject to the heightened pleading requirements set forth in Rule 9(b).  *See Burke v. Woods*, 85 F.3d 640 (10th Cir. 1996); Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.").

---

the only substantive federal statute asserted in the Complaint that would grant subject matter jurisdiction.  Rather, the challenge is to Plaintiffs' standing to assert any claim.

When ruling on a Rule 12(b)(6) motion to dismiss, the court considers the complaint "as well as ... documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Warnick v. Cooley*, 895 F.3d 746, 754 (10th Cir. 2018) (*quoting Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)); *see also Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002) (courts may "consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity"). A court may also consider matters of public record, including court documents, without converting the motion to one for summary judgment. *Van Woudenberg v. Gibson*, 211 F.3d 560, 568 (10th Cir. 2000) ("[T]he court is permitted to take judicial notice of its own files and records, as well as facts which are a matter of public record."), *abrogated on other grounds by McGregor v. Gibson*, 248 F.3d 946, 955 (10th Cir. 2001).

Here, the documents properly considered include the MDL file, including the Court's orders, Watts Guerra's Fee and Expense Application, and the CSA (which is also referenced in the pleadings),[10] as well as the Substitution of Counsel that attorney Douglas Nill filed in Roland Bromley's case over two years ago. (Goodman Aff., Ex. A).

## ARGUMENT

### I. ALL CLAIMS SHOULD BE DISMISSED FOR LACK OF STANDING

The judicial power of the United States extends only to actual cases or controversies. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). The doctrine of

---

[10] Compl. ¶¶ 17, 19, 60, 136, 171, 192, 197–206, 208, 209–211, 217, 223–224, 226, 233, 310.

standing is rooted in the traditional understanding of this limitation on the jurisdiction of federal courts. *Id.* The Supreme Court has established a three-element test that must be met in order for a litigant to have standing: "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* Standing is determined as of the date of the filing of the complaint. *Hill v. Vanderbilt Capital Advisors, LLC*, 702 F.3d 1220, 1224 (10th Cir. 2012). But the elements of constitutional standing are not mere pleading requirements; they are an indispensable part of Plaintiffs' case, *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992), which Plaintiffs have the burden of proving. *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009).

To establish an injury in fact, Plaintiffs must show an invasion of a legally protected interest that is concrete, particularized, and actual or imminent. *Spokeo*, 136 S. Ct. at 1548. Here, Plaintiffs allege two forms of injury. *First*, they claim to have been deprived of the opportunity to be a part of class proceedings on their claims against Syngenta—including to decide for themselves whether to opt out of certified litigation classes. However, for an injury to be concrete it must be more than merely an abstract violation of a right. *Id.* at 1548. Where, as here, the bare violation of a right does not harm a plaintiff, that violation is insufficient to sustain Article III jurisdiction. *Id.* *Second*, Plaintiffs complain that they could be subject to fee agreements that will extract an unreasonable fee. But "a main focus of the standing inquiry is whether plaintiff has suffered a present or imminent injury, as opposed to a mere possibility, or even probability, or future injury." *Morgan v. McCotter*, 365 F.3d 882, 888 (10th Cir. 2004).

Here, it is approaching certainty that Plaintiffs will *never* be subject to *any* fee from having retained Defendants; they certainly cannot show a "present or imminent injury."

### A.   Plaintiffs have no injury, much less a live one, from Watts Guerra's handling of their Syngenta claims

Plaintiffs' class-action-exclusion theory of injury fails for three separate and independent reasons: (1) They were not actually excluded from the only litigation class in which they could have been members.  (2) If they were, it was a benefit.  (3) Plaintiffs are members of the CSA settlement class, with the exact same rights and opportunity to recover on their Syngenta claims as every other farmer in America.

1.   As a threshold matter, it is established law in Minnesota that a client always has an implied right to terminate the attorney-client relationship regardless of the terms of the contract establishing that relationship. *Faricy Law Firm, P.A. v. API, Inc. Asbestos Settlement Trust*, 912 N.W.2d 652, 657 (Minn. 2018) (citing *Lawler v. Dunn*, 145 Minn. 281, 176 N.W. 989, 990 (1920)).  As discussed below, this is fatal to Plaintiffs' claimed concern that they may be charged double fees.

It is also fatal to Plaintiffs' allegations that they were excluded from the litigation classes previously certified in this matter.  Until the Court enters final judgment, whether a potential absent class member will be a part of the class is not set in stone.  Class actions may "involve classes whose membership predictably fluctuates over the course of the litigation" and the mere fact that an individual is excluded "at the time the class is defined does not imply exclusion at the time judgment is entered."  *State Farm Mut. Ins. Co. v. Boellstorff*, 540 F.3d 1223, 1226 n.7 (10th Cir. 2008) (quoting *Council of & for the*

*Blind of Delaware Cnty. Valley, Inc. v. Regan*, 709 F.2d 1521, 1543 n.39 (D.C. Cir. 1983) (Spottswood, C.J., concurring in part and dissenting in part) (quotation in parenthetical)). Thus, it is possible for an individual who is not a class member at the time that a class is defined to become a part of the class later. *Id.* (citing MANUAL FOR COMPLEX LITIGATION § 21.222, at 270 (4th ed. 2004) (membership "ordinarily should be ascertainable when the court enters judgment").

Here, Plaintiffs complain of having been excluded from the litigation classes previously certified in the Syngenta litigation. Leaving settlement classes aside for the moment, a total of ten classes were certified during the *Syngenta* litigation. This Court certified the nationwide Lanham Act class and eight statewide classes for farmers from states other than North Dakota. (ECF No. 2547, at 30–33.) The Minnesota state court also certified a statewide class of Minnesota farmers. (Compl. ¶ 174). Because the Kelloggs and Bromley are North Dakota farmers (Compl. ¶¶ 28-29), the only class that could have included them was the nationwide Lanham Act class. But no final judgment has yet been entered as to the claims of that class and, under the principles set forth immediately above, if judgment were entered now, the Kelloggs and Bromley would be members.

That is because Bromley and the Kelloggs base their claim that they were wrongfully opted out from the nationwide Lanham Act on the exclusion from that class of "producers who filed suit in Minnesota state court on or before June 15, 2016, *and who are represented by attorneys who executed a joint prosecution agreement with plaintiffs' co-lead counsel.*" (ECF No. 2547 at 30–31 (emphasis added)). Plaintiffs do not fall

within the plain language of that exclusion.  Although they did file claims in the Minnesota state court, they are not "represented by attorneys who executed a joint prosecution agreement with plaintiffs' co-lead counsel"; they are represented by the attorney who is representing them in the present action.  (*Supra*, Facts § A).  In fact, Plaintiff Bromley terminated his attorney-client relationship with Watts Guerra and Homolka on May 9, 2016—more than a month before certification was sought, and many months before the Court issued the actual certification order.  (*Id.*)  Therefore, Bromley always was within the class.

In any event, as to Bromley and the Kelloggs too, there is no question they would be within the definition of the class now.  Specifically, if this Court were to enter final judgment as to the nationwide Lanham Act class, Plaintiffs would be outside the exclusion because they have terminated their relationship with their former attorneys and retained another attorney who did not sign the joint prosecution agreement.  The entry of that hypothetical judgment would be the moment when their membership in the class would be determined.  *State Farm*, 540 F.3d at 1226 n.7; MANUAL FOR COMPLEX LITIGATION § 21.222, at 270.

2.    What is more, even if Plaintiffs were excluded from the nationwide Lanham Act litigation class, it is difficult to see how they would have been harmed because this Court granted Syngenta summary judgment against that class.  (ECF No. 3051 at 7, 42).  Not belonging to a class whose claims have been extinguished would be a benefit, not a detriment.  And a plaintiff who actually *benefits* from the complained-of conduct has not suffered injury-in-fact for purposes of Article III.  *Taylor v. Keycorp*, 680

23

F.3d 609, 612-14 (6th Cir. 2012) (holding that, as a matter of "common sense," a plaintiff who benefited from alleged breaches of fiduciary duty had no "actual injury").

3.     The CSA further confirms that Plaintiffs have not suffered any concrete injury from their class-action-exclusion allegations.  Plaintiffs are members of the CSA Settlement Class.  They had until August 17 to decide whether to opt out.  Presumably on the advice of their current counsel, they chose not to do so and instead filed a claim—which is the very choice advised by Watts Guerra.  (*See* CSA at p.84 (signature of Mikal Watts); ECF No. 3580-5 (Watts Decl.) at ¶¶ 334, 343-345, 353-358)).  Regardless and more to the point, because of the CSA, ***no one*** is recovering via the September 2016 litigation classes from which Plaintiffs purportedly were excluded—nor through the two-settlement approach under the Term Sheet which Plaintiffs find so "odious" (Compl. ¶19).

Instead, Plaintiffs are receiving the same rights and opportunity to recover under the CSA as if they had never hired any of the Defendants in the first place.  Accordingly, it is not necessary for Defendants to prove that Plaintiffs' allegations are baseless and unfair—including because the rights and opportunity provided Plaintiffs by the CSA arise, at least in part, from Defendants' good work and litigation strategy.  The price of admission to federal court is concrete injury, and Plaintiffs have not suffered it—or if they did, that injury was been cured and their claim rendered moot.  *See Arizonans for Official English v. Arizona*, 520 U.S. 43, 67 (1997) (actual case or controversy must be maintained at all stages of review, not merely at the time the complaint is filed); *Chafin v. Chafin*, 568 U.S. 165, 172 (2013) (a suit is moot where the issues presented are no longer

live); *S. Utah Wilderness Alliance v. Smith*, 110 F.3d 724, 727 (10th Cir. 1997) (event during the pendency of the case that "heals the injury" also moots the case and requires dismissal).

That lack of injury is dispositive of Plaintiffs' entire Complaint, including their claim for breach of fiduciary duty (Count VIII). While plaintiffs allege that Watts Guerra violated the Minnesota Rules of Professional Conduct (Compl. ¶¶ 318, 218-28), that allegation is insufficient to convey constitutional standing. *Fountain v. Oasis Legal Fin., LLC*, 86 F. Supp. 3d 1037, 1043 (D. Minn. 2015) (alleged violation of Minnesota Rules of Professional Responsibility does not provide "constitutional standing on a party in federal court").[11] As the *Fountain* opinion explains, a breach of fiduciary duty claim cannot be litigated in federal court unless anchored by an actual injury—that is, something more than an alleged ethical violation. *See also, e.g.*, *Taylor*, 680 F.3d at 612-14 & n.2 (dismissing claims for breach of fiduciary duty where plaintiff suffered no injury; noting that "several courts have found plaintiffs to be without Article III standing when the alleged breaches of fiduciary duty resulted in no economic harm") (citing cases).

---

[11] Indeed, the Minnesota Supreme Court has held that alleged violations of the Rules of Professional Conduct do not give rise to an independent cause of action. *In re Disciplinary Action against Montez*, 812 N.W.2d 58, 66–67 (Minn. 2012) ("an attorney's violation of the Rules of Professional Conduct does not give rise to a private cause of action against an attorney"); *L & H Airco, Inc. v. Rapistan Corp.*, 446 N.W.2d 372, 380 (Minn. 1989) ("The Rules are intended to discipline attorneys, not provide a basis for civil liability."); *see also* Minn. R. Prof. Conduct, Scope ("Violation of a rule should not itself give rise to a cause of action against a lawyer *nor should it create any presumption in such a case that a legal duty has been breached*.") (emphasis added).

Having suffered no injury, period—much less a concrete injury traceable to Watts Guerra or the Non-Retained Defendants' supposed misconduct, or one that is live and redressable should they prevail on the claims in this action—Plaintiffs have no standing.

**B.      Plaintiffs have not, and never will, pay double fees**

As for Plaintiffs' fear of an unreasonable fee, it is just that—a fear, and a baseless one at that.  At present, Plaintiffs have not paid any fee to anyone for their Syngenta claims.   And whatever they may ultimately be obliged to pay pursuant to the fee provisions of the CSA (a matter which is not before the Court in this action), Plaintiffs will never pay a penny more to Watts Guerra or the other Defendants here—and most certainly not to the Non-Retained Defendants.  (*Supra*, n. 1).

1.      As a matter of law, Plaintiffs do not owe a contingent fee to Watts Guerra or the other Defendants, and never will.  Plaintiffs seek an order voiding their contingent fee contracts, but they have already exercised their termination right.  (*Supra*, Facts § A). And, having done so before any recovery was final—the CSA, of course, is not final until approved by the Court, per Fed. R. Civ. P. 23(e)—Plaintiffs do not, and never will, owe Defendants a contingent fee.  *Faricy Law Firm*, 912 N.W.2d at 657 (attorney cannot recover a contingent fee "if the contingency occurred after the client terminated the attorney's representation"); *accord Hoover Slovacek LLP v. Walton*, 206 S.W.3d 557, 561 (Tex. 2006); *see also In re Caswell*, 905 N.W.2d 507, 513 (Minn. App. 2017) (a contractual contingent fee is only earned and final after the recovery is achieved).

In theory, Watts Guerra could assert a *quantum meruit* claim against the Kelloggs and Bromley if it was terminated without cause.  *Faricy Law Firm*, 912 N.W.2d at 657–

58; *see also In re Stowman Law Firm, P.A.*, 870 N.W.2d 755, 762–65 (Minn. 2015) (analyzing the role that good cause plays in attorney's *quantum meruit* claim).  It is, however, exceedingly unlikely that Watts Guerra or its associate counsel would seek any fee from any class member beyond the Fee & Expense Award made by the Court. Plaintiffs certainly cannot claim that any Defendant has indicated any such intent as to them.  *Cf. Nike, Inc. v. Already, LLC*, 663 F.3d 89, 97 (2d Cir. 2011), *aff'd*, 568 U.S. 85 (2013) (covenant not to sue eliminates justiciable case or controversy requirement under factors set forth in *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118 (2007)).

To the contrary, Watts Guerra, for itself and its associate counsel, has already made abundantly clear its positions that all class members should pay the same amount for attorney fees and expenses, and that it cannot abide its clients paying more in attorney fees than absent class members.  (*Supra*, Facts § C; *see also* ECF No. 3722 (WG Fee Reply) at 15-16 (rejecting as unreasonable, inequitable, and unacceptable the proposal by Kansas CLC that Watts Guerra and other retained counsel collect from their clients the difference between their 40% contractual contingency fee and a 33.33% common-benefit fee)).

2.    Even if it were conceivable that Plaintiffs *might*, at some point in the future, be asked to pay a fee to one or more Defendants, allegations of such speculative, future harm fall well short of meeting Plaintiffs' burden under Article III.  *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) ("we have repeatedly reiterated that 'threatened injury must be certainly impending to constitute injury in fact,' and that '[a]llegations of possible future injury' are not sufficient"); *Initiative & Referendum Inst. v. Walker*, 450

F.3d 1082, 1087–88 (10th Cir. 2006) ("Allegations of possible future injury do not satisfy the injury in fact requirement[.]") (internal quotation marks and citation omitted).

In fact, Plaintiffs' own Complaint confirms the implausibility of any future injury to these Plaintiffs. It alleges that "*when* Defendants submit Farmers' claims" under the CSA, Plaintiffs "*will* pay two sets of lawyers," consisting of class counsel and the Defendants named in this action. (Compl., ¶ 136 (emphasis added); *see also id.* ¶¶ 19, 209 (same)). That "when" trigger never happened: Watts Guerra did not submit Plaintiffs' claims; Plaintiffs did that themselves, or their new counsel did. And Plaintiffs have not alleged (nor, we suspect, can they) that their claim forms listed Watts Guerra as their counsel, because they are ***not*** represented by Watts Guerra (and, again, were never clients of the Non-Retained Defendants). (*Supra*, Facts § A).

Watts Guerra's Fee & Expense Application further confirms that Plaintiffs lack "a present or imminent injury, as opposed to a mere possibility, or even probability, or future injury." *Morgan*, 365 F.3d at 888. This is because Watts Guerra's Application, for itself and its associate counsel, has proposed that its fee be set based on amounts recovered by its clients—and Plaintiffs here are ***not*** "Watts Guerra Plaintiffs," as that term was used throughout Watts Guerra's fee briefing.[12] In addition, many of the fee applications (including Watts Guerra's) proposed that the Court impose a single, class-wide fee, and then divide that amount among the various counsel. (*See, e.g.*, ECF No.

---

[12] Even as to those clients, Watts Guerra has asked the Court to liquidate its rights under its fee agreements through a Fee & Expense Award pursuant to CSA §7.2—*not* to enforce those contracts as written—and to award the Watts Guerra Group an amount taken from an overall 33.33% fee, imposed on the class as a whole. (*See* ECF No. 3611 (WG Fee Mem.) at 2-3, 30, 39; ECF No. 3722 (WG Fee Reply) at 42).

3580-3 (Kull-Silver Report in support of Watts Guerra's Fee Application) at 2-4 (distinguishing the initial "vertical" division of the Settlement Fund between class members and counsel, from the "horizontal" allocation between counsel)). If the Court takes that approach, then all class members will pay the same fee; neither Plaintiffs here nor any other class member could claim "injury" from having been represented by retained counsel. For both those reasons, it is pure speculation to think that Plaintiffs' recoveries will be impacted by fees awarded to Defendants—or that Defendants' fees will be impacted by these Plaintiffs' recoveries.

In fact, even before Watts Guerra submitted its fee application, this Court had already rejected the same argument Plaintiffs raise here—"that the settlement would [necessarily] result in an unfair economic disadvantage to the 'individual plaintiffs' group, because those plaintiffs who filed their own lawsuits will have their recovery reduced not only by an award of class-wide attorney fees (paid from the settlement fund), but also by their attorney fee obligations to their own attorneys who filed their individual suits." (ECF No. 3531 at 14). To be clear, the Court has not yet ordered that individual plaintiffs will pay the same amount as absent class members; the point is that it has already recognized that there is nothing about the settlement that would *necessarily* or *inevitably* inflict Plaintiffs' complained-of harm. Rather, the final settlement may "treat all class members the same for purposes of recovery, whether or not they filed their own suits." (*Id.*)

In short, the threat of paying two sets of lawyers—which is the wellspring of Plaintiffs' enhanced-fee allegations—is pure fiction. Bromley and the Kelloggs have not

paid and will never pay Watts Guerra or the Non-Retained Defendants a contingent fee of any kind, nor will their past representation by Watts Guerra ever put them in a worse position (or Watts Guerra in a better position) than if they had never hired Watts Guerra at all.  Plaintiffs have not suffered, nor are they threatened with, an actual, concrete, and particularized injury. Accordingly, the Court should dismiss the Complaint for lack of subject matter jurisdiction.

### C.     Plaintiffs may not represent, much less derive standing from absent members of the putative class

Plaintiffs, of course, may not represent a class of which they are not a part.  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348–49 (2011) ("a class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members.") (quoting *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 216 (1974)).  More fundamentally, that a plaintiff has filed a lawsuit as a class action "does not change the standing analysis because 'even named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and purport to represent.'"  *LaRoe v. FCA US, LLC*, No. 17-2487, 2018 WL 3105378, at *6 (D. Kan. June 25, 2018) (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 40 n.20 (1976)).  In other words, even if these Plaintiffs could identify a concrete injury, ripe for adjudication, suffered by Watts Guerra's current clients (and the analysis above shows they cannot), it would not save this Complaint.

30

"To have standing to sue as a class representative it is essential that a plaintiff must be a part of that class, that is, he must possess the same interest and suffer the same injury shared by all members of the class he represents." *Schlesinger*, 418 U.S. at 216. Therefore, "[b]y definition, class representatives who do not have Article III standing to pursue the class claims fail to meet the typicality requirements of Rule 23." *Rector v. City & Cnty. of Denver*, 348 F.3d 935, 950 (10th Cir. 2003). "[F]undamentally, the named plaintiff must have individual standing." *Benedict v. Altria Grp., Inc.*, 241 F.R.D. 688, 675 (D. Kan. 2007) (quoting 1 NEWBERG ON CLASS ACTIONS § 2:7 (4th ed. 2006)). "[I]f none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any member of the class." *O'Shea v. Littleton*, 414 U.S. 488, 494, 94 S. Ct. 669, 675 (1974).

In *LaRoe*, the plaintiffs were the purchasers of a motor vehicle that contained an allegedly defective part. *See* 2018 WL 3105378, at *1. They asserted that the defendant part manufacturer had violated RICO by concealing its knowledge of the defect, and sought to assert a class action on behalf of 32,000 other purchasers of the vehicle. *Id.* The complaint provided voluminous detail, but without establishing any connection between those details and a concrete and particularized injury to the putative class representatives. Defendants thus moved for dismissal for lack of standing under Rule 12(b)(1), and Judge Crabtree granted it, explaining that "the Complaint—although lengthy—never alleges that these plaintiffs have sustained an actual or imminent injury." *Id.* at *5-6.

31

This case is much the same:  The Complaint, though voluminous, contains only three paragraphs that directly reference the Kelloggs and Bromley.  The majority of the Complaint focuses on town hall meetings and blog posts without addressing whether the Kelloggs or Bromley ever attended, viewed, or relied upon them.  (*E.g.*, Compl. ¶ 82 (town hall meeting in Storm Lake, Iowa, with no allegation about attendance by Plaintiffs); *id.* ¶¶ 88, 112, 120, 144  (allegations regarding website blog posts, with no indication whether Plaintiffs ever read, much less relied or acted upon the posts).)  Even if such allegations tended to support standing for *other* farmers—such as those in Storm Lake, Iowa, who are still Watts Guerra clients—the Kelloggs and Bromley may not rely on allegations (potentially) related to absent members to support their own standing.  All claims should be dismissed.

## II.   PLAINTIFFS WAIVED ANY OBJECTION TO FEE APPLICATIONS MADE PURSUANT TO THE CSA—AND NO FEE-RELATED CLAIM IS RIPE

1.     As just discussed, Defendants have not sought a fee from these Plaintiffs, and never will.  This confirms that Plaintiffs' lack of standing is permanent.  Of course, assuming the CSA is given final approval, Plaintiffs will pay whatever fee the Court orders for their recoveries under the CSA pursuant to CSA § 7.2.  But that payment is not, and cannot be, at issue in this tagalong proceeding.  If Plaintiffs had an objection to either the fee provisions in the CSA or the Fee & Expense Applications filed pursuant thereto, they were required to file those in the main MDL proceeding.

That includes the fees sought in Watts Guerra's Fee & Expense Application.  Plaintiffs had the opportunity to object and failed to do so.  Now, in this action, any

challenge by Plaintiffs to the CSA fee provisions, fee applications filed pursuant thereto, or fee awards made thereunder, would be a collateral attack on the fairness and reasonableness of a class settlement—and barred as such.[13]   *Wyly v. Weiss* is on point.  In *Wyly*, the Second Circuit held that class members were barred from asserting a malpractice claim against their counsel in a separate, subsequent suit because the claim

---

[13] *See Wyly v. Weiss*, 697 F.3d 131, 142 (2d Cir. 2012) (class members' allegations of attorney misconduct were barred under doctrine of collateral estoppel because such allegations "constitute a collateral attack on the District Court's findings that the Settlement was 'fair, reasonable and adequate'"); *Thomas v. Albright*, 77 F. Supp. 2d 114, 123 (D.D.C. 1999), *aff'd sub nom. Thomas v. Powell*, 247 F.3d 260 (D.C. Cir. 2001) ("The Court expects that its findings on the fairness of a settlement, adequacy of notices, and adequacy of class representation are final and have the force of law. The dissident plaintiffs' attempt to relitigate this Court's findings through the ruse of a so-called malpractice action would have the effect of undermining the settlement and consent decree reached in this matter."); *In re Diet Drugs (Phentermine / Fenfluramine / Dexfenfluramine) Prod. Liab. Litig.*, 431 F.3d 141, 146 (3d Cir. 2005) ("Class members are not, however, entitled to unlimited attacks on the class settlement. Once a court has decided that the due process protections did occur for a particular class member or group of class members, the issue may not be relitigated."); *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 222 (5th Cir. 1981) ("Plaintiffs had an opportunity to opt out of the class and litigate their state claims in state court … Plaintiffs, however, wanted to participate in the class, share in the fruits of the class' settlement negotiations, and still be free to litigate their state claims. In short, the objectors felt entitled to the bird in the hand while pursuing the flock in the bush."); *Laskey v. Int'l Union*, 638 F.2d 954, 957 (6th Cir.1981) ("Since appellants had the opportunity to object to the legal representation at the prior settlement hearing and since a finding that the class was adequately represented is necessary for finding the settlement was fair and reasonable, which in turn was essential to approving the settlement, appellants are collaterally estopped from now asserting that the legal representation was not adequate and that [class counsel] committed legal malpractice."); *Koehler v. Brody*, 483 F.3d 590, 598-99 (8th Cir. 2007) ("…Koehler cannot establish that appellees breached duties owed him and caused him an injury without relitigating an issue already decided in the federal courts. … Based on the record here, we conclude that the district court did not err by dismissing his complaint."); *Golden v. Pac. Mar. Ass'n*, 786 F.2d 1425, 1429 (9th Cir. 1986) ("Bower had a fair and full opportunity to litigate questions of malpractice and fraud. The state action was an attempt to harass Campbell and an abuse of court process. The court did not abuse its discretion by enjoining the prosecution in state court.").

would relitigate the same issues the district court had already resolved—namely, that the settlement was "fair, reasonable and adequate," that counsel was entitled to an award of attorneys' fees, and that the fees awarded were "fair and reasonable."  697 F.3d at 142. Relying on facts similar to those present here, the case turned on the class members' failure to raise their concerns in the context of class proceedings:

> There is no dispute that the Wyly Appellants were members of the certified Settlement Class, and were therefore bound by both the Settlement Order and the Rule 60(b) Order. The Wyly Appellants also were fully aware of the date and time of the fairness hearing, and it was their choice not to attend. As members of a certified class, they are bound by the judgment of the District Court. … They cannot now, by dint of their decision not to attend the fairness hearing, assume a capacity they would otherwise lack to challenge the outcome of that proceeding.

*Id.* at 142.  It makes no difference that *Wyly* involved collateral attacks on *class counsel*, nor that certain related cases applying these principles (*see supra* note 14) involved the adequacy of class counsel's representation.  The rule is that challenges to a class settlement approved by a court under Rule 23, such as the CSA, must be made in the approval proceedings on that settlement—and may not be made in a collateral proceeding.

This rule disposes of this action in its entirety.  The *Kellogg* Plaintiffs are CSA class members.  (Compl. ¶¶ 19, 209).  As such, each of them received notice consistent with Rule 23 and due process, thereby binding them to comply with the deadlines imposed by this Court for approval of the CSA—including the August 17 deadline to raise objections to the settlement or to the fee petitions.  Indeed, it is indisputable that Plaintiffs' counsel was aware of the deadlines established when the CSA was

provisionally approved many months ago, and Plaintiffs were advised of their rights with respect to the class settlement well before the opt-out and objection deadlines passed. (Goodman Aff, Ex. C (Correspondence from Attorney Nill confirming "I have advised my clients of their rights with respect to the National Class Action Settlement Agreement.")).  Yet Plaintiffs chose not to object and the time to do so has passed.  (ECF No. 3532, ¶ 13).   Plaintiffs cannot be heard to complain now, in this collateral proceeding, about the fees sought by Watts Guerra pursuant to the CSA's fee provisions.

2.      Indeed, not only are Plaintiffs barred from challenging Watts Guerra's Fee & Expense Application in this collateral, tagalong proceeding; they have waived any such challenge by failing to file an objection in the main MDL proceedings on the CSA. (ECF No. 3532 at ¶ 13). Plaintiffs waived all objections to Watts Guerra's fee application—including any objection based on allegations of attorney misconduct—when the August 17 deadline passed.  Having failed to raise an objection in the form and manner specified by the Court, they cannot do so now.

3.      Plaintiffs may argue that they have a right to challenge Watts Guerra's fee agreements, which Watts Guerra may yet seek to enforce; or that they seek disgorgement of any fees paid to Watts Guerra once those are awarded.  As already shown, however, Plaintiffs have not and will not ever suffer any actual injury traceable to their contingent fee agreements with Watts Guerra (*supra*, Argument § I.B), the recoveries by Plaintiffs and the fees for Watts Guerra under the CSA are independent of each other (*supra*, Facts § C), and any Fee & Expense Award made to Watts Guerra by the Court pursuant to the CSA may not be put at issue in this proceeding (*supra*, Argument § II.1).

Further, at a minimum, Plaintiffs' claims are not ripe.  Ripeness is a closely related doctrine to standing, and has been "characterized as standing on a timeline." *S. Utah Wilderness Alliance v. Palma*, 707 F.3d 1143, 1157 (10th Cir. 2013) (quotation omitted). The central focus of the ripeness inquiry is whether the claim is based on "uncertain or contingent future events than may not occur as anticipated, or indeed may not occur at all."  *New Mexicans for Bill Richardson*, 64 F.3d at 1499 (quotation omitted); *see also Reno v. Catholic Social Services, Inc.*, 509 U.S. 43, 57-58 & n.18 (1993) (reiterating that "ripeness doctrine is drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction").

This Court has received applications and briefing from numerous attorneys representing settlement class members, addressing both the total amount and proper allocation of attorney fees to be awarded pursuant to § 7.2 of the CSA.  Ultimately, in consultation with Judges Miller and Herndon, this Court will make Fee & Expense Awards.  Until those Awards are actually made, however, Plaintiffs' contention that they will pay more attorney fees than other members of the settlement class is necessarily speculative, uncertain, and contingent on events that may not (and, indeed, are unlikely to) occur as they anticipate.  For example, a central pillar of Plaintiffs' attempt to show deception and potential injury from Watts Guerra's 40% contingency agreements is that "[a]ttorney fee awards in class actions … are typically about *10-12 percent of the fund*." (*See, e.g.*, Compl. ¶¶ 12, 19, 84, 93, 108 (emphasis added)).  Yet the Class Notice issued following this Court's Preliminary Approval Order is explicit that Fee & Expense Awards under the CSA could be as much as *33.33% of the fund*—which is exactly what

Settlement Class Counsel themselves have requested.  (*See* ECF No. 3587 at 1).

Meanwhile, even as SCC seek a 33.33% fee for common-benefit counsel alone, Watts

Guerra proposed a 33.33% overall award to cover fees for *both* common-benefit and

retained counsel, taking a more class member-friendly position than the class's (and

Plaintiffs') supposed champions by arguing that all class members should receive the

same recovery in terms of bushels net of fees.  (ECF No. 3611 (WG Fee Mem.) at 35-39).

In short, it remains to be seen what amount the Courts will award, and on what

basis.  For that reason alone, Plaintiffs should not be allowed to proceed with this action:

they have suffered nothing, nor can they show any adverse consequences should their

claims be deferred until they do.  *See Reno*, 509 U.S. at 57-58 (ripeness demands

"impact" from the challenged action "felt immediately" by plaintiffs, or at least

"irremediabl[y] adverse consequences" from delayed review); *also cf. Martin v. Reid*,

818 F.3d 302, 309 (7th Cir. 2016) (class member's objection to attorney fee award was

not ripe for adjudication where "the fee award had not yet occurred" and "the fees are

kept entirely separate from the funds that will be available for compensation").

## III.   THE FRAUD-BASED CLAIMS SUFFER FROM SEVERAL FATAL FLAWS[14]

### A.   Plaintiffs have not pleaded pecuniary loss

Damages are an essential element of Plaintiffs' RICO, fraud, negligent

misrepresentation, fraudulent inducement, aiding and abetting, and civil conspiracy

---

[14] References herein to Plaintiffs' "fraud-based claims" refers to Counts II and III (RICO), IV (Consumer Fraud), V (False Advertising), VI (Deceptive Trade Practices), IX (Fraudulent Misrepresentation), X (Negligent Misrepresentation), XI (Fraudulent Inducement), XIII (Fraudulent Execution), and XIV (Civil Conspiracy) in the Complaint.

claims.[15]   A plaintiff asserting a claim for misrepresentation must show he or she was damaged and that such a loss was proximately caused by the misrepresentation.  *Davis v. Re-Trac Mfg. Corp., 276 Minn. 116, 117, 149 N.W.2d 37, 39 (1967).  Damages that are merely speculative cannot be recovered. Jackson v. Reiling, 311 Minn. 562, 563, 249 N.W.2d 896, 897 (1977).*   As shown above, Plaintiffs have not been injured, much less suffered any pecuniary loss.  (*Supra*, Argument § I).   Defendants have sent no bill, Plaintiffs lost nothing from any prior exclusion from the Lanham Act litigation class, and Plaintiffs have neither paid nor "lost" any recovery to which they would otherwise have been entitled under the CSA.  Counts II, IX, X, XI, XIII and XIV should be dismissed.

### B.      Plaintiffs have failed to plead their claims with particularity

Plaintiffs' entire complaint sounds in fraud, and thus is subject to the heightened pleading requirements set forth in Rule 9(b) of the Federal Rules of Civil Procedure. *Burke v. Woods*, 85 F.3d 640 (10th Cir. 1996); *accord Vess v. Ciba-Geigy Corp., USA,*

---

[15]   *Sedima, S.P.R.L. v. Imrex Co*., 473 U.S. 479, 495–96 (1985) ("[A **RICO**] plaintiff only has standing if, and can only recover to the extent that, he [or she] has been injured in his [or her] business or property by the conduct constituting the violation."); *Dunnigan v. Fed. Home Loan Mortg. Corp*., 184 F. Supp. 3d 726, 740 (D. Minn. 2016) ("Pecuniary (*i.e.*, money) damages are an essential element of **fraud**."); *Nelson v. Am. Family Mut. Ins. Co.*, 262 F. Supp. 3d 835, 858 (D. Minn. 2017) ("The plaintiff must also produce evidence that he/she suffered a pecuniary loss (*i.e.*, damages) as a result of the [**negligent**] **misrepresentation**."); *Valspar Refinish, Inc. v. Gaylor's, Inc.*, 764 N.W.2d 359, 368 (Minn. 2009) (elements of **fraudulent inducement** include "pecuniary damages"); *Rilley v. MoneyMutual, LLC*, No. CV 16-4001 (DWF/LIB), 2017 WL 3822727, at *10 (D. Minn. Aug. 30, 2017) (elements of **aiding and abetting** the tortious conduct of another include, *inter alia*, "(1) the primary tortfeasor must commit a tort that causes an injury to the plaintiff") (*quoting Zayed v. Associated Bank, N.A.*, 779 F.3d 727, 733 (8th Cir. 2015); *Rea v. Selbo*, No. C9-97-295, 1997 WL 435882, at *2 (Minn. App. Aug. 5, 1997) (*citing Venier v. Forbes*, 223 Minn. 69, 75, 25 N.W.2d 704, 708 (1946) (establishment of a claim for **civil conspiracy** requires establishment of a valid fraud claim)) (all emphasis added).

317 F.3d 1097, 1104–05 (9th Cir. 2003) (claims sound in fraud, and thus must be pleaded with particularity, where plaintiff "allege[s] a unified course of fraudulent conduct and rel[ies] entirely on that course of conduct as the basis of a claim").  At a minimum, Rule 9(b) governs Plaintiffs' RICO, consumer fraud, false advertising, deceptive trade practice, fraud, negligent misrepresentation, fraudulent inducement, and civil conspiracy claims.[16]  Plaintiffs must therefore plead "the who, what, where, when, and how of the alleged fraud."  *U.S. ex rel. Thayer v. Planned Parenthood of Heartland*, 765 F.3d 914, 917 (8th Cir. 2014) (internal quotation marks and citations omitted).  Here, Plaintiffs effectively admit they cannot and have not pleaded their claims with particularity.  (Compl. ¶ 235 ("It is not possible for Farmers to plead with particularity all instances of mail and wire fraud[.]")).

Nor do Plaintiffs identify the specific misrepresentations on which each of them allegedly relied.  They leave to Defendants and the Court the onerous task of sifting through over 80 paragraphs of allegations to guess as to which alleged misrepresentation

---

[16] *Murr Plumbing, Inc. v. Scherer Bros. Fin. Servs. Co*., 48 F.3d 1066, 1069 (8th Cir.1995) ("The particularity requirements of Rule 9(b) apply to allegations of mail fraud ... and wire fraud ... when used as predicate acts for a **RICO** claim."); *Select Comfort Corp. v. Sleep Better Store, LLC*, 796 F. Supp. 2d 981, 983 (D. Minn. 2011) ("The particularity requirement of Rule 9(b) of the Federal Rules of Civil Procedure applies to claims of **false advertising, deceptive trade practices,** unlawful trade practices, and **consumer fraud**."); *OmegaGenesis Corp. v. Mayo Found. for Med. Educ. & Research*, 851 F.3d 800, 805 (8th Cir. 2017) ("we conclude that Omega has failed to plead **fraud and negligent misrepresentation** with sufficient particularity to state a plausible claim of justifiable reliance"); *In re Baycol Prod. Litig*., 732 F.3d 869, 882 (8th Cir. 2013) (plaintiff failed to state a claim for **fraudulent inducement** with particularity required by Rule 9(b)); *Tatone v. SunTrust Mortg., Inc.*, 857 F.Supp.2d 821, 839 (D. Minn. 2012) ("[A] plaintiff must allege with sufficient particularity and demonstrate with specific material facts that the parties reached some agreement and **conspired** together to injure the plaintiff.") (all emphasis added).

applies to which Plaintiff(s) and which Defendant(s).  (*Id.* ¶¶ 72–153).  That is no small task considering Plaintiffs seek to represent a putative class of roughly 60,000 corn growers on claims challenging countless alleged misrepresentations made in different states, at different times, in multiple forms of media, and (depending on the alleged misrepresentation) by different speakers—all over the span of several years.  (*Id.*)  The vague and sweeping allegations offered by Plaintiffs fall well short of their obligations under Rule 9(b).  *Moua v. Jani–King of Minn., Inc.*, 613 F.Supp.2d 1103, 1111 (D. Minn. 2009) ("Such pleadings require a defendant 'to guess which allegations in the complaint were pleaded against it, rendering it difficult (if not impossible) to adequately frame a response, which is precisely the problem that Rule 9(b) was designed to remedy.'").

### C.   The alleged misrepresentations regarding Watts Guerra's expectations for the Syngenta litigation are not actionable

Additionally, the fraud-based claims fail because many of the alleged "misrepresentations" relate to Watts Guerra's expectation and/or prediction as to the potential outcome of the class action before the MDL Court—*i.e.*, an expectation of future events.[17]  It is well settled that "[a] representation or expectation as to future events is not a sufficient basis to support an action for fraud merely because the represented act did not take place."  *Aulick v. Skybridge Americas, Inc.*, 860 F.3d 613, 624 (8th Cir. 2017) (quoting *Rognlien v. Carter*, 443 N.W.2d 217, 220–21 (Minn. App. 1989)).  Right

---

[17]   ECF No. 1, ¶¶ 8, 9, 10, 16, 64, 66, 71, 76, 77, 79, 80, 81, 82, 84, 85, 86, 89, 91, 93, 95, 96, 97, 99, 106, 107, 108, 110, 115, 121, 122, 123, 126, 128, 132, 133, 135, 138, 139, 140, 141, 145, 147, 150, 151, 153, 157, 158, 162, 180, 185, 187, 218, 219, 221, 228, 230, 231, 233, 239.

or wrong, any predictions by Watts Guerra or the other Defendants about the likely outcome of the federal class proceedings are not actionable under Minnesota law.

> **D.   The alleged misrepresentations regarding Watts Guerra's professional judgment are too vague and indefinite to be actionable, and are implausible in any event**

Plaintiffs' claims also fail as a matter of law to the extent they are based on the alleged misrepresentations in Defendants' retainer agreements—that Watts Guerra and the other Defendants would proceed "in any manner they deem advisable" and "use their professional judgment." (Compl. ¶ 340).  Such statements are far too vague and indefinite to be actionable as fraud.  *Martens v. Minnesota Min. & Mfg. Co.*, 616 N.W.2d 732, 747 (Minn. 2000) ("[N]either opinions nor statements that are 'general and indefinite' are actionable as representations of fact") (citation omitted).  Only claims that are "specific and measurable ... [and] capable of being proved false or of being reasonably interpreted as a statement of objective fact" are actionable.  *Browe v. Evenflo Co.*, No. CIV. 14-4690 ADM/JJK, 2015 WL 3915868, at *6 (D. Minn. June 25, 2015) (quotation omitted).  A statement that a law firm will proceed in an advisable manner and use professional judgment is not a specific and measurable claim; there is no meaningful way to prove its falsity, and it cannot reasonably be interpreted as a statement of objective fact.

Indeed, it would be highly problematic to allow Plaintiffs to pursue a fraudulent execution claim based on standard language in a standard retainer agreement, which promises no more (and no less) than adherence to basic principles of professional responsibility.  By Plaintiffs' lights, an attorney would be subject to a claim for fraud for making a promise that is implicit in every attorney-client relationship under Rule 2.1 of

41

the Minnesota Rules of Professional Conduct.  *Id.* ("In representing a client, a lawyer shall exercise independent professional judgment and render candid advice.").  That would expose attorneys to liability under a fraud-in-the-execution theory whenever a client was unhappy with the result of their case.  Neither case law nor common sense countenances such an absurd conclusion.

Plaintiffs' allegations are also implausible.  To accept Plaintiffs' allegations, one would have to conclude that Defendants knew when they were retained by Bromley and the Kelloggs in 2015 that they would violate their own best judgement—that they intended *at that time* to act contrary to their own best judgment during the representation.  Nonsense.  In *Twombly*, the Court dismissed claims where the defendant's conduct could be explained just as readily by non-collusive, parallel action as by intentional, coordinated price-fixing.  *See* 550 U.S. at 556-57; *see also Iqbal*, 556 U.S. at 678 ("Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.''") (quoting *Twombly*).  Here, Plaintiffs say Defendants *knew and intended from the outset* to engage in a second-best approach to litigating their clients' claims.  Yet an innocent explanation is equally (indeed, far more) likely:  at the time these statements were made, Watts Guerra and the other Defendants believed that farmers would be well-served by litigating their Syngenta claims through a mass-action, parallel to and coordinated with class-action efforts.  Accordingly, Plaintiffs have failed to state a claim.  *See Iqbal*, 556 U.S. at 681 ("given more likely explanations," allegations "consistent with" an unlawful purpose fail to state a claim).

42

### E.   The aiding and abetting claim fails because Plaintiffs have not alleged Defendants knew their conduct constituted a breach of duty

The elements of aiding and abetting the tortious conduct of another include: "(1) the primary tortfeasor must commit a tort that causes an injury to the plaintiff; (2) the defendant must know that the primary tortfeasor's conduct constitutes a breach of duty; and (3) the defendant must substantially assist or encourage the primary tortfeasor in the achievement of the breach."  *Rilley*, 2017 WL 3822727, at *10 (*quoting Zayed*, 779 F.3d at 733).  As previously shown, Plaintiffs cannot satisfy the first element because they have not been damaged.

Nor can Plaintiffs satisfy the second element.  While Plaintiffs allege that each defendant aided and abetted the other, critically absent from the Complaint is any allegation that any Defendant knew that its alleged conduct, or that of the other Defendants, constituted a breach of duty.  That omission is fatal to Plaintiffs' claim because "aiding and abetting liability is based on proof of a scienter—the defendants must know that the conduct they are aiding and abetting is a tort."  *Zayed*, 779 F.3d at 733 (citation omitted).  Indeed, "[a]n aider and abettor's knowledge of the wrongful purpose is a 'crucial element in aiding or abetting' cases."  *Id.* (citation omitted).  Having failed to allege an essential element of their aiding and abetting claim and with no means to prove they are or will be damaged, Count XIII should be dismissed.

**IV.** **THE CONSUMER PROTECTION CLAIMS FAIL AS A MATTER OF LAW**

**A.** **Attorneys have no liability under the Minnesota Consumer Protection Statutes**

Plaintiffs assert several claims under the Minnesota consumer protection statutes—the Consumer Fraud Act ("MCFA"), the False Statement in Advertising Act ("MFSAA"), and the Deceptive Trade Practices Act ("MDTPA"). (Compl. ¶¶ 277-93). None of those statutes, however, has ever been extended by the Minnesota courts to providers of *professional* services. Although the MCFA defines "merchandise" as including "services" (Minn. Stat. § 325F.68, subd. 2), Minnesota courts have consistently rejected efforts to expand liability under the consumer protection scheme to include professionals because consumer protection statutes are not intended to second-guess professional judgment. *Jenson v. Touche Ross & Co.*, 335 N.W.2d 720, 728 (Minn. 1983), *overruled on other grounds*, *Lennartson v. Anoka-Hennepin Indep. Sch. Dist. No. 11*, 662 N.W.2d 125 (Minn. 2003); *see also Ireland v. Eckerly*, No. C5-88-1193, 1989 WL 462, at *1 (Minn. App. Jan. 10, 1989) (physician prescribing medication to a patient requires exercise of professional judgment which "cannot be susceptible to the consumer protection statutes").

Minnesota courts are thus in line with the majority of jurisdictions to have considered whether consumer protection statutes apply to professionals. Per the Supreme Court of Pennsylvania: "The majority of jurisdictions that have addressed this issue have held that the regulation of attorneys does not fall within the ambit of consumer protection laws." *Beyers v. Richmond*, 594 Pa. 654, 671 (Pa. 2007) (citations omitted); *see also*

*Pugh v. Westreich*, No. A04-657, 2005 WL 14922, at *4 n. 2 (Minn. App. Jan. 4, 2005) (noting that other jurisdictions have excluded professional services from the types of services regulated under consumer protection statutes "because the close regulation of professionals provides consumers with other means of protection").

In short, none of the consumer protection statutes contemplates a claim against an attorney.  As Plaintiffs have no right to judicial relief under the statutes cited in the Complaint, they have no standing to bring such claims.  *Aviva Sports, Inc. v. Fingerhut Direct Mktg., Inc.*, No. CIV. 09-1091 JNE/JSM, 2012 WL 3229299, at *3 (D. Minn. Aug. 6, 2012) ("[T]he standing question ... is whether the constitutional or statutory provision on which the claim rests properly can be understood as granting persons in the plaintiff's position a right to judicial relief.") (*quoting Warth v. Seldin*, 422 U.S. 490, 500 (1975)).  That lack of standing is dispositive of Plaintiffs' claims under the consumer protection statutes and Counts IV, V, and VI should therefore be dismissed.

### B.    Plaintiffs' request for injunctive relief is incidental to their claim

Plaintiffs' lack of standing is also evident for another reason: the consumer protection statutes "do not provide for a private cause of action," and "the Minnesota Private Attorney General Statute provides a private civil remedy for persons injured by these and other statutes *if they can show a public benefit*." *Klinge v. Gem Shopping Network, Inc.*, No. 12-CV-2392 JNE/SER, 2014 WL 7409580, at *2 (D. Minn. Dec. 31, 2014) (emphasis added) (*citing* Minn. Stat. § 8.31, subd. 3(a); *Ly v. Nystrom*, 615 N.W.2d 302, 314 (Minn. 2000)); *accord Buetow v. A.L.S. Enterprises, Inc.*, 888 F. Supp. 2d 956, 959 (D. Minn. 2012) ("[P]ublic benefit is a necessary element of a plaintiff's cause of

action under the Private AG statute.").  A plaintiff who fails to establish his or her action will benefit the public lacks standing to bring a claim under the Private AG statute. *Simonson v. Ameriquest Mortg. Co.*, No. 06-2943 ADMAJB, 2006 WL 3463000, at *4 (D. Minn. Nov. 30, 2006).  That is the case here.

While Plaintiffs allege that Watts Guerra's alleged misrepresentations were made to the public, that does not satisfy the public benefit requirement.  Rather, "courts addressing the public-benefit issue do not focus solely (or even substantially) on the size of the audience receiving an alleged misrepresentation, but rather hone in on 'the relief sought by' the plaintiff." *Buetow*, 888 F.Supp.2d at 961 (citing cases).  A public benefit is typically found when the plaintiff seeks a remedy that will alter the defendant's conduct and not when the plaintiff seeks to remedy a past wrong (*i.e.*, damages).  *Id.*

Here, however, Plaintiffs' request for an injunction is at best incidental to their claim.  *Illinois Farmers Ins. Co. v. Guthman*, No. 17-270, 2017 WL 3971867, at *4 (D. Minn. Sept. 7, 2017) (citations omitted) (a pleading that requests injunctive relief "does not necessarily establish a public benefit," particularly where the relief "is at best incidental to [a] request for money damages").  The clear aim of this action is to recover damages—specifically, forfeiture of fees awarded by the MDL Court; Plaintiffs' Complaint is abundantly clear on this point.[18]  That is not the type of harm contemplated by the Private Attorney General statute.  *Simonson,* 2006 WL 3463000, at *4.

---

[18]  Plaintiffs allege they are entitled to fee forfeiture/disgorgement of attorney's fees at least 30 times.  (Compl. ¶¶ 3, 23-25, 217, 247, 256, 267-68, 275-76, 283, 288, 293, 300, 302, 313, 319, 321, 327, 332, 337, 343, 349, 354, 357, 359-60).  In comparison, Plaintiffs say that their action benefits the public only three times, and in each instance

Tellingly, Plaintiffs reference injunctive relief only a handful of times and even then, *they never specify what conduct or activity they want this Court to enjoin*. Moreover, the few times Plaintiffs reference injunctive relief, they conflate the as-yet-unspecified injunction with their claim for money damages. (Compl. ¶ 247 (alleging defendants' conduct "justif[ies] equitable and injunctive relief … including a disgorgement of the profits and compensation that [defendants] seek to obtain from Farmers in the Syngenta litigation")). "Merely adding a claim for injunctive relief is not sufficient to turn a private action into an action for the public benefit." *Summit Recovery, LLC v. Credit Card Reseller, LLC*, No. CIV.08-5273(DSD/JSM), 2010 WL 1427322, at *5 (D. Minn. Apr. 9, 2010) (citation omitted). Accordingly, Plaintiffs have no standing under Minn. Stat. § 8.31 to pursue claims under any of the consumer protection statutes. Counts IV, V and VI should therefore be dismissed.

## C. Plaintiffs have not pleaded that they relied on alleged misstatements that were made in Minnesota

Additionally, Plaintiffs' false advertising claim (Count V) fails because Plaintiffs do not allege having relied on statements that defendants made *in Minnesota*. That is fatal because Minn. Stat. § 325F.67 reaches only advertisements that are "made, published, disseminated, circulated, or placed before the public *in this state*." *Id.* (emphasis added); accord *Parkhill v. Minnesota Mut. Life Ins. Co.*, 995 F. Supp. 983, 997

---

make the same conclusory allegation. (*Id.* ¶¶ 283, 288, 293 ("This lawsuit provides a public benefit to the 60,000 Farmers and all consumers in Minnesota and across the United States who rely upon an honest and ethical market for legal services.")). Conclusory allegations are not entitled to be presumed true. *Iqbal*, 556 U.S. at 681.

(D. Minn. 1998) ("the plain language of the statute requires that any statements be made in Minnesota").

Plaintiffs allege that Watts Guerra is based in Texas, not Minnesota (Compl. ¶¶ 31, 46-7); Plaintiffs are North Dakota residents (*Id.* ¶¶ 28-29); and Defendants' purported misrepresentations are alleged to have impacted farmers in at least 11 states: "Iowa, Illinois, Nebraska, Minnesota, Indiana, South Dakota, Kansas, Wisconsin, Missouri, Ohio, and North Dakota, etc." (*Id.* ¶ 70).   It thus cannot be assumed that any misrepresentations (much less all of them) were made in Minnesota, and the Complaint is devoid of allegations specifying which, if any, misrepresentations were relied-upon by Bromley or the Kelloggs and made by a Defendant *in Minnesota*.   Absent such allegations, Plaintiffs' MFSAA claims fail as a matter of law.  *Bykov v. Radisson Hotels Int'l, Inc.*, 221 F. App'x 490, 492 (8th Cir. 2007) (dismissing MFSAA claim because there was no causal connection between the alleged misrepresentations on defendant's website and plaintiff's alleged injury).

## V.   PLAINTIFFS MAY NOT ASSERT REMEDIES AS INDEPENDENT CLAIMS FOR RELIEF

Plaintiffs' complaint also confuses remedies and causes of action, asserting "counts" that are not viable under Minnesota law.  This is evident beginning with Count I, in which Plaintiffs purport to assert a claim for declaratory relief.  (Compl. pp. 101–102).  Declaratory judgment is a form of relief dependent upon a valid cause of action. *CCPS Transp., LLC v. Sloan*, 611 Fed. Appx. 931, 933 (10th Cir. 2015).  The Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, confers a remedy and does not constitute an

independent cause of action.  *Prier v. Steed*, 456 F.3d 1209, 1212 (10th Cir. 2006); *Fry Bros. Corp. v. Dep't of Housing and Urban Development*, 614 F.2d 732, 733 (10th Cir. 1980).  Count I does not represent a separate "claim" and should therefore be dismissed.

So too in their Count VII, Plaintiffs seek to assert an independent cause of action that is not recognized under the law.  In Count VII, Plaintiffs assert a claim for treble damages under Minnesota Statute §§ 481.07 and 481.071.  (ECF No. 1, ¶¶ 294-313).  It is well settled, however, that Minn. Stat. §§ 481.07 and 481.071 create penalties, not independent causes of action.  *Handeen v. Lemaire*, 112 F.3d 1339, 1355 (8th Cir. 1997) (approving district court's reasoning that §§ 481.07 and 481.071 "merely authorize treble damages in certain civil suits and do not create independent grounds for relief") (*citing Love v. Anderson*, 240 Minn. 312, 61 N.W.2d 419, 422 (1953)).  In *Love*, the Minnesota Supreme Court held that section 481.07 "deals with penalties for deceit or collusion.  It does not create a new cause of action.  The common law gives the right of action and the statute the penalty."  *Love*, 240 N.W.2d at 422; *see also Beardmore v. Am. Summit Fin. Holdings, LLC*, No. CIV.01-948, 2001 WL 1586785, at *8 (D. Minn. Dec. 10, 2001) (sections 481.07 and 481.071 "merely provide the penalty for a successful cause of action with respect to the offending attorney conduct").  Count VII should be dismissed.

## CONCLUSION

Therefore, and based on the foregoing, Defendants Watts Guerra LLP, Mikal C. Watts, Francisco Guerra, Daniel M. Homolka, P.A. and Yira Law Office, Ltd., Hovland & Rasmus, PLCC, Dewald Deaver, P.C., LLO, Patton, Hoversten & Berg, P.A., Wojtalewicz Law Firm, Ltd., Mauro, Archer & Associates, LLC, Johnson Law Group,

Wagner Reese, LLP, VanDerGinst Law, PC, Law Office of Michael Miller, and Pagel Weikum, PLLP, respectfully request that this action be dismissed in its entirety, with prejudice.

Dated: October 22, 2018                     Respectfully submitted,


                                            /s/ Christopher L. Goodman
                                            Christopher L. Goodman (MN #285626)
                                            THOMPSON, COE, COUSINS & IRONS, LLP
                                            The Historic Hamm Building, Suite 510
                                            408 St. Peter Street
                                            St. Paul, Minnesota 55102
                                            Phone: (651) 389-5025
                                            Fax: (651) 385-5099
                                            cgoodman@thompsoncoe.com

                                            *Counsel for Defendants Watts Guerra LLP,*
                                            *Mikal C. Watts, and Francisco Guerra*

                                            Richard A. Lind, (MN #0063381)
                                            João C.J.G. de Medeiros (MN #0390515)
                                            LIND JENSON SULLIVAN & PETERSON PA
                                            901 Marquette Ave. So.
                                            Minneapolis, Minnesota 55402
                                            Phone: (612) 333-3637
                                            Fax: (612) 333-1030
                                            rick.lind@lindjensen.com
                                            joao.medeiros@lindjensen.com

                                            *Counsel for Defendants Daniel M. Homolka,*
                                            *P.A. and Yira Law Office, Ltd.*

                                            John M. Degnan (MN #21817)
                                            Kathryn M. Short (MN #0393059)
                                            BRIGGS AND MORGAN, P.A.
                                            2200 IDS Center
                                            80 South Eighth Street
                                            Minneapolis, Minnesota 55402
                                            Phone: (612) 977-8400

Fax: (612) 977-8650
jdegnan@briggs.com
kshort@briggs.com

*Counsel for Defendants Hovland & Rasmus,
PLCC, Dewald Deaver, P.C., LLO, Patton,
Hoversten & Berg, P.A., and Wojtalewicz Law
Firm, Ltd.*

Kelly A. Ricke, #16663
Evans & Dixon, L.L.C.
10851 Mastin Blvd., Suite 900
Overland Park, Kansas 66210
Telephone: (913) 701-6810
Facsimile: (913) 341-2293
kricke@evans-dixon.com

*Counsel For Defendant Pagel Weikum, P.L.L.P.*

Arthur G. Boylan
ANTHONY OSTLUND BAER &
LOUWAGIE, P.A.
90 South 7th Street
3600 Wells Fargo Center
Minneapolis, MN 55402
612-349-6969
aboylan@anthonyostlund.com

*Attorney for Defendants Johnson Law Group,
Law Office of Michael Miller, Mauro, Archer &
Associates, LLC, VanDerGinst Law, PC,
& Wagner Reese, LLP*

## CERTIFICATE OF SERVICE

I certify that on October 22, 2018, I caused the foregoing Memorandum of Law, together with the supporting Goodman Affidavit, Exhibits A through C thereto, and an Index of Exhibits, to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

/s/ Christopher L. Goodman
Christopher L. Goodman

Douglas J. Nill
FARMLAW
1100 One Financial Plaza,
120 South 6th St,
Minneapolis, MN 55402
612-573-3669
dnill@farmlaw.com
*Counsel for Plaintiffs*
*Kenneth P. Kellogg, Rachel Kellogg,*
*Kellogg Farms, Inc., Roland B. Bromley*
*And Bromley Ranch, LLC, Individually, and*
*On Behalf of All Similarly Situated*

Arthur G. Boylan
ANTHONY OSTLUND BAER & LOUWAGIE, P.A.
90 South 7th Street
3600 Wells Fargo Center
Minneapolis, MN 55402
612-349-6969
aboylan@anthonyostlund.com
*Counsel for Defendants*
*Johnson Law Group, Law Office of*
*Michael Miller, Mauro, Archer &*
*Associates, LLC, VanDerGinst Law, PC,*
*& Wagner Reese, LLP*

John M. Degnan
Kathryn M. Short
BRIGGS & MORGAN, P.A.
2200 IDS Center
80 South Eighth Street

Minneapolis, MN 55402
612-977-8660
jdegnan@briggs.com
*Counsel for Defendants*
*Dewald Deaver, PC, LLO,*
*Hovland and Rasmus, PLLC,*
*Patton Hoversten & Berg, PA, &*
*Wojtalewicz Law Firm, Ltd.*

Richard A. Lind
Joao C.J.G. De Medeiros
LIND, JENSEN, SULLIVAN & PETERSON
1300 AT&T Tower
901 Marquette Avenue South
Minneapolis, MN 55402
612-333-3637
rick.lind@lindjensen.com
joao.medeiros@lindjensen.com
*Counsel for Defendants*
*Yira Law Office, Ltd. &*
*Daniel M. Homolka*

Kelly A. Ricke, #16663
Evans & Dixon, L.L.C.
10851 Mastin Blvd., Suite 900
Overland Park, Kansas 66210
Telephone: (913) 701-6810
Facsimile: (913) 341-2293
kricke@evans-dixon.com
*Counsel For Defendant Pagel Weikum, P.L.L.P.*