IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| IN RE: SYNGENTA AG MIR 162 CORN LITIGATION ) ) ) This Document Relates To: ) ) *Kellogg, et al. v. Watts Guerra, LLP, et al.*, ) No. 18-2408-JWL ) _____) | MDL No. 2591 Case No. 14-md-2591-JWL |

## **MEMORANDUM AND ORDER**

This matter comes before the Court on plaintiffs' motion to vacate the Court's dismissal order and judgment in favor of defendants (Doc. # 172). In this case, plaintiffs asserted claims against defendants, their counsel in this MDL's underlying litigation against Syngenta. In general, plaintiffs alleged that defendants engaged in a fraudulent scheme to maximize attorney fees, in which they pursued individual lawsuits on behalf of their clients while misrepresenting or failing to disclose the possibility and benefits of participating in class actions. By Memorandum and Order of March 1, 2019, the Court dismissed the action, ruling that plaintiffs had failed to satisfy the constitutional requirement of standing. *See In re Syngenta AG MIR 162 Corn Litig.*, 2019 WL 1002352 (D. Kan. Mar. 1, 2019) (Lungstrum, J.). Plaintiffs now move essentially for reconsideration of that ruling. As more fully set forth below, upon further consideration, the Court concludes that plaintiffs have alleged an injury recognized under Minnesota law, and therefore that defendants are not entitled to dismissal of plaintiffs' Minnesota state-law claims for lack of standing. Accordingly, plaintiffs' motion is **granted in part and**

**denied in part**. The Court vacates the judgment as it pertains to plaintiffs' claims under Minnesota law, and plaintiffs' motion is granted to that extent. The motion is denied with respect to plaintiffs' federal claims, which remain dismissed.

I. **Governing Standards**

Plaintiffs argue by the present motion that the Court erred in dismissing this suit for lack of standing; thus, plaintiffs seek reconsideration of that ruling by the Court. The Court's rules provide that a party seeking reconsideration of a dispositive order or judgment must pursue such relief through a motion filed pursuant to Fed. R. Civ. P. 59(e) or Fed. R. Civ. P. 60. *See* D. Kan. Rule 7.3(a). In the present motion, plaintiffs state that they seek relief under Rule 60(b)(1) and (6). Those provisions impose a high hurdle, allowing for relief only for an obvious error of law that is apparent on the record or in the case of truly extraordinary circumstances. *See Van Skiver v. United States*, 952 F.2d 1241, 1244-45 (10th Cir. 1991).

Defendants argue that plaintiffs have invoked the wrong rule. Defendants rely on *Van Skiver*, in which the Tenth Circuit stated that a challenge to the correctness of the district court's adverse judgment, based on the argument that the court misapplied the law or misunderstood the plaintiff's position, is properly brought under Rule 59(e) or on direct appeal, and does not justify relief under Rule 60(b). *See id.* at 1244. Defendants note that plaintiffs make just such an argument here, and they further note that the 28-day deadline has now passed for a motion under Rule 59. *See* Fed. R. Civ. P. 59(e). Thus, defendants argue that the Court should not address the merits of plaintiffs' motion.

2

Plaintiffs respond to this argument with their own citation to *Van Skiver*. In that case, the Tenth Circuit construed the plaintiffs' motion as one under Rule 60 because plaintiffs had missed the deadline for a motion under Rule 59. *See Van Skiver*, 952 F.2d at 1243. The Tenth Circuit distinguished between the two rules as follows:

> The Federal Rules of Civil Procedure do not recognize a "motion to reconsider." Instead, the rules allow a litigant subject to an adverse judgment to file either a motion to alter or amend the judgment pursuant to Fed. R. Civ. P. 59(e) or a motion seeking relief from the judgment pursuant to Fed. R. Civ. P. 60(b). These two rules are distinct; they serve different purposes and produce different consequences. Which rule applies to a motion depends essentially on the time a motion is served. If a motion is served within ten days of the rendition of judgment, the motion ordinarily will fall under Rule 59(e). If the motion is served after that time it falls under Rule 60(b).

*See id.* (citations omitted). Plaintiffs argue, based on this statement, that because they filed their motion more than ten days after the Court's March 1 judgment, the motion properly falls under Rule 60(b). At the time *Van Skiver* was decided, however, Rule 59(e) required that motions be filed within ten days. The rule has since been amended, and parties now have 28 days from the date of judgment in which to file a motion to alter or amend under Rule 59(e). *See* Fed. R. Civ. P. 59(e). Plaintiffs filed their motion on March 27, 2019, within 28 days of the judgment. Thus, plaintiffs were free to seek relief under Rule 59(e).

Plaintiffs insist in their reply brief that their motion is properly considered under Rule 60(b), but because plaintiffs essentially argue that the Court misapplied the law or misunderstood plaintiffs' position, the motion is properly considered under Rule 59(e), as argued by defendants and as explained by the Tenth Circuit in *Van Skiver*. Defendants argue that the deadline has now passed for a Rule 59(e) motion, but plaintiffs did file the instant motion within the 28-day deadline. Accordingly, the Court will construe the motion

3

as a motion to alter or amend the judgment under Rule 59(e), and it will apply the standards governing review under that rule. *See, e.g.*, *Jones v. Colvin*, 2015 WL 5883910, at *1 (D. Kan. Oct. 8, 2015) (Lungstrum, J.) (construing motion filed within 28 days of the judgment as a motion to alter or amend under Rule 59(e)), *aff'd*, 647 F. App'x 878 (10th Cir. 2016).

The Tenth Circuit has set forth the following standards to govern a motion to reconsider under Rule 59(e):

> Grounds warranting a motion to reconsider include (1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice. Thus, a motion for reconsideration is appropriate where the court has misapprehended the facts, a party's position, or the controlling law. It is not appropriate to revisit issues already addressed or advance arguments that could have been raised in prior briefing.

*See Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000) (citations omitted). Plaintiffs have not cited an intervening change in the law or presented new evidence previously unavailable; rather, plaintiffs argue that the Court erred by misapprehending their arguments and the controlling law concerning standing.

**II.     Analysis**

In its previous order, by which it granted defendants' motions to dismiss for lack of standing, the Court noted that (as plaintiffs had not disputed) plaintiffs' amended complaint alleged only two ways in which plaintiffs were harmed by defendants' conduct: plaintiffs were excluded from class actions in the Syngenta litigation; and plaintiffs would effectively pay attorney fees twice, through a common fund award and under their contingent fee contracts with defendants. *See Syngenta*, 2019 WL 1002352, at *2. The Court ruled that

4

plaintiffs could not suffer either harm under the Syngenta settlement agreement (from which plaintiffs did not opt out) and the Court's orders because all claimants will recover on an equal basis, whether they filed individual suits or participated merely as class members in class actions; and because attorneys will not be permitted to recover anything under contingent fee contracts with claimants. *See id.* at *3. The Court proceeded to address and reject seven specific arguments made by plaintiffs concerning standing. *See id.* at *3-5.

Upon further reflection, however, the Court agrees with plaintiffs' argument that the Minnesota Supreme Court, in the *Perl* cases, held that an attorney's breach of a duty of loyalty to his client constitutes an injury that allows for a remedy of forfeiture of attorney fees, whether or not the client has sustained an actual loss, and that such injury is sufficient to confer standing. *See Rice v. Perl*, 320 N.W.2d 407 (Minn. 1982) (*Perl I*); *Perl v. St. Paul Fire & Marine Ins. Co.*, 345 N.W.2d 209 (Minn. 1984) (*Perl II*); *Gilchrist v. Perl*, 387 N.W.2d 412 (Minn. 1986) (*Perl III*). For that reason, the Court is persuaded that it erred in dismissing plaintiffs' claims under Minnesota law for lack of standing.

In *Perl I*, the plaintiff alleged that her attorney breached his fiduciary duty by failing to disclose certain information, and the Minnesota Supreme Court affirmed the rulings that the attorney had breached a duty and that he was therefore subject to forfeiture of his fees. *See Perl I*, 320 N.W.2d at 411. The court noted that those consequences follow such a breach even if the client "cannot prove actual injury to [herself]." *See id.* (quoting

5

*Anderson v. Anderson*, 197 N.W.2d 720, 724 (Minn. 1972)).[1] In *Perl II*, the supreme court held that the forfeiture ordered in *Perl I* constituted "money damages" for purposes of an insurance policy. *See Perl II*, 345 N.W.2d at 212-13. In so doing, the court stated as follows:

> The law treats a client's right to an attorney's loyalty as a kind of "absolute" right in the sense that if the attorney breaches his or her fiduciary duty to the client, the client is deemed injured even if no actual loss results. . . . The fee forfeiture in this situation is not restitution. A sum usually equivalent to the fee is awarded to the client, not to restore the client to any status quo because of any unjust enrichment, but because the client has been injured. The injury lies in the client's justifiable perception that he or she has or may have received less than the honest advice and zealous performance to which a client is entitled.

*See id.* (footnote omitted). In *Perl III*, the supreme court held that in the absence of bad faith or actual fraud, the attorney's fee forfeiture for a breach of duty is not necessarily total. *See Perl III*, 387 N.W.2d at 416-17. The court repeated its holdings from *Perl II* that "a fee forfeiture is not restitution, but rather damages similar to nominal damages for breach of an 'absolute' right," and that the client "is deemed injured even if no actual loss results." *See id.* at 416 (quoting *Perl II*, 345 N.W.2d at 212). The court continued:

> As *Perl II* makes clear, forfeiture damages are both reparational and admonitory. Because clients have an "absolute right" to their attorney's undivided loyalty, any breach is deemed to result in some harm entitling the client to reparation consisting of at least nominal damages; still, undeniably, the predominant functions of any fee forfeiture are punishment and deterrence.

---

[1] This use of the word "injury" causes some confusion in analyzing Constitutional standing. It may best be understood, the Court believes, as meaning that even if no tangible or financial loss has been suffered, an identifiable harm has occurred. In the later *Perl* cases, the supreme court made clear that an "injury" has indeed been sustained if the attorney breaches a duty of loyalty to the client.

*See id.*

In its previous order, the Court rejected plaintiffs' citation to the three *Perl* cases on the basis that the cases did not address the issue of standing, and it noted that plaintiffs had not cited any cases in which standing was held to exist solely because a breach of duty that did not result in any actual loss. *See Syngenta*, 2019 WL 1002352, at *4. Defendants did not address these cases in their reply brief in support of their motions to dismiss, and in responding to plaintiffs' motion to vacate, defendants only repeat the Court's rationale that the *Perl* cases did not specifically address standing. The Court now concludes that the proper analysis is not so simple. In the *Perl* cases, the Minnesota Supreme Court stated unequivocally – and then confirmed – that if an attorney violates the client's "absolute right" to the attorney's loyalty, thereby breaching the attorney's fiduciary duty to the client, the client is deemed injured and suffered harm, even if no pecuniary loss resulted, because the client did not receive the representation to which he was entitled. Thus, Minnesota law recognizes this particular type of actual injury, and the Court must apply Minnesota law in considering plaintiffs' Minnesota state-law claims. Plaintiffs have alleged facts to support a claim that defendants breached their duty of loyalty to them by placing their own interests ahead of plaintiffs' interests. Therefore, the Court concludes that plaintiffs have demonstrated standing at this stage with respect to their claims arising under state law.

In arguing that a mere breach cannot create standing, defendants cited *Fountain v. Oasis Legal Finance, LLC*, 86 F. Supp. 3d 1037 (D. Minn. 2015), and the Court also cited that case in its previous ruling, *see Syngenta*, 2019 WL 1002352, at *4. A closer look at the *Perl* cases, however, reveals *Fountain*'s lack of relevance. In *Fountain*, the court noted

that the plaintiff had failed to explain how Minnesota's ethical rules can convey constitutional standing in federal court. *See Fountain*, 86 F. Supp. 3d at 1043. In that case, however, the attorney was essentially seeking advice concerning his ethical obligations in a hypothetical circumstance. *See id.* The case did not involve the present situation, in which clients seek a fee forfeiture because of attorneys' actual breach of their duties to the clients. Thus, the court in *Fountain* had no occasion to discuss the *Perl* cases, in which the Minnesota Supreme Court held that such a breach constitutes an actual injury.[2]

The Court does reject plaintiffs' argument that the same injury provides standing for their federal RICO claims. The Minnesota Supreme Court has recognized this type of injury under Minnesota law, so plaintiffs have standing for purposes of claims arising under that law,[3] but plaintiffs have not shown that federal law recognizes the same injury. In addition, the RICO statute's particular standing provision requires an injury in the plaintiff's business or property, *see* 18 U.S.C. § 1964(c), and as discussed below and in the Court's previous opinion, plaintiffs have not identified any such injury that they have suffered or will suffer. Thus, the Court does not vacate its judgment in favor of defendants with respect to plaintiffs' federal RICO claims on this basis.

Nor do plaintiffs' other arguments for reconsideration, most of which the Court previously rejected, support vacating the judgment with respect to plaintiffs' federal claims. For instance, plaintiffs again argue that the JPML, in overruling plaintiffs'

---

[2] Because it does not relate to the issue of standing, the Court does not here address defendants' argument that ethical violations cannot be remedied by private right of action.
[3] Such claims would include plaintiffs' declaratory judgment claims to the extent based on rights created by Minnesota law.

8

objection to inclusion of this case in the MDL, effectively indicated that plaintiffs had standing and the case should be addressed on its merits; as previously explained, however, the JPML did not address the issue of standing, which must always be present before the merits may be reached. *See Syngenta*, 2019 WL 1002352, at *3. Plaintiffs' ownership interest in their claims does not create a due process right to have the merits considered in the absence of standing. *See id.* at *3 n.6.

In addition, plaintiffs again point to their attorney's affidavit, required by Minnesota statute, stating that an expert has concluded that plaintiffs suffered injury by the defendants' deviation from the standard of care. Again, however, plaintiffs cannot establish standing without at least identifying that possible harm, particularly in light of the ultimate settlement and the Court's orders. *See Syngenta*, 2019 WL 1002352, at *4. Plaintiffs also rely on a 2015 opinion letter by a (now-deceased) attorney expert. Although plaintiffs submitted this letter in response to defendants' motion to dismiss, plaintiffs did not specifically cite to that letter in addressing the issue of standing in that response. Moreover, it is not clear that the attorney affidavit was referring to this expert's opinion, as the particular expert was not named in the affidavit. At any rate, the opinion letter addresses only whether particular attorneys should be appointed as lead counsel in the Minnesota Syngenta litigation; it does not include any opinion that these defendants did breach duties to these plaintiffs, and it does not state that these plaintiffs suffered or will suffer any particular concrete injury. The letter also precedes the events (the settlement and the Court's subsequent orders) that foreclose the possibility of the alleged injuries. Accordingly, this opinion letter does not provide a basis for standing.

Plaintiffs again insist, as a general matter, that the alleged misconduct *is* the injury, but their many arguments on the merits of their claims are not helpful to the standing analysis, which requires them to identify an injury in fact resulting from the alleged misconduct. Plaintiffs' cite the Supreme Court's recognition that "the law has long permitted recovery by certain tort victims even if their harms may be difficult to prove or measure." *See Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016). This is not case of a mere failure of proof, however, as plaintiffs have not succeeded in even *identifying* an injury to their business or property that they did or will suffer from defendants' conduct. Plaintiffs also repeat some of their old aphorisms (the ends cannot justify the means) while also finding a new one that they sprinkle throughout their latest briefs (*dolus circuitu non purgatur*, or fraud is not purged by circuity). Again, such "lofty platitudes" do not satisfy the constitutional burden to show injury-in-fact. *See Syngenta*, 2019 WL 1002352, at *4.[4]

In the present motion, plaintiffs also return to a defendant's 2016 lien letter to one plaintiff, which they argue shows an intent to enforce fee contracts.[5] As the Court explained previously, however, the Court's orders, issued subsequent to that letter, do not

---

[4] The rhetoric and accusations and unnecessary references to the underlying merits that dominate plaintiffs' briefs are not helpful to the analysis of the legal issues before the Court. The parties are strongly encouraged to confine future briefs to a dispassionate discussion of the relevant issues.

[5] Plaintiffs cite to the amended complaint in arguing that defendants were enforcing their fee contracts with the other plaintiffs at the time that pleading was filed. The amended complaint, however, contains no such allegation concerning defendants' enforcement of their fee contracts.
(Continued)

allow for any recovery under the fee contracts. *See id.* at *4.[6] Plaintiffs note that defendants have appealed those rulings, but the Court must assume that its orders represent good law at this stage.[7]

In their latest briefs, the parties address the timing of the standing inquiry. In a general sense, plaintiffs argue that harm that existed at the time of their complaint cannot be remedied after the fact, and they repeatedly insist that "[i]t is the *process* that matters, not the outcome." (Emphasis in original.) Subsequent events – the outcome – may determine whether or not plaintiffs in fact will suffer any injury, however, and in this case, events have foreclosed the possibility of the injury alleged by plaintiffs in their complaint.

Plaintiffs insist that standing is measured at the time the suit is filed. *See Davis v. Federal Election Comm'n*, 554 U.S. 724, 734 (2008). Plaintiffs argue therefore that events occurring after they filed their complaint and amended complaint – for instance, the Court's orders and defendants' renunciation of any interest in plaintiffs' fee contracts – do not affect whether they originally had standing. The Supreme Court has also stated, however, that the need to satisfy the requirements of standing "persists throughout the life of the lawsuit." *See Wittman v. Personhuballah*, 136 S. Ct. 1732, 1736 (2016). The Tenth Circuit

---

[6] In their latest brief, plaintiffs refute defendants' alternative argument that plaintiffs have terminated any representation by defendants. It is not clear why plaintiffs would not have terminated any such representation at this point. Nevertheless, the Court need not resolve this dispute because the Court's orders foreclose any possible attempt by defendants to recover fees under contracts with plaintiffs.

[7] Of course, if defendants prevail on appeal and they are permitted to enforce contingent fee contracts with *Syngenta* clients, plaintiffs may at that point be said to have sustained an injury-in-fact, thereby creating standing and providing grounds for plaintiffs to refile the dismissed RICO claims.

recently confirmed that a plaintiff's burden to demonstrate standing exists throughout the litigation, although the terminology changes depending on the stage of litigation – mootness is "the doctrine of standing set in a time frame," and a case becomes moot if standing is lost after commencement of the litigation. *See Collins v. Daniels*, 916 F.3d 1302, 1314 (10th Cir. 2019) (internal quotations and citations omitted). In this case, even if plaintiffs had standing at the time they filed their original complaint, the Court's subsequent orders foreclosed the possibility that the alleged injury would occur. Thus, whether it is termed a lack of standing or mootness, this issue of timing does not provide a basis to relieve plaintiffs from the judgment of dismissal.

Plaintiffs note that mootness is subject to a possible exception if the "allegedly unlawful activity is capable of repetition, yet evading review." *See WildEarth Guardians v. Public Serv. Co. of Colo.*, 690 F.3d 1174, 1182-83 (10th Cir. 2012). Plaintiffs have not explained how that exception would apply here, however. Plaintiffs also note that the burden would shift to defendants to establish mootness, *see id.* at 1183, but defendants have met any such burden here by citing the relevant Court orders. Finally, plaintiffs argue that the Court dismissed their claims based on a lack of standing and that defendants should not be permitted now to rely on the discrete theory of mootness. As the Tenth Circuit noted in *Collins*, however, mootness is merely a lack of standing arising during the litigation. Defendants originally sought dismissal based on the argument that the Court's orders foreclosed the possibility of the alleged injury, and that argument remains the basis for the Court's ruling.

In their motion to vacate, plaintiffs argue that the Court misunderstood the harm that plaintiffs are claiming. They do not and cannot dispute, however, that the complaint alleges only the two types of harm identified above (loss of the opportunity to participate in a class action, potential for "double-dip" attorney fees). Now plaintiffs argue that their injury consists of the attorney fees that defendants seek to recover from the Court's attorney fee award pools.[8]

First, this argument is improper at this stage, as plaintiffs could have made the argument in response to defendants' motions to dismiss. Second, plaintiffs did not allege any such harm in their amended complaint, and therefore the Court did not err in failing to address the argument. Plaintiffs did not seek to amend to assert such a harm in responding to defendants' motions to dismiss (or any time thereafter). Third, this argument fails on its merits, as any award to defendants from the attorney fee pools would not affect the amounts received by these plaintiffs. On this issue, the Court does not agree with plaintiffs' interpretation of the Court's rulings. Even if defendants were prohibited from receiving any awards from the Minnesota pool or the IRPA pool, plaintiffs' recovery would not be affected, as the Court set aside one third of the settlement amount for attorney fees, without regard to which attorneys would recover those fees. Plaintiffs argue that the Court's fee award was based in part on submissions and applications by these defendants, but the Court

---

[8] Plaintiffs insist that the pools represent their property, and that defendants are enforcing the fee contracts by seeking such awards. The Court has made clear, however, that attorneys may recover fees only from the Court's fee award, which has been removed from the settlement fund that claimants will receive, and that such awards are *in lieu of* any recovery under contingent fee contracts, which may not be enforced. Thus, plaintiffs are mistaken in referring to a 12-percent cap on recovery of fees under the fee contracts.

13

assures plaintiffs that it would have awarded one third as attorney fees even without those submissions. Thus, plaintiffs' recovery is not affected – and they are not injured in fact – by any fee awards received by defendants from the Court's pools.

Plaintiffs also make reference to defendants' applications for awards of expenses, although they have not made any specific argument based on an injury from expense awards as opposed to fee awards. It is true that if defendants were denied awards of expenses, more would remain for claimants to recover. Again, however, plaintiffs have not alleged any such harm. Nor have plaintiffs plausibly explained how they will receive less for their claims, traceable to expense awards to these defendants, specifically because of the alleged misconduct by these defendants. Therefore, plaintiffs' new theory of injury does not provide a basis for the Court to reverse its prior dismissal.

Accordingly, because plaintiffs have demonstrated standing for their claims based on Minnesota law, those claims remain in the case. In its prior order, in which it dismissed the entire case for lack of standing, the Court did not address defendants' other arguments in support of dismissal. *See Syngenta*, 2019 WL 1002352, at *2 n.4. Thus, the Court will rule on the remainder of defendants' motions to dismiss, which remain pending to the extent they address plaintiffs' state-law claims, based on the briefing already submitted. In addition, in the prior order the Court granted plaintiffs' motion for leave to file a sur-reply brief in opposition to the motions to dismiss, *see id.* at *1 n.2, and in ruling on the remainder of defendants' motions, the Court will consider the arguments in that sur-reply (including the exhibit that the Court originally declined to consider because it did not relate to standing). So that defendants may have the last word, however, in accordance with this

Court's customary practice, defendants are granted leave to file a sur-sur-reply brief, limited to 15 total pages, addressing only arguments (not related to standing) contained in plaintiffs' sur-reply brief. Any such brief shall be filed on or before **May 31, 2019**.

Finally, plaintiffs also request that the Court suggest to the JPML that this case be remanded to the District of Minnesota, from whence it came to this MDL. The Court denies that request. Plaintiffs appear to base this request on their argument that the case never should have been transferred into the MDL in the first place. That issue has been fully litigated before the JPML, however, and it is not appropriate for this Court to question the JPML's decision. Plaintiffs also note that pretrial proceedings are complete with respect to the cases subject to the settlement with Syngenta. Four other cases that were excepted from the settlement remain in the MDL, however, and pretrial proceedings have not been completed in three of those cases. The MDL has not been dissolved, and this case has not completed pretrial proceedings. Accordingly, there is no basis for a suggestion of remand at this time.

IT IS THEREFORE ORDERED BY THE COURT THAT plaintiffs' motion to vacate the Court's dismissal order and judgment (Doc. # 172) is hereby **granted in part and denied in part**. The motion is granted with respect to plaintiffs' claims arising under Minnesota law, and the judgment in favor of defendants on those claims is hereby vacated. The motion is denied with respect to plaintiffs' claims arising under federal law.

IT IS FURTHER ORDERED THAT defendants shall file any sur-sur-reply brief in support of their motions to dismiss, limited as set forth herein, on or before **May 31, 2019**.

IT IS SO ORDERED.

Dated this 21st day of May, 2019, in Kansas City, Kansas.

s/ John W. Lungstrum<br>
John W. Lungstrum<br>
United States District Judge