UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS

| | |
|---|---|
| IN RE: SYNGENTA AG MIR162 CORN LITIGATION<br><br>This document relates to:<br><br>*Kenneth P. Kellogg, et al. v. Watts Guerra LLP, et al.*,<br><br>Case No. 18-cv-2408-JWL-JPO | MDL No. 2591<br><br> Case No. 14-md-02591-JWL-JPO |

---

**DEFENDANTS' SUR-SUR-REPLY MEMORANDUM
IN SUPPORT OF THEIR MOTIONS TO DISMISS (ECF Nos. 140, 149)**

---

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ........................................................................................................ 1

ARGUMENT .............................................................................................................. 3

I.     PLAINTIFFS WAIVED THE RIGHT TO CHALLENGE THE
       ADEQUACY OF DEFENDANTS' REPRESENTATION WHEN THEY
       CHOSE NOT TO OBJECT BEFORE THE SETTLEMENT WAS
       APPROVED ...................................................................................................... 3

       A.     An Allegation of Attorney Misconduct Is An Objection to the
              Settlement and Cannot be Brought in a Separate Proceeding ....................... 5

       B.     The JPML Transfer Order Does Not Curtail This Court's
              Jurisdiction ................................................................................................ 9

       C.     The Law of the Case Doctrine Does Not Apply ........................................... 9

II.    AN ATTORNEY HAS NO LIABILITY UNDER THE MINNESOTA
       CONSUMER PROTECTION STATUTES ........................................................ 11

III.   NO PUBLIC BENEFIT MEANS NO LIABILITY UNDER THE
       MINNESOTA CONSUMER PROTECTION STATUTES ................................. 13

IV.    THE ABSENCE OF PECUNIARY LOSS IS DISPOSITIVE OF THE
       FRAUD CLAIMS .............................................................................................. 15

## TABLE OF AUTHORITIES

**Cases**

*Beyers v. Richmond*, 594 Pa. 654 (Pa. 2007)....................................................................12

*Buetow v. A.L.S. Enterprises, Inc.*, 888 F. Supp. 2d 956 (D. Minn. 2012) ..................14,15

*Davis v. Re-Trac Mfg. Corp.,* 276 Minn. 116, 149 N.W.2d 37 (1967) ...........................15

*Devlin v. Scardelletti*, 536 U.S. 1, 122 S. Ct. 2005, 2010, 153 L. Ed. 2d 27 (2002)..............................................................................................................4

*Evangelical Lutheran Church in America Board of Pensions v. Spherion Pacific Workforce LLC*, Civ. No. 04–4791, 2005 WL 1041487 (D. Minn. May 4, 2005)....................................................................................................................14

*In re Am. Exp. Fin. Advisors Sec. Litig.*, 672 F.3d 113 (2d Cir. 2011) ...............................4

*In re Disciplinary Action against Montez*, 812 N.W.2d 58 (Minn. 2012) ..........................2

*In re Integra Realty Res., Inc.*, 354 F.3d 1246 (10th Cir. 2004) .........................................4

*In re Levaquin Prods. Liab. Litig.*, 752 F. Supp. 2d 1071 (D. Minn. 2010) .....................14

*In re: Syngenta, MDL No. 2591, 2018 WL 3849403 (U.S. Jud. Pan. Mult. Lit. Aug. 1, 2018)* ..........................................................................................................5

*In re Syngenta Ag Mir 162 Corn Litig.*, No. 14-MD-2591-JWL, 2018 WL 1726345 (D. Kan. Apr. 10, 2018).....................................................................................4,5

*In re Syngenta AG MIR162 Corn Litig., No. 214MD02591JWLJPO, 2018 WL 6710081 (D. Kan. Dec. 7, 2018)*................................................................................3,8

*Kaplan v. Reed Smith LLP*, 919 F.3d 154 (2d Cir. 2019) ...................................................7

*L & H Airco, Inc. v. Rapistan Corp.*, 446 N.W.2d 372 (Minn. 1989)..................................2

*Laskey v. International Union (UAW)*, 638 F.2d 954 (6th Cir. 1981)..................................8

*Padco, Inc. v. Kinney & Lange*, 444 N.W.2d 889 (Minn. App. 1989)...........................6,12

*Peterson v. BASF Corp.*, 618 N.W.2d 821 (Minn. App. 2000).........................................11

*Peterson v. BASF Corp.*, 675 N.W.2d 57 (Minn. 2004) ("*Peterson III*") ........................ 11

*Quern v. Jordan*, 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979)) .......................... 10

*Schaaf  v. Residential Funding Corp.*, No. CIV 05-1319 JNE/SRN, 2006 WL
 2506974 (D. Minn. Aug. 29, 2006) ................................................................................... 15

*Select Comfort Corp. v. Tempur Sealy Int'l, Inc.*, 11 F.Supp.3d 933(D.Minn.
2014) ...................................................................................................................................... 14

*Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370 (9th Cir. 1993) ....................................... 8

*Wyly v. Weiss*, 697 F.3d 131 (2d Cir. 2012) ....................................................................... 7

## **Statutes**

Minnesota Statute § 8.3 ...................................................................................................... 14

Minnesota Statute § 544.42 .................................................................................................. 7

## INTRODUCTION

Having concluded that an alleged breach of the duty of loyalty will support standing for Plaintiffs' claims under Minnesota state law, the Court granted leave for Defendants to "have the last word" on their motions to dismiss by submitting a sur-sur-reply addressing non-standing arguments raised in Plaintiffs' sur-reply. (ECF No. 196, pp. 15-16). None of Plaintiffs' sur-reply arguments can save their claims. Those claims should be dismissed or significantly narrowed for all the reasons previously briefed, including the following.

First, Plaintiffs' claims have been waived. Allegations of attorney misconduct are a collateral attack on a class settlement and may not be raised outside of class proceedings. Further, all settlement class members were given notice and were bound to comply with the deadlines in the MDL—including for objections to the settlement itself *and to fee petitions pursuant thereto*. Thus, when Plaintiffs chose not to raise any objections by the August 2018 deadline or at the November 2018 Fairness Hearing, they waived the right to do so.

To avoid this conclusion, Plaintiffs argue that a claim for fee forfeiture is not an objection to the Class Settlement Agreement or Defendants' fee applications. But the adequacy of class counsel's representation is a required finding for approval of a class settlement under Federal Rule of Civil Procedure 23(e)(2)(A) and 23(e)(2)(C)(iii). Further, these Plaintiffs are settlement members who were, as such, subject to the Court's orders for raising objections to fee petitions. And here, each of Plaintiffs' state law claims is dependent on allegations that their former counsel engaged in misconduct—

1

consisting of alleged breaches of Defendants' fiduciary duties or violations of the Minnesota Rules of Professional Conduct.   Indeed, this Court has determined that Plaintiffs only have standing to the extent Defendants allegedly breached the duty of loyalty.  (ECF No. 196, p. 7).  As Plaintiffs' state law claims are dependent on allegations of attorney misconduct, continuing to pursue this action is a collateral attack on matters already resolved in the main MDL proceeding, including the core finding that Rule 23(e) demands—that the settlement (including its attorney fee provisions) was fair, adequate, and reasonable.

Waiver aside, Plaintiffs' consumer protection claims also fail because the Minnesota Consumer Protection Statutes do not apply to professionals, and because Plaintiffs have failed to meet the public-benefit requirement.  The plain language of the statutes does not bring professionals within the scope of the remedies they provide.  No Minnesota court has ever found a professional liable under a consumer protection statute. And the few times the issue has arisen, Minnesota courts have consistently declined to subject professionals to liability.  What is more, the Minnesota Supreme Court has ruled in no uncertain terms that "an attorney's violation of the Rules of Professional Conduct does not give rise to a private cause of action against an attorney."  *In re Disciplinary Action against Montez*, 812 N.W.2d 58, 66–67 (Minn. 2012); accord *L & H Airco, Inc. v. Rapistan Corp.*, 446 N.W.2d 372, 380 (Minn. 1989); Minn. R. Prof. Conduct, Scope.  In addition, and in any event, Plaintiffs indisputably seek money damages to remedy a supposed past wrong—*i.e.*, a private action, which is not permissible.  Allowing Counts

IV, V, and VI to proceed would represent a clear departure from Minnesota law. Accordingly, those claims should be dismissed.

Finally, pecuniary loss is a required element of each of Plaintiffs' fraud-based claims.  Plaintiffs do not dispute that fact.  And as the Court noted in its May 21, 2019 Order, Plaintiffs have not suffered any injury to their business or property from Defendants' conduct, and never will.  (ECF No. 196, p. 10).  For this reason, too, Counts II, IX, X, XI, XIII and XIV should therefore be dismissed.

## ARGUMENT

### I.   PLAINTIFFS WAIVED THE RIGHT TO CHALLENGE THE ADEQUACY OF DEFENDANTS' REPRESENTATION WHEN THEY CHOSE NOT TO OBJECT BEFORE THE SETTLEMENT WAS APPROVED

Plaintiffs are members of the nationwide settlement class this Court approved in December 2018.  (ECF No. 196, pp. 4-5 (noting that "plaintiffs have become members of the settlement class (and declined to opt out)")).[1]  Plaintiffs chose not to opt out and are therefore bound by the Settlement Agreement and Final Order that approved it.  *In re Syngenta AG MIR162 Corn Litig.*, No. 214MD02591JWLJPO, 2018 WL 6710081, at *4 (D. Kan. Dec. 7, 2018) ("Pursuant to Rule 23(c)(3)(B), the Court finds that all those members who did not timely and validly request exclusion from the Settlement Class are Settlement Class members who are bound by the Settlement Agreement and this Final

---

[1]   Indeed, as Plaintiffs recently averred, all but one of them submitted a claim in the Syngenta MDL. (ECF Nos. 194-2, 194-3, 194-4, 194-5, 194-6, 194-7).  Plaintiff Roland Bromley's Declaration does not specify whether he has submitted an on-line claim in the Syngenta MDL.

Order and Judgment.").[2]   That includes the August 17, 2018 deadline to object to the settlement or to counsel's Fee & Expense Applications. (ECF No. 3532 at ¶ 13; see also ECF No. 3613 (changing deadline for all objections to all fee applications from October 17 to August 17)).   Plaintiffs chose not to raise an objection by the August 2018 deadline and thereby waived and forfeited the right to do so later.[3]   See also *In re Integra Realty Res., Inc.*, 354 F.3d 1246, 1251, 1257–58 (10th Cir. 2004) (class member waived his right to appeal because he did not strictly comply with the objection procedure laid out by the district court).

While the Final Order is binding and preclusive as to all class members, it is especially so with respect to these Plaintiffs.   That is because each of them was advised of their rights as class members and had ample time to raise an objection.   The Settlement Agreement was preliminarily approved two weeks before this action was commenced. *In re Syngenta AG MIR162 Corn Litig.*, No. 214-MD-2591-JWLJPO,  2018 WL 1726345

_____

[2] See also *Devlin v. Scardelletti*, 536 U.S. 1, 9, 122 S. Ct. 2005, 2010, 153 L. Ed. 2d 27 (2002) (noting that district court's approval of a class settlement binds class members and therefore amounts to "a 'final decision of [petitioner's] right or claim" sufficient to trigger his right to appeal'") (citation omitted); accord *In re Am. Exp. Fin. Advisors Sec. Litig.*, 672 F.3d 113, 129 (2d Cir. 2011) ("Absent a violation of due process or excusable neglect for failure to timely opt out, a class-action settlement agreement binds all class members who did not do so.").

[3] ECF No. 3532, pp. 6-7 ("Any Class Member who does not timely file valid written objections…shall be deemed to have waived and shall forfeit his, her, or its right to object to the Settlement Agreement, its terms, the petition for attorneys' fees and expenses, the proposed plan of allocation and distribution, any request for service/incentive awards, and any other aspect of the settlement or issues relating thereto, including the right to appear and be heard at the Fairness Hearing and the right to appeal from any judgment relating to these matters.").

(D. Kan. April 10, 2018); ECF No. 1.  By then, the deadlines to opt out or object had been established and notice of the deadlines had been authorized. *Id.*, 2018 WL 1726345 ("Approved Schedule for Final Approval Process").  In the preliminary approval order, the Court addressed objections from approximately 9,000 class members who, like the Plaintiffs in this action, raised concerns the class settlement would unfairly treat individual plaintiffs.  The Court directed the objectors—and anyone with similar concerns—to raise them "as an objection to final approval or in connection with attorney fee applications."  *In re Syngenta Ag Mir 162 Corn Litig.*, No. 14-MD-2591-JWL, 2018 WL 1726345, at *14-15 (D. Kan. Apr. 10, 2018).[4]  Plaintiffs were specifically advised of their rights with respect to the Settlement Agreement well before the August 2018 deadline. (ECF No. 103-4 (Attorney Nill confirming "I have advised my clients of their rights with respect to the National Class Action Settlement Agreement.")).  Yet no objection was raised.

A.   **An Allegation of Attorney Misconduct Is An Objection to the Settlement and Cannot be Brought in a Separate Proceeding**

To avoid waiver, Plaintiffs argue that a claim for fee forfeiture does not constitute an objection to the Settlement Agreement or Defendants' fee applications.  (ECF No. 170, Argument § II).  The critical flaw in Plaintiffs' argument is that it glosses over the conduct Plaintiffs must prove in order to secure the relief they seek.  Indeed, *each of Plaintiffs' state law claims hinges on allegations that their former counsel engaged in*

_____

[4] The JPML relied on this language in the preliminary approval order in concluding the *Kellogg* action shared common questions of fact with the Syngenta MDL.  See *In re: Syngenta*, MDL No. 2591, 2018 WL 3849403 at *2 (U.S. Jud. Pan. Mult. Lit. Aug. 1, 2018).

*misconduct*.  This conclusion is undeniable.  The remedy Plaintiffs' seek—fee forfeiture—is dependent on Plaintiffs proving that a fiduciary duty was breached. (ECF No. 170, p. 9 (citing *Perl I*, *Perl II*, and *Perl III* cases)).  The elements of a breach of a fiduciary duty claim mirror the elements of a malpractice claim: the existence of an attorney-client relationship, breach of a fiduciary duty, causation, and damages. See *Padco, Inc. v. Kinney & Lange*, 444 N.W.2d 889, 891 (Minn. App. 1989), review denied (Minn. Nov. 15, 1989).  For the fiduciary duty claim to succeed, Plaintiffs must therefore prove their former counsel engaged in misconduct. *Id*.[5]

Plaintiffs allege Defendants breached their fiduciary duties by deceptively soliciting them to sign contingent fee agreements, excluding Plaintiffs from class action proceedings, and entering into undisclosed fee agreements with class counsel through which Defendants supposedly would extract an unreasonable fee. (ECF No. 119-1, Count VIII, ¶ 421).  Each of Plaintiffs' remaining state law claims is based on the same allegations that allegedly constitute the breach of fiduciary duty. (*Compare id.*, Count VIII, ¶ 421 *with* Count IX, ¶ 428; Count X, ¶ 433; Count XI, ¶ 438; Count XII, ¶¶ 443-444; Count XIII, ¶ 450; Count XIV, ¶ 455).  Plaintiffs allege that Defendants engaged in misconduct no less than 15 times. (ECF No. 119-1, ¶¶ 2. 22. 26. 91-2. 94-6, 258, 348, 388, 399, 402, 404, 459).  Their amended pleading contains *six pages* of allegations that

---

[5] As shown by the allegations in Plaintiffs' amended pleading and the retainer agreements attached as Exhibits to our original motion to dismiss, Plaintiffs Kelloggs, Bromley, Heitkamp, Kruger and Stringer have *never* been represented by many of the Defendants named in this action, including: Yira Law Office, Hovland and Rasmus, PLLC, Dewald Deaver, PC, LLO, Givens Law, LLC, Mauro, Archer & Associates, LLC, Johnson Law Group, Wagner Reese, LLP, VanDerGinst Law, PC, Patton Hoversten & Berg, PA, and Wojtalewicz Law Firm, Ltd. (collectively referred to as "Non-Retained Defendants").

Defendants violated the Minnesota Rules of Professional Conduct. (*Id.*, pp. 104-110). Plaintiffs filed an affidavit pursuant to Minn. Stat. § 544.42, stating they have an expert who is prepared to opine that Defendants "deviated from the applicable standard of care[.]" (ECF No. 170, p. 29; ECF No. 119-5 (Affidavit of Attorney Nill)).  And in their Sur-Reply, Plaintiffs argue that Defendants' "ethics violations inform the Court or a jury as to whether there was a breach of fiduciary obligations." (ECF No. 170, p. 29). Without question, the gravamen of Plaintiffs' claim is that their former counsel engaged in misconduct.

The fact each of Plaintiffs' state law claims is predicated on allegations of misconduct is dispositive of this action in its entirety.  As the Circuit Courts of Appeals have repeatedly held, allegations of attorney misconduct are a collateral attack on the fairness and reasonableness of a class settlement and cannot be raised outside class proceedings,

> In sum, we hold that where, as here, the parties had a full and fair opportunity to litigate the reasonableness of counsel's representation, a district court's award of "fair and reasonable" attorneys' fees precludes a subsequent action for legal malpractice for counsel's advocating the settlement.

*Wyly v. Weiss*, 697 F.3d 131, 144 (2d Cir. 2012); see also ECF No. 141, Argument § II (citing, *inter alia*, *Wyly*; *id.*, p. 43, n.13 (citing cases)).  Indeed, the approval of a class settlement "resolve[s] one of the *elements* of a malpractice claim—namely, counsel's deficient performance."  *Kaplan v. Reed Smith LLP*, 919 F.3d 154, 159–60 (2d Cir. 2019) (citing *Wyly*, 697 F.3d at 141) (emphasis as in original).  Plaintiffs cannot point to a single case that says anything to the contrary.  Thus, when Plaintiffs chose not to raise

their attorney misconduct allegations or otherwise oppose Defendants' fee petitions within the time allowed by the Court, they waived they right to do so in a separate proceeding.

Waiver is especially appropriate here because allowing this action to proceed would threaten the finality of the Court's findings with respect to the settlement.  In approving the Settlement the Court specifically found that all class members had been provided adequate notice of (a) the material terms of the Settlement; (b) all applicable deadlines; (c) their right to opt out of the Settlement or object to any aspect of the Settlement; (d) the attorneys' fees that counsel would seek; and (e) the date, place, and time of the Rule 23(e)(2) Fairness Hearing.  See *In re Syngenta AG MIR162 Corn Litig.*, No. 214-MD-2591-JWLJPO, 2018 WL 6710081, at *2 (D. Kan. Dec. 7, 2018).  Thus, when the settlement was approved the adequacy of the class's representation—and the propriety of fee awards to counsel, pursuant to the CSA and orders of this Court—was determined.[6]  Plaintiffs are class members yet failed to make any objection to the conduct of any counsel—or to any fees to be paid pursuant to the CSA fee provisions or Defendants' fee applications filed pursuant thereto.  Accordingly, Plaintiffs are barred from doing so now.  (MDL ECF No. 3532 at ¶¶ 13, 19).  This action is an improper collateral attack and should be dismissed in its entirety.

---

[6] See, e.g., *Laskey v. International Union (UAW)*, 638 F.2d 954, 957 (6th Cir. 1981) ("[A] finding that the class was adequately represented is necessary for finding the settlement was fair and reasonable[.]"); *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1378 (9th Cir. 1993) ("[I]n finding the settlement fair, adequate and reasonable the court implicitly found that representation was adequate.").

**B.      The JPML Transfer Order Does Not Curtail This Court's Jurisdiction**

Unable to dispute what this Court's orders plainly demanded, or produce any authority contrary to *Wyly*, Plaintiffs resort to their well-worn argument that the JPML's transfer order prohibits this Court from dismissing their claim—as if the transfer order somehow *guarantees* these Plaintiffs class certification and a trial date. (ECF No. 170, Argument § II).  This is obviously wrong, as this Court has already ruled. (ECF No. 168, p. 7 ("The JPML certainly did not state that plaintiffs' claims could not be dismissed at the pleading stage[.] … Moreover, the JPML statement that the case would go to this Court for 'pretrial proceedings' did not mean that plaintiffs are guaranteed a trial on their claims, as pretrial proceedings in this MDL have included the Court's consideration of motions to dismiss at the pleading stage.")).  Indeed, contrary to Plaintiffs' argument, the Panel expressly acknowledged this Court's broad jurisdiction over pretrial proceedings:

> All appropriate pretrial proceedings can take place in the transferee court, where much of the conduct about which plaintiffs complain is alleged to have occurred.  The precise contours of such pretrial proceedings are, as always, dedicated to the discretion of the transferee judge.

(JPML Doc. No. 801, p. 3).  As this Court has already determined, there is nothing in the transfer order that insulates Plaintiffs' claim from dismissal.

**C.      The Law of the Case Doctrine Does Not Apply**

Plaintiffs contend the law of the case doctrine applies to the JPML's transfer order and that the transfer order prohibits dismissal of their claim. (ECF No. 170, pp. 21-22).  But the law of the case doctrine only applies to the decisions of a court with jurisdiction to resolve the merits. *Wilmer v. Bd. of Cnty. Comm'rs of Leavenworth Cnty.*, 69 F.3d 406,

409–10 (10th Cir. 1995). The JMPL's authority is limited to the transfer of cases; it does not have jurisdiction to resolve the merits of those cases. *In re Motion Picture "Standard Accessories" and "Pre-Vues" Antitrust Litig.*, 339 F. Supp. 1278, 1280 (J.P.M.L. 1972). Moreover, as a practical matter, transfer under section 1407 grants the transferee court the same jurisdiction and powers as the transferor court. (ECF No. 161, p. 24, n.11 (citing cases)). Thus, by transferring the case to Kansas, the JPML in no way curtailed this Court's authority to reach waiver or any of the other arguments Defendants raised in their motions to dismiss. (*See* Argument, § I.B, supra). Plaintiffs offer no response to this argument.

More specifically, the law-of-the-case doctrine "comes into play only with respect to issues previously determined." *Quern v. Jordan*, 440 U.S. 332, 347, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979)). As just noted, the Panel expressed no opinions regarding the merits of Plaintiffs' claims, the sufficiency of the allegations raised in their amended pleading, nor did the Panel preclude this Court from exercising jurisdiction over pretrial proceedings. The Panel did not reach any of the issues Defendants raise in their motions to dismiss and for that reason the law of the case doctrine does not apply.

Plaintiffs also contend the JPML transfer order is a final order "*for the purpose of a transfer.*" (ECF No. 170, p. 22 (emphasis added)). That is a non-sequitur. Plaintiffs' argument is that the transfer order precludes *dismissal*, not that the transfer order precludes this Court from transferring the cause elsewhere. Accepting that premise provides zero support for Plaintiffs' argument that the law of the case doctrine precludes dismissal of their claim.

Plaintiffs' reliance on *Peterson v. BASF Corp.*, 675 N.W.2d 57 (Minn. 2004) ("*Peterson III*"), underscores the point.  According to Plaintiffs, the Minnesota Supreme Court applied the law of the case doctrine to prohibit a party from challenging class certification on appeal because the issue was not raised when the same party (BASF) petitioned for Supreme Court review of the Court of Appeals' decision in *Peterson v. BASF Corp.*, 618 N.W.2d 821 (Minn. App. 2000), rev. denied (Minn. Jan. 26, 2001) ("*Peterson I*"). (ECF No. 170, p. 22).  Thus, Plaintiffs contend, the JPML's decision to transfer the case for pretrial proceedings has become the law of this case.  (*Id.*).  But all the *Peterson* cases show is that a party cannot challenge class certification in a subsequent appeal—*i.e.*, an issue that was expressly decided by the district court but which the appellant (BASF) chose not address when it first sought appellate review.

In contrast, here, the JPML never reached or even commented on any of the issues Defendants raise in their motions to dismiss—indeed, Defendants' motions to dismiss were filed months after the transfer order was issued.  The JPML gave this Court a wide berth to decide all pretrial issues including, of course, the sufficiency of the allegations in Plaintiffs' pleading. (JPML Doc. No. 801, p. 3; ECF No. 161, p. 24 n.11 (citing cases)).  Dismissing this action would not conflict with any decision made in the JPML's transfer order.

## II.   AN ATTORNEY HAS NO LIABILITY UNDER THE MINNESOTA CONSUMER PROTECTION STATUTES

Defendants moved for dismissal of Counts IV, V, and VI because the "merchandise" and "services" defined in the Minnesota Consumer Protection statutes do

not include providers of professional services, and because Minnesota courts have held the consumer protection statutes inapplicable to professionals. (ECF No. 161, p. 27-28 (citing cases)).  In fact, Minnesota courts have consistently rejected *both* efforts to bring professionals within the ambit of the consumer protection statutes (ECF No. 141, p. 45 (citing cases))[7] *and* efforts to impose civil liability for alleged violations of attorney ethics rules (*id.*, p. 26 n.11).  Plaintiffs ignore the latter set of cases and, as to the former, have not produced a single decision that says anything to the contrary.

The only citations Plaintiffs can muster include a self-published article from a North Carolina law firm and a publication from the National Consumer Law Center ("NCLC").  According to Plaintiffs, those publications show that malpractice claims are outside the scope of the consumer protection statutes, while breach of duty claims are not. (ECF No. 170, pp. 30-31).  But that is a meaningless distinction because in Minnesota the elements of a malpractice and a breach of fiduciary duty claim are the same.  *Padco, Inc.*, supra, 444 N.W.2d at 891.

Plaintiffs' argument is also dependent on an overly narrow interpretation of the "work" they are disputing.  By Plaintiffs' lights, consumer protection claims are viable against an attorney so long as the plaintiff does not challenge the *results* their counsel achieved.  But such hair splitting completely ignores the fact that malpractice and breach of fiduciary duty claims can arise regardless of the end result that counsel achieves—

---

[7] *See also* ECF No. 141, p. 45 (citing *Beyers v. Richmond*, 594 Pa. 654, 671 (Pa. 2007) ("The majority of jurisdictions that have addressed this issue have held that the regulation of attorneys does not fall within the ambit of consumer protection laws.") (citations omitted).

indeed, that is precisely what this Court recently concluded when it partially vacated its earlier order dismissing this action. (ECF No. 196, p. 7 ("Plaintiffs have alleged facts to support a claim that defendants breached their duty of loyalty to them by placing their own interests ahead of plaintiffs' interests.")).

Finally, neither publication supports Plaintiffs' novel and unsupported interpretation of Minnesota law. The authors from the North Carolina firm state, without citing to a single case, that Minnesota is among the states with consumer protection statutes that apply to professionals. (ECF No. 153, p. 120).[8] Considering the author's interpretation of Minnesota law is wholly unsupported, it will not surprise that the article has never been cited by a single Minnesota court. For that reason, and because it is squarely at odds with Minnesota precedent, the article carries zero persuasive value. Similarly, the NCLC publication does not purport to analyze any Minnesota case or statute. Embracing Plaintiffs' interpretation of Minnesota's consumer protection statutes would therefore represent a clear departure from precedent as well as the plain language of the statutes.

## III.   NO PUBLIC BENEFIT MEANS NO LIABILITY UNDER THE MINNESOTA CONSUMER PROTECTION STATUTES

The Minnesota Consumer Protection statutes do not provide for a private cause of action unless the plaintiff complies with the Private Attorney General Statute, Minn. Stat.

---

[8] A copy of the article titled *Applicability of Professional Service Exemptions Under State Consumer Protection Statutes*, which was authored by Richard T. Boyette and Melody J. Canady of Cranfill Sumner & Hartzog, LLP, was filed with Affidavit of Christopher L. Goodman, February 26, 2019, as Exhibit E (ECF No. 161-1); see also https://www.cshlaw.com/about/, last visited on January 28, 2019.

§ 8.3, by showing the action will benefit the public. (ECF No. 141, pp. 46-47 *Buetow v. A.L.S. Enterprises, Inc.*, 888 F. Supp. 2d 956, 959 (D. Minn. 2012) ("[P]ublic benefit is a necessary element of a plaintiff's cause of action under the Private AG statute.") (additional citations omitted)).   "Courts consistently focus their inquiry on the relief sought by the plaintiff, and find no public benefit where plaintiffs request only damages[.]" *In re Levaquin Prods. Liab. Litig.*, 752 F. Supp. 2d 1071, 1077 (D. Minn. 2010); *Select Comfort Corp. v. Tempur Sealy Int'l, Inc.*, 11 F.Supp.3d 933, 937 (D.Minn.2014).   The public benefit requirement is dispositive here because the clear aim of Plaintiffs' action is to recover money damages. (ECF No. 141, p. 47 n. 18 (noting that "Plaintiffs allege they are entitled to fee forfeiture/disgorgement of attorney's fees at least 30 times[]" in their amended pleading.).   Plaintiffs assert they are entitled to injunctive relief, yet never actually articulate what injunctive relief they seek.   (ECF No. 141, p. 47 n. 18).   Moreover, Plaintiffs withdrew their motion for a preliminary injunction months ago, further evidencing the relief they seek is for their own benefit and not the public. (ECF No. 127).

Plaintiffs' response is limited to one line in their Sur-Reply brief, which simply reiterates their view that a large number of corn growers may potentially have claims against Defendants.   (ECF No. 170, p. 27; ECF No. 153, p. 128).   But as established in Defendants' Reply brief, as a matter of law, the number of potential claimants who stand to gain from an action does ***not*** show a public benefit.   (ECF No. 161, p. 31 (citing *Evangelical Lutheran Church in America Board of Pensions v. Spherion Pacific Workforce LLC*, Civ. No. 04–4791, 2005 WL 1041487, at *4 (D. Minn. May 4, 2005)

14

(dismissing MCFA claim because plaintiff "confuses large numbers with the public benefit")).[9] The only people who could profit from this action are Plaintiffs and that one truth confirms this action will not benefit the public. *Schaaf v. Residential Funding Corp.*, No. CIV 05-1319 JNE/SRN, 2006 WL 2506974, at *16 (D. Minn. Aug. 29, 2006) (no public benefit because the "redress" sought "is to compensate Plaintiffs for their injuries"), aff'd, 517 F.3d 544 (8th Cir. 2008).

## IV.  THE ABSENCE OF PECUNIARY LOSS IS DISPOSITIVE OF THE FRAUD CLAIMS

Pecuniary loss is an essential element of Plaintiffs' fraud, negligent misrepresentation, fraudulent inducement, aiding and abetting, and civil conspiracy claims. (ECF No. 141, p. 48-49, n. 15 (citing cases)).[10] Plaintiffs do not dispute this fact, meaning they must show that each of them was damaged and that such a loss was proximately caused by the alleged misrepresentation.  (*Id.* (citing *Davis v. Re-Trac Mfg. Corp.,* 276 Minn. 116, 117, 149 N.W.2d 37, 39 (1967)).  As established in our opening brief, Plaintiffs have paid no bill, they lost nothing from exclusion from the Lanham Act

---

[9] See also *Buetow*, 888 F.Supp.2d at 961 (citing cases) ("courts addressing the public-benefit issue do not focus solely (or even substantially) on the size of the audience receiving an alleged misrepresentation, but rather hone in on 'the relief sought by' the plaintiff").

[10] Although proving a pecuniary loss is not an element of a fraudulent execution claim, that claim has been rendered moot. (ECF No. 119-1, Count XII).  In Count XII, Plaintiffs seek to void the contingent fee agreements with their former counsel and seek to recover any fees Defendants thereby derive. (*Id.*, ¶ 446).  But that deed has already been done. Plaintiffs terminated their relationship with Defendants by filing this action, Defendants have disavowed any lien rights or enforcement of the fee contracts, and this Court's orders make clear that no fee will be collected from class members via contingent fee contracts (see *Syngenta*, 2019 WL 1002352, at *4)—a ruling which Defendants will *not* be challenging on appeal.

litigation class, and Plaintiffs have neither paid nor "lost" any recovery to which they would otherwise have been entitled. (ECF No. 141, Argument § I).  Plaintiffs do not dispute those facts, either.  Moreover, this Court recently observed that "plaintiffs have not succeeded in even *identifying* an injury to their business or property that they did or will suffer from defendants' conduct." (ECF No. 196, p. 10).  Indeed, "any award to defendants from the attorney fee pools would not affect the amounts received by these plaintiffs." (*Id.*, p. 13).  Counts II, IX, X, XI, XIII and XIV should therefore be dismissed.


Dated: May 31, 2019                         Respectfully submitted,


                                            /s/ Christopher L. Goodman
                                            Christopher L. Goodman (MN #285626)
                                            Thompson, Coe, Cousins & Irons, LLP
                                            The Historic Hamm Building, Suite 510
                                            408 St. Peter Street
                                            St. Paul, Minnesota 55102
                                            Phone: (651) 389-5025
                                            Fax: (651) 385-5099
                                            cgoodman@thompsoncoe.com

                                            *Counsel for Defendants Watts Guerra LLP,*
                                            *Mikal C. Watts, and Francisco Guerra*

                                            Richard A. Lind, (MN #0063381)
                                            João C.J.G. de Medeiros (MN #0390515)
                                            Lind Jenson Sullivan & Peterson PA
                                            901 Marquette Ave. So.
                                            Minneapolis, Minnesota 55402
                                            Phone: (612) 333-3637
                                            Fax: (612) 333-1030

16

rick.lind@lindjensen.com
joao.medeiros@lindjensen.com

*Counsel for Defendants Daniel M. Homolka,*
*Law Office, Ltd.*

John M. Degnan (MN #21817)
Kathryn M. Short (MN #0393059)
Briggs and Morgan, P.A.
2200 IDS Center
80 South Eighth Street
Minneapolis, Minnesota 55402

Phone: (612) 977-8400
Fax: (612) 977-8650
jdegnan@briggs.com
kshort@briggs.com

*Counsel for Defendants Hovland & Rasmus,*
*PLCC, Dewald Deaver, P.C., LLO, Patton,*
*Hoversten & Berg, P.A., and Wojtalewicz Law*
*Firm, Ltd.*

Kelly A. Ricke, #16663
Evans & Dixon, L.L.C.
10851 Mastin Blvd., Suite 900
Overland Park, Kansas 66210
Telephone: (913) 701-6810
Facsimile: (913) 341-2293
kricke@evans-dixon.com

*Counsel For Defendant Pagel Weikum, P.L.L.P.*

Arthur G. Boylan
ANTHONY OSTLUND BAER &
LOUWAGIE, P.A.
90 South 7th Street
3600 Wells Fargo Center
Minneapolis, MN 55402
612-349-6969
aboylan@anthonyostlund.com

17

*Attorney for Defendants Johnson Law Group,*
*Law Office of Michael Miller, Mauro, Archer &*
*Associates, LLC, VanDerGinst Law, PC,*
*& Wagner Reese, LLP*

## CERTIFICATE OF SERVICE

I certify that on May 31, 2019, I caused the foregoing Defendants' Sur-Sur Reply
Memorandum In Support of Their Motions to Dismiss (Ecf Nos. 141, 149) to be
electronically filed with the Clerk of the Court using the CM/ECF system, which will
send notification of such filing to all counsel of record.

/s/ Christopher L. Goodman
Christopher L. Goodman

Douglas J. Nill
FARMLAW
1100 One Financial Plaza,
120 South 6th St,
Minneapolis, MN 55402
612-573-3669
dnill@farmlaw.com
*Counsel for Plaintiffs*
*Kenneth P. Kellogg, Rachel Kellogg,*
*Kellogg Farms, Inc., Roland B. Bromley*
*And Bromley Ranch, LLC, Individually, and*
*On Behalf of All Similarly Situated*

Arthur G. Boylan
ANTHONY OSTLUND BAER & LOUWAGIE, P.A.
90 South 7th Street
3600 Wells Fargo Center

Minneapolis, MN 55402
612-349-6969
aboylan@anthonyostlund.com
*Counsel for Defendants*
*Johnson Law Group, Law Office of*
*Michael Miller, Mauro, Archer &*
*Associates, LLC, VanDerGinst Law, PC,*
*& Wagner Reese, LLP*

John M. Degnan
Kathryn M. Short
BRIGGS & MORGAN, P.A.
2200 IDS Center
80 South Eighth Street
Minneapolis, MN 55402

612-977-8660
jdegnan@briggs.com
*Counsel for Defendants*
*Dewald Deaver, PC, LLO,*
*Hovland and Rasmus, PLLC,*
*Patton Hoversten & Berg, PA, &*
*Wojtalewicz Law Firm, Ltd.*

Richard A. Lind
Joao C.J.G. De Medeiros
LIND, JENSEN, SULLIVAN & PETERSON
1300 AT&T Tower
901 Marquette Avenue South
Minneapolis, MN 55402
612-333-3637
rick.lind@lindjensen.com
joao.medeiros@lindjensen.com
*Counsel for Defendants*
*Yira Law Office, Ltd. &*
*Daniel M. Homolka*

Kelly A. Ricke,
Evans & Dixon, L.L.C.
10851 Mastin Blvd., Suite 900
Overland Park, Kansas 66210
Telephone: (913) 701-6810
Facsimile: (913) 341-2293
kricke@evans-dixon.com
*Counsel For Defendant Pagel Weikum, P.L.L.P.*