IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| IN RE: SYNGENTA AG MIR 162 CORN LITIGATION ) ) ) This Document Relates To: ) ) *Kellogg, et al. v. Watts Guerra, LLP, et al.*, ) No. 18-2408-JWL ) _____) | MDL No. 2591  Case No. 14-md-2591-JWL |

## **MEMORANDUM AND ORDER**

This matter again comes before the Court on the motion to dismiss filed by defendants Watts Guerra, LLP ("Watts Guerra"), Mikal Watts, and Francisco Guerra (Doc. # 140), in which most of the other defendants have joined (Doc. ## 142, 143, 144, 146).[1] Defendant Lowe Eklund Wakefield Co., LPA ("Lowe") has also filed a motion to dismiss (Doc. # 149), in which it joins the other defendants' motion and asserts additional bases for dismissal. For the reasons set forth below, the Court **grants the motions in part and denies them in part**. The motions are granted with respect to Counts I, IV, V, VI, IX, X, XI, XII, and XIV of the amended complaint, and with respect to Count XIII to the extent based on an underlying fraud claim, and those claims are hereby dismissed. The motion is denied with respect to the other remaining counts.

---

[1] Defendants Givens Law, LLC and Cross Law Firm, LLC have not appeared in this action, and no proof of service has been filed for either defendant. Thus, all defendants that have been served have moved to dismiss the action.

This matter also comes before the Court on plaintiffs' motions for certification of a question to the Minnesota Supreme Court (Doc. # 197) and for certification for interlocutory appeal or remand (Doc. # 203). For the reasons set forth below, the Court **denies** those motions.

Finally, because claims remain in this case, the motion by Joanna and John Burke for reconsideration or review of the Magistrate Judge's order denying their motion to intervene in the action (Doc. # 167) is no longer moot. Any response to that motion shall be filed on or before **August 26, 2019**, and any reply brief shall be filed on or before **September 9, 2019**.

## I. Background

This action has been transferred into multi-district litigation (MDL), over which this Court presides, involving claims by farmers and others in the corn industry against various related entities known collectively as Syngenta. On December 7, 2018, the Court certified a settlement class and approved a global settlement[2] of claims against Syngenta, including claims that had been pending in the MDL, in a similar consolidated proceeding in Minnesota state court, and in federal court in Illinois. *See In re Syngenta AG MIR 162 Corn Litig.*, 357 F. Supp. 3d 1094 (D. Kan. 2018), *appeals filed.* The Court also awarded one third of the settlement fund as attorney fees. *See id.* On December 31, 2018, the Court

---

[2] The settlement did not include claims against Syngenta by a few grain handlers and exporters, but did include all claims by corn producers (except for claims asserted by those who opted out of the settlement class).

allocated the attorney fee award among various pools of attorneys (with further allocation within the pools to be completed by the three courts).  *See In re Syngenta AG MIR 162 Corn Litig.*, 2018 WL 6839380 (D. Kan. Dec. 31, 2018), *appeals filed.*  In so doing, the Court allocated a portion of the fee award to a pool to compensate individually-retained private attorneys (IRPAs), and it held that any attorney representing a client on a contingent fee basis relating to the settled claims could recover attorney fees only from the Court's fee award and the allocation pools.  *See id.*

Watts Guerra and various associated counsel filed individual lawsuits against Syngenta in Minnesota state court on behalf of a large number of clients.  Those clients were generally excluded from the litigation classes certified in the MDL and in Minnesota state court.  Watts Guerra agreed to the settlement, however, and its clients were included in the settlement class.  Watts Guerra and associated counsel have been awarded attorney fees from the Minnesota pool allocation, *see In re Syngenta AG MIR 162 Corn Litig.*, 2019 WL 3203356 (D. Kan. July 16, 2019), and they seek further awards of fees from the IRPA pool allocation.

In the present suit (*Kellogg*), plaintiffs are six sets of corn growers who were formerly represented by Watts Guerra and associated counsel in the Syngenta litigation. Plaintiffs assert claims against those attorneys, including claims under the federal Racketeer Influenced and Corrupt Organizations (RICO) Act, Minnesota statutes, and Minnesota common law.  Plaintiffs also seek to assert those claims on behalf of a class of approximately 60,000 farmers who signed retainer agreements with defendants relating to the Syngenta litigation.  In general, plaintiffs allege that defendants engaged in a fraudulent

scheme to maximize their attorney fees, in which defendants pursued individual lawsuits while misrepresenting or failing to disclose the possibility and benefits of participating in class actions.

On March 1, 2019, the Court dismissed this action in its entirety for lack of standing. *See In re Syngenta AG MIR 162 Corn Litig. (Kellogg)*, 2019 WL 1002352 (D. Kan. Mar. 1, 2019). On May 21, 2019, however, the Court reconsidered that decision, and it vacated the dismissal with respect to plaintiffs' state-law claims, while reaffirming its dismissal of plaintiffs' claims under federal law for lack of standing. *See In re Syngenta AG MIR 162 Corn Litig. (Kellogg)*, 2019 WL 2184863 (D. Kan. May 21, 2019). Accordingly, the Court must now consider the alternative arguments for dismissal raised by defendants in their motions to dismiss, which arguments the Court did not consider in its prior orders.[3]

## II.     Motions to Dismiss

### A.     Governing Standards

The Court will dismiss a cause of action for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) when the factual allegations fail to "state a claim to relief that is plausible on its face." *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The complaint need not contain detailed factual allegations, but a plaintiff's obligation to provide the grounds of entitlement to relief requires more than labels and conclusions; a

---

[3] Because plaintiffs had been permitted to file a sur-reply brief in opposition to defendants' motions to dismiss, the Court granted leave to defendants to file a sur-sur-reply brief.

formulaic recitation of the elements of a cause of action will not do. *See id.* at 555. The "[f]actual allegations must be enough to raise a right to relief above the speculative level." *See id.*

## B. *Common-Law Fraud Claims – Lack of Pecuniary Loss*

Defendants argue that plaintiffs have not plausibly alleged that they suffered any pecuniary loss, and that therefore they cannot maintain the following "fraud-based claims": fraudulent misrepresentation (Count IX), negligent misrepresentation (Count X), fraudulent inducement (Count XI), aiding and abetting (to the extent based on fraud) (Count XIII), and civil conspiracy to commit fraud (Count XIV).[4] As defendants point out, and plaintiffs do not dispute, each of those claims under Minnesota law[5] requires a showing of pecuniary loss. *See Hoyt Props., Inc. v. Production Resource Group, L.L.C.*, 736 N.W.2d 313, 318 (Minn. 2007) (fraudulent misrepresentation); *Valspar Refinish, Inc. v. Gaylord's, Inc.*, 764 N.W.2d 359, 368, 369 (Minn. 2009) (fraudulent inducement, negligent misrepresentation); *Rilley v. MoneyMutual, LLC*, 2017 WL 3822727, at *10 (D. Minn. Aug. 30, 2017) (aiding and abetting and civil conspiracy claims require underlying tort) (citing cases).

The Court agrees that these claims are subject to dismissal on this basis. As the Court explained in its prior opinions concerning standing, because defendants are prohibited by Court order from recovering fees under any retainer contracts with plaintiffs,

---

[4] Defendants concede that plaintiffs' claim for fraudulent execution (Count XII) does not require a showing of pecuniary loss.

[5] Plaintiffs have asserted their state-law clams under Minnesota law, and both parties have applied that state's law to these claims in their briefs.

5

and because plaintiffs (and all Syngenta settlement claimants) will recover on the same basis, whether or not they were represented by counsel, plaintiffs have not plausibly alleged that they have suffered or will suffer any pecuniary loss as a result of the alleged misconduct by defendants. *See Kellogg*, 2019 WL 1002352, at *2-5; *Kellogg*, 2019 WL 2184863, at *4-6. Nor have plaintiffs identified any such injury in their briefs. Indeed, in opposing defendants' motions to dismiss, plaintiffs have not directly addressed this issue of a lack of pecuniary loss, instead arguing injury only in the context of standing. As the Court recently concluded, the only injury plausibly alleged by plaintiffs is the mere fact that defendants breached their fiduciary duties to them, as recognized in the *Perl* cases. *See Kellogg*, 2019 WL 2184863, at *3. Thus, *Perl* is the blueprint for the present case, and in that case, all claims requiring proof of damages were summarily dismissed. *See Rice v. Perl*, 320 N.W.2d 407, 410 (Minn. 1982). Similarly here, plaintiffs cannot maintain any claim that requires proof of a pecuniary loss, as they have been unable to identify any such loss here.

Accordingly, the Court dismisses plaintiffs' claims for fraudulent misrepresentation (Count IX), negligent misrepresentation (Count X), and fraudulent inducement (Count XI). In addition, plaintiffs have based their civil conspiracy claim (Count XIV) on underlying claims of fraud, and thus the Court dismisses that claim as well. Finally, plaintiffs have based their aiding and abetting claim (Count XIII) on both fraud and breach of fiduciary duty; thus, the Court dismisses that claim only to the extent based on an underlying claim of fraud.

   C. *Minnesota Statutory Claims – No Public Benefit*

Plaintiffs have asserted claims for violations of three Minnesota consumer-protection statutes: the Minnesota Consumer Fraud Act (MCFA), Minn. Stat. § 325F.69 (Count IV); the Minnesota False Statement in Advertisement Act (MFSAA), Minn. Stat. § 325F.67 (Count V); and the Minnesota Uniform Deceptive Trade Practices Act (MUDTPA), Minn. Stat. § 325D.44 (Count VI). In each case, plaintiffs assert a claim for a violation of the statute pursuant to Minnesota's private attorney general statute, Minn. Stat. § 8.31, which provides a private right of action for persons injured by business practices in violation of certain statutes. The Minnesota Supreme Court has held that a plaintiff may maintain an action under Section 8.31 only if it demonstrates that its cause of action benefits the public. *See Ly v. Nystrom*, 615 N.W.2d 302, 314 (Minn. 2000). Defendants argue that plaintiffs' claims under these statutes lack the necessary public benefit.

The Court addressed this issue in ruling on Syngenta's motion to dismiss in the main litigation in this MDL. *See In re Syngenta AG MIR 162 Corn Litig.*, 131 F. Supp. 3d 1177, 1229-31 (D. Kan. 2015). In dismissing claims by the corn producer plaintiffs for violations of two Minnesota consumer-protection statutes, the Court discussed and applied the applicable considerations as follows:

> Minnesota courts have not set forth a clear test for determining when a claim benefits the public for this purpose. *See Buetow v. A.L.S. Enters., Inc.*, 888 F. Supp. 2d 956, 960 (D. Minn. 2012). In making that determination, however, Minnesota courts have considered "the form of the deceptive practice and the type of relief sought." *See Summit Recovery, LLC v. Credit Card Reseller, LLC*, 2010 WL 1427322, at *5 (D. Minn. Apr. 9, 2010); *see also Buetow*, 888 F. Supp. 2d at 960-62.

7

> The court in *Buetow* summarized this consideration by Minnesota courts of the relief sought as follows:
>
>> Although there exists no hard-and-fast rule, a public benefit typically will be found when the plaintiff seeks relief primarily aimed at altering the defendant's conduct (usually, but not always, through an injunction) rather than seeking remedies for past wrongs (typically through damages). This is because individual damages, generally speaking, merely enrich (or reimburse) the plaintiff to the defendant's detriment; they do not advance a public interest.
>
> *See Buetow*, 888 F. Supp. 2d at 961 (citation and footnote omitted). In these counts, plaintiffs seek only damages to compensate them for past wrongs (and attorney fees). They have not sought injunctive or other forward-looking relief, and although that failure is not necessarily dispositive, *see id.* at 961 n.6, it does weigh strongly against a finding of a public benefit here.

*See Syngenta*, 131 F. Supp. 3d at 1230.

The same result is appropriate here. Plaintiffs primarily seek the forfeiture of attorney fees awarded to defendants, and thus they seek to remedy past wrongs. Plaintiffs do purport to seek injunctive relief, in the form of the forfeiture of fees and the voiding of retainer contracts, but that relief is also intended to remedy past wrongs. Plaintiffs do not seek to enjoin continuing misrepresentations or deceptions by defendants – indeed, at this stage of the MDL, defendants are no longer soliciting corn producers for the assertion of claims against Syngenta – and thus, plaintiffs do not seek forward-looking relief aimed at altering defendants' ongoing misconduct. Therefore, plaintiffs' statutory claims do not serve the public benefit.

Plaintiffs argue that they assert claims on behalf of an entire class, but the Court rejected that argument made by the corn producers in the underlying MDL. *See id.* at 1230. Under Minnesota law, the pursuit of class claims does not necessarily provide a public

8

benefit, *see id.*, and plaintiffs' class claims also seek to remedy past wrongs only. Plaintiffs also argue that this case has garnered national attention and that this suit will educate the public concerning attorneys' conduct with respect to mass torts and class actions. The Court rejected just such a public-education argument by the corn producers, however. *See id.* (citing *Buetow*); *see also Buetow*, 888 F. Supp. 2d at 962 (although any successful lawsuit recovering damages could have the potential to cause some deterrent public benefit, such a broad application of the private attorney general statute would allow any "dog bite case" to fall within the statute; thus "this type of ostensible benefit is too remote or theoretical to pass muster"). Finally, some courts have considered the fact that the alleged misrepresentations were made to the public at large. *See id.* at 1230-31 (citing cases). As in the underlying MDL, however, the misrepresentations alleged here were directed to a specific group within a specific industry, and thus this factor does not weigh in favor of finding a public benefit here. *See id.* at 1231. For these reasons, the Court concludes that plaintiffs cannot satisfy the public-benefit requirement, and it therefore dismisses plaintiffs' statutory claims asserted through Section 8.31, the private attorney general statute.

The Court notes that only two of the three statutes cited by plaintiffs – MCFA and MFSAA – fall within the explicit scope of Section 8.31, subd. 3, which refers back to the statutory violations listed in subdivision 1 of the statute. *See* Minn. Stat. 8.31, subd. 1, 3. MUDTPA is not included in that list, perhaps because that statute contains its own provision for an individual claim. *See State ex rel. Humphrey v. Philip Morris Inc.*, 551 N.W.2d 490, 496 (Minn. 1996) (citing Minn. Stat. § 325D.45, subd. 1). Nevertheless,

plaintiffs have asserted their MUDTPA claim only through Section 8.31, and because they cannot satisfy a requirement for a claim asserted under Section 8.31, the claim as pleaded is subject to dismissal.  *See Syngenta*, 131 F. Supp. 3d at 1231 (dismissing claim under statute with its own private right of action that was nevertheless pleaded as asserted through Section 8.31).  Moreover, any amendment to assert the MUDTPA claim under Section 325D.45 would be futile because such a claim is limited to one for an injunction against a continuing deceptive trade practice, *see* Minn. Stat. § 325D.45, subd. 1, and as noted above, there is no longer any danger that other consumers could be harmed by deceptive solicitation with respect to claims against Syngenta.  Accordingly, the Court dismisses all three statutory claims on this basis.[6]

### D.     *Additional Arguments Concerning Remaining Claims*

In Count I, plaintiffs seek a declaratory judgment to the effect that defendants' retainer contracts with them are void, that defendants' have forfeited any claim to compensation from plaintiffs, and that defendants have waived any quantum meruit claim against plaintiffs.  Thus plaintiffs essentially seek to prohibit defendants from recovering fees from plaintiffs for work done pursuant to the retainer contracts.  As previously discussed many times by the Court, its orders in this MDL preclude the possibility of defendants' recovery of any fees directly from plaintiffs.  Accordingly, the Court would not exercise its discretion to issue the requested declaration, and it therefore dismisses

---

[6] In light of this ruling, the Court need not address defendants' argument that these statutes do not apply to professional services or any other alternative basis for dismissal of these claims.

Count I.  Plaintiffs seek the same relief in its claim for fraudulent execution (Count XII), and for the same reason, the Court would not grant such equitable relief; the Court therefore dismisses Count XII as well.

The Court's rulings leave only plaintiffs' claim for breach of fiduciary duty (Count VIII) and their claim for aiding and abetting such a breach (Count XIII).  Plaintiffs also seek treble damages under a Minnesota statute in Count VII, but plaintiffs have voluntarily dismissed that count to the extent that it asserts an independent cause of action, and they have agreed that by Count VII they only seek a remedy for their other claims.

The Court rejects defendants' argument that plaintiffs have not stated a claim for aiding and abetting in Count XIII.  Defendants rely on the particularity requirement of Fed. R. Civ. P. 9(b), but that requirement would apply to this claim only to the extent based on an underlying claim of fraud, and thus it would not apply to the remaining claim that is based solely on a breach of fiduciary duty.  The Court also concludes that plaintiffs have sufficiently alleged defendants' knowledge.

The Court also rejects defendants' argument that plaintiffs have waived these claims by failing to object in the MDL with respect to awards of attorney fees.  The Court agrees with the MDL Panel that plaintiffs' claims are separate from that fee process.  Plaintiffs are seeking a forfeiture of fees awarded to defendants, and there was no mechanism for plaintiffs to assert such a claim in that process.  Moreover, because plaintiffs have already been injured by any breach of fiduciary duty (as ruled by the Minnesota Supreme Court in the *Perl* cases), plaintiffs' claims are ripe.

11

Finally, the Court rejects any additional arguments for dismissal raised by Lowe in their separate motion. While only one plaintiff has alleged a direct connection to Lowe, Lowe could be liable to other plaintiffs through the aiding-and-abetting claim. The Court concludes that plaintiffs have alleged sufficient facts to support their remaining claims based on breach of fiduciary duty as recognized in the *Perl* cases.

### III.    Motion for Certification of a Question

Plaintiffs have filed a motion seeking certification of a question to the Minnesota Supreme Court pursuant to Minn. Stat. § 480.065, subd. 3. The request arises from defendants' argument that the consumer-protection statutes of which plaintiffs have alleged violations (Counts IV, V, VI) do not apply to professionals such as attorneys. Plaintiffs seek to certify a question asking whether those statutes apply to the entrepreneurial aspects of legal practice.

As discussed above, the Court has dismissed the claims based on those statutes on an alternative basis (the lack of a public benefit), and the Court need not reach the issue raised by the proposed question. Thus, any answer from the Minnesota Supreme Court to the proposed question would not be determinative of an issue pending in this Court, as required under the certification statute. *See* Minn. Stat. § 480.065, subd. 3. Accordingly, the Court denies the motion.

### IV.    Motion for Certification for Interlocutory Appeal or Remand

In another motion, plaintiffs request various forms of relief: entry of final judgment on the dismissed federal claims pursuant to Fed. R. Civ. P. 54(b); certification for interlocutory appeal from the dismissal of those claims pursuant to 28 U.S.C. § 1292(b); an order vacating the dismissal of the federal claims; and a suggestion of remand of this action to the transferor court. The Court notes that plaintiffs have devoted very little of their briefs in support of this motion to the standards that govern those requests. Instead, plaintiffs have used most of their briefs to reargue the merits of the standing issue or even the merits of their underlying claims.[7] The Court has already twice considered the issue of standing with respect to the federal claims, and it will not reconsider its ruling in the context of deciding the present motion.

### A. *Entry of Final Judgment – Rule 54(b)*

Plaintiffs seek an order directing entry of final judgment with respect to the dismissed federal claims. Rule 54(b) provides that a court may direct entry of a final judgment as to some claims in an action "only if the court expressly determines that there is no just reason for delay." *See* Fed. R. Civ. P. 54(b). The Tenth Circuit has discussed the purpose of the rule and the standard for its application as follows:

> The purpose of Rule 54(b) is to avoid the possible injustice of a delay in entering judgment on a distinctly separate claim or as to fewer than all of the parties until the final adjudication of the entire case by making an immediate appeal available. However, Rule 54(b) preserves the historic federal policy against piecemeal appeals – a policy that promotes judicial efficiency, expedites the ultimate termination of an action and relieves appellate courts of the need to repeatedly familiarize themselves with the

---

[7] Plaintiffs continue to make the same arguments that they have made multiple times before, but without disputing or even acknowledging the Court's particular reasoning in previously rejecting those arguments.

> facts of a case.  Thus, the rule attempts to strike a balance between the undesirability of more than one appeal in a single action and the need for making review available in multiple-party or multiple-claim situations at a time that best serves the needs of the litigants.
>
> Rule 54(b) entries are not to be made routinely.  Indeed, trial courts should be reluctant to enter Rule 54(b) orders since the purpose of this rule is a limited one:  to provide a recourse for litigants when dismissal of less than all their claims will create undue hardships.  Thus, a certification under Rule 54(b) is only appropriate when a district court adheres to the rule's requirement that a court make two express determinations.  First, the district court must determine that the order it is certifying is a final order.  Second, the district court must determine that there is no just reason to delay review of the final order until it has conclusively ruled on all claims presented by the parties to the case.
>
> . . .
>
> . . .  To be considered "final", an order must be "final" in the sense that it is an ultimate disposition of an individual claim entered in the course of a multiple claims action.  While the exact definition of "claim" for purposes of Rule 54(b) is unsettled, a "claim" is generally understood to include all factually or legally connected elements of a case.  This notion of connectedness also appears in *Moore's Federal Practice 3d* § 202.06[2], which states:
>
>> [A] judgment is not final unless the claims disposed of are separable from the remaining claims against the same parties. *Separability* is an elusive term, and no reliable litmus test exists for determining when a claim is a distinct claim of relief. Courts, however, have concentrated on two factors:  (1) the factual overlap (or lack thereof) between the claims disposed of and the remaining claims, and (2) whether the claims disposed of and the remaining claims seek separate relief.
>
> Thus, a judgment is not final for the purposes of Rule 54(b) unless the claims resolved are distinct and separable from the claims left unresolved.

*See Oklahoma Turnpike Auth. v. Bruner*, 259 F.3d 1236, 1241-43 (10th Cir. 2001) (internal quotations and additional citations omitted).

14

Plaintiffs have not shown that any of the relevant factors favor entry of a final judgment with respect to the federal claims.  First, the federal claims are based on the same alleged facts that underlie their other claims, and plaintiffs seek essentially the same relief on all claims (the forfeiture of fees); thus, all of the claims are so intertwined, with so much factual and legal overlap, as to be inseparable.  *See id.* at 1243.  Accordingly, the Court is not persuaded that its order dismissing the federal claims represents a final order for purposes of this rule.  Second, plaintiffs have not shown that they would suffer undue hardship without an immediate appeal, such that there is no just reason for delay.  Plaintiffs note that they might have to go to trial twice if successful in a posttrial appeal.  The prevailing policy is to avoid multiple appeals, however, and because of the MDL process, an immediate appeal in this case would raise the specter of multiple appeals to *multiple appellate courts* – first to the Tenth Circuit upon interlocutory appeal, then to the Eighth Circuit after conclusion of this case upon remand of this case to the District of Minnesota (the MDL transferor court).[8]  Accordingly, the Court denies the motion for entry of final judgment under Rule 54(b).

### B.     *Certification for Interlocutory Appeal – Section 1291(b)*

---

[8] Plaintiffs cite *In re Food Lion, Inc., Fair Labor Standards Act "Effective Scheduling" Litigation*, 73 F.3d 528 (4th Cir. 1996), in which the court required entry of final judgment under Rule 54(b) so that multiple appeals in an MDL could be considered by the same appellate court.  *See id.*  In plaintiffs' case, however, the issue for appeal (dismissal of the federal claims for lack of standing) affects only a single case in the MDL, and thus there is no risk that multiple appellate courts will face the same issue after remand.  Indeed, the risk of having appeals before different appellate courts only arises here if Rule 54(b) certification is *granted*.  Thus, *Food Lion*, because of its court's advocacy of a policy of avoiding appeals to multiple appellate courts, actually favors denial of the motion here.

In the alternative, plaintiffs seek certification for interlocutory appeal from the dismissal of the federal claims pursuant to 28 U.S.C. § 1292(b), which provides as follows:

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such an order.

*See id.* Upon such certification by the district court, the Court of Appeals may or may not decide to permit the interlocutory appeal in its discretion. *See id.* Certification under this section is within the discretion of the district court. *See Swint v. Chambers County Comm'n*, 514 U.S. 35, 47 (1995). In deciding whether to exercise its discretion under Section 1292(b), the Court is mindful of the "long-established policy preference in the federal courts disfavoring piecemeal appeals." *See Conrad v. Phone Directories Co.*, 585 F.3d 1376, 1382 (10th Cir. 2009).

The Court declines in its discretion to issue the requested certification. Plaintiffs have never cited a case involving no pecuniary loss in which a mere breach of fiduciary duty was held to be sufficient to confer standing to pursue RICO claims; thus, the Court cannot conclude that there is substantial ground for difference of opinion on the issue. Moreover, even if the plaintiffs were deemed to have constitutional standing, the RICO claims would still be subject to dismissal – RICO requires proof of an injury to "business or property," *see* 18 U.S.C. § 1964(c), and thus plaintiffs' failure plausibly to allege a pecuniary injury (discussed above) would also doom the federal claims. Thus, a contrary

decision on the issue of constitutional standing would not materially advance the ultimate termination of this litigation.

### C. *Request to Vacate and for Suggestion of Remand*

Finally, plaintiffs ask the Court to vacate the order dismissing the federal claims and to suggest to the MDL Panel that this case should be remanded to the transferor court. First, there is no basis for vacating the Court's dismissal order, and that request is therefore denied. Second, the Court declines plaintiffs' invitation to suggest remand at this time. The Panel has decided (and reaffirmed) that this case belongs in the MDL, and there is no basis for remand before pretrial proceedings are concluded in this case. Moreover, the Court rejects plaintiffs' argument that remand is warranted because this Court has become a fact witness concerning defendants' misrepresentations and deceptions in the MDL litigation. Although 28 U.S.C. § 455(b) requires recusal if a judge has personal knowledge of evidentiary facts or is likely to be a material witness, *see id.* § 455(b)(1), (5)(iv), that statute does not apply to knowledge obtained in the course of related judicial proceedings. *See United States v. Page*, 828 F.2d 1476, 1481 (10th Cir. 1987). Thus, there is no basis for recusal here, and therefore no basis for suggestion of remand. Accordingly, the Court denies this motion in its entirety.

IT IS THEREFORE ORDERED BY THE COURT THAT the motions to dismiss filed by defendants Watts Guerra, LLP, Mikal Watts, and Francisco Guerra (Doc. # 140), in which other defendants have joined (Doc. ## 142, 143, 144, 146), and by defendant Lowe Eklund Wakefield Co. (Doc. # 149) are hereby **granted in part and denied in part**,

as set forth herein.  The motions are granted with respect to Counts I, IV, V, VI, IX, X, XI, XII, and XIV of the amended complaint, and with respect to Count XIII to the extent based on an underlying fraud claim, and those claims are hereby dismissed.  The motion is denied with respect to the other remaining counts.

IT IS FURTHER ORDERED BY THE COURT THAT plaintiffs' motion for certification of a question to the Minnesota Supreme Court (Doc. # 197) is hereby **denied**.

IT IS FURTHER ORDERED BY THE COURT THAT plaintiff's motion for certification for interlocutory appeal or for remand (Doc. # 203) is hereby **denied**.

IT IS FURTHER ORDERED THAT the motion by Joanna and John Burke for reconsideration or review of the Magistrate Judge's order denying their motion to intervene in the action (Doc. # 167) is no longer moot.  Any response to that motion shall be filed on or before **August 26, 2019**, and any reply brief shall be filed on or before **September 9, 2019**.

IT IS SO ORDERED.

Dated this 13th day of August, 2019, in Kansas City, Kansas.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge