# UNITED STATES DISTRICT COURT
## DISTRICT OF KANSAS

Kenneth P. Kellogg, Rachel Kellogg
and Kellogg Farms, Inc., Roland B. Bromley
and Bromley Ranch, LLC, John F. Heitkamp,
Dean Holtorf, Garth J. Kruger, Charles
Blake Stringer and Stringer Farms, Inc.,
individually, and on behalf of all others
similarly situated,

    D. Kan. No. 18-cv-2408-JWL-JPO

    Master File No. 2:14-md-2591-JWL-JPO

    Syngenta MDL No. 2591

    D. Minn. No. 18-cv-1082-DWF-BRT

                  Plaintiffs,

v.

Watts Guerra, LLP, Daniel M. Homolka, P.A.,
Yira Law Office LTD, Hovland and Rasmus,
PLLC, Dewald Deaver, P.C., LLO, Mauro,
Archer & Associates, LLC, Johnson Law Group,
Wagner Reese, LLP, VanDerGinst Law, P.C.,
Patton, Hoversten & Berg, P.A., Cross Law Firm,
LLC, Law Office of Michael Miller, Pagel Weikum,
PLLP, Wojtalewicz Law Firm, Ltd., Lowe Eklund
Wakefield Co., LPA, Mikal C. Watts, Francisco
Guerra, and John Does 1-250,

                  Defendants.

---

**CLASS PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTIONS TO (1) CORRECT A CLERICAL ERROR IN THE AUGUST 13, 2019 MEMORANDUM AND ORDER, (2) VACATE THE SUBSTANTIVE RULINGS, (3) CERTIFY A QUESTION TO THE MINNESOTA SUPREME COURT, AND (4) VACATE ALL ORDERS, DISQUALIFY THE COURT AND STAY PROCEEDINGS PENDING REMAND**

Douglas J. Nill (#0194876)
DOUGLAS J. NILL, PLLC
d/b/a FARMLAW
2050 Canadian Pacific Plaza
120 South Sixth Street
Minneapolis, MN  55402-1801
(612) 573-3669

Counsel for Plaintiffs and Proposed Class of Farmers

# TABLE OF CONTENTS

I.     INTRODUCTION. ……………………………………………………..……… 1

II.    RULE 60 MOTIONS ARE USED TO CORRECT FACTUAL AND LEGAL ERRORS IN DISPOSITIVE ORDERS AND ADDRESS A TRIAL COURT'S IMPROPER FAILURE TO DISQUALIFY. ………………………………………………...…. 1

III.   CROSS LAW FIRM, LLC IS A DEFENDANT. …………………………..…….. 2

IV.   VACATE ORDER DISMISSING CIVIL CONSPIRACY CLAIM: A COMPLAINT CAN ALLEGE A CIVIL CONSPIRACY TO BREACH A FIDUCIARY DUTY. …... 3

V.    VACATE ORDER DISMISSING MINNESOTA COMMON LAW FRAUD CLAIMS: COMPENSATION CLAIMED BY LAWYERS WHO BREACH FIDUCIARY OBLIGATIONS IS A MONETARY DAMAGE TO CLIENTS. ………………..……. 4

      A.    There are two forms of monetary damages for clients injured by a lawyer's breach of fiduciary obligations: (1) compensation claimed by the lawyer for the transaction; and (2) an actual loss that may occur on the transaction.................. 5

      B.    Farmers show a monetary damage for the fraud claims through the $130 million in compensation awarded to Defendants in the Syngenta MDL settlement proceedings. ……………………………………………………….……… 5

      C.    The Court manifestly errs in dismissing Farmers' fraud claims on the basis that Farmers "will recover on the same basis" in the Syngenta MDL settlement if they had not been represented by Defendants. ………;;;;………………….……. 6

      D.    The Court manifestly errs in equating compensation claimed by lawyers who breach fiduciary obligations – a monetary damage – with actual losses to the client in the transaction at issue. ………………………………………..……. 7

      E.    The dismissal of the fraud claims while retaining the breach of fiduciary duty claim – a constructive fraud claim – is faulty reasoning. ………………..…... 8

VI.   VACATE ORDER ASSERTING FARMERS HAVE NOT ALLEGED AN INJURY TO "BUSINESS OR PROPERTY" FOR RICO CLAIMS: FARMERS ALLEGE DECEIT AND FARMERS' SHARE OF THE SYNGENTA MDL COMMON FUND IS FARMERS' PROPERTY. …………………………………………...……… 10

      A.    Farmers allege a breach of fiduciary duty based on Defendants' deceit and deceit confers standing for RICO claims. ………………………....…………….. 11

i

B. Farmers' share of the Syngenta MDL common fund is Farmers' property. ….. 12

VII. VACATE ORDER DISMISSING MINNESOTA STATUTORY CLAIMS: MINNESOTA SUPREME COURT ONLY REQUIRES A DETERMINATION OF WHETHER DEFENDANTS ENGAGED IN MISREPRESENTATIONS TO THE PUBLIC THROUGH ADVERTISEMENTS. ……………………………….....…… 13

A. Private actions implicating public rights are strongly encouraged under Minnesota law interpreting Minnesota business and consumer protection statutes and the Minnesota private attorney general statute. ….……………. 13

B. Minnesota Supreme Court only requires a determination of whether Defendants engaged in misrepresentations to the public through advertisements. ………... 14

C. Even if there would exist an injunction requirement – and there is no such requirement – Farmers' amended complaint requests injunctive relief, the MDL Panel recognized Farmers' request for injunctive relief, and Farmers have sought and shown a basis for injunctive relief. …………………………..… 16

D. The public benefit of *Kellogg* – a class action deterring attorney deceit – goes to the very heart of the legal profession. ……………………………………… 17

VIII. CERTIFY QUESTION OF CORRECT PUBLIC BENEFIT TEST FOR STATUTORY CLAIMS TO THE MINNESOTA SUPREME COURT: THE MINNESOTA SUPREME COURT SHOULD DECIDE A SIGNIFICANT ISSUE OF MINNESOTA PUBLIC POLICY. ……………………………………………………....…….. 19

A. Question for certification. ………………………………………….……………. 20

B. Certification procedure. …………………………………………………….. 20

IX. VACATE ALL ORDERS, DISQUALIFY AND STAY PROCEEDINGS PENDING DISQUALIFICATION AND REMAND TO THE DISTRICT OF MINNESOTA: THE COURT IS CONFLICTED AND A MATERIAL WITNESS TO CONTESTED FACTS AT TRIAL. …………….....…………………………………….....……… 21

A. Defendants conspired to secretly exclude 60,000 Farmers – without their knowledge and informed consent – from participating in Syngenta MDL and Minnesota class proceedings with Rule 23 protections including notice and opt-out procedures. ………………………………………………………………… 22

B. The Court is conflicted. ………………………………………………….. 23

C.     The Court is a material witness to contested facts at trial. ………..…………. 27

D.     Constitutional due process and the mandates of 28 U.S.C. § 455 require that the Court vacate the March 1, May 21 and August 13 orders and stay further proceedings until the Court is recused and *Kellogg* is remanded to the District of Minnesota. …………………………………………………………….……… 29

X.     CONCLUSION. …………………………………………………………...……….. 30

## TABLE OF AUTHORITIES

**Cases**

*Anixter v. Home-Stake Prod. Co*., 77 F.3d 1215 (10th Cir. 1996) …………..……………… 3

*Bennett v. Boyd Biloxi*, Civ. No. 14-0330 (S.D. Ala. July 8, 2016) ………………………... 2, 5

*Boubelik v. Liberty State Bank*, 553 N.W.2d 393  (Minn. 1996) ……………………….…… 14

*Buetow v. A.L.S. Enters, Inc*., 888 F.Supp.2d 956 (D. Minn. 2012) …………………………. 15

*Burrow v. Arce*, 997 S.W.2d 229 (Tex. 1999) …………………………………………..….. 5

*Caperton v. A.T. Massey Coal Co*., 556 U.S. 868, 129 S. Ct. 2252,
173 L.Ed.2d 1208 (2009) …………………………………………………………………….. 29

*Cashner v. Freedom Stores, Inc*., 98 F.3d 572 (10th Cir. 1996) …………………………….... 2

*Cedillo v. Igbanugo*, A18-0860 (Minn. App. May 20, 2019) ………………………………….. 19

*Church of the Nativity of Our Lord v. WatPro, Inc.*, 491 N.W.2d 1 (Minn. 1992) …………. 14

*Collins v. Minnesota School of Business*, 655 N.W.2d 320 (Minn. 2003) ……………....… 15

*Curtis v. Altria Group*, 792 N.W.2d 836 (Minn. App. 2010), *rev'd on other grounds*,
813 N.W.2d 891 (Minn. 2012) …………………………………………………………...… 15, 16

*Demodulation, Inc., v. United States*, No. 11-236C (Fed. Cl. Feb. 10, 2014) ……………….. 30

*Dronsejko v. Thornton*, 632 F.3d 658 (10th Cir. 2011) ……………………………….……… 2

*Duhaime v. John Hancock Mutual Life Ins Co*., 183 F.3d 1 (1st Cir. 1999) ………………… 25

*Duncan v. Bush*, 996 F.2d 310 (10th Cir. 1993) ……………………………………………… 3

*Eisen v. Carlisle and Jacquelin*, 417 U.S. 156 (1974) ………………………………….…… 23

*Fager v. CenturyLink Commc'ns, LLC*, 854 F.3d 1167 (10th Cir. 2016) ...………………….. 23

*General Motors Corp. v. Bloyed*, 916 S.W.2d 949 (Tex. 1996) ………………………….…. 25

*Group Health Plan v. Phillip Morris Inc.*, 621 N.W.2d 2 (Minn. 2001) …………………….. 14

*Harding v. Ohio Cas. Ins. Co*., 41 N.W.2d 818 (Minn. 1950) …………………………...… 3

*Hudock v. LG Elecs. U.S.A., Inc*., Civ. No. 16-1220 (D. Minn. 2017) ………………………. 16

*Huyer v. Wells Fargo & Co*., 295 F.R.D. 332 (S.D. Iowa 2013) …………………………… 12

*In re AH Robins Co., Inc*., 602 F. Supp. 243 (D. Kan. 1985) …………………………….….. 18

*In re Epipen (Epinephrine Injection, USP) Mktg., Sales Practices & Antitrust Litig*., MDL No. 2785, No. 17-md-2785-DDC-TJJ (D. Kan. 2018) …………………………...…… 12

*Kaufman v. Am. Express Travel Related Servs. Co*., 877 F.3d 276 (7th Cir. 2017) …………. 25

*Khoday v. Symantec Corp*., 858 F. Supp. 2d 1004 (D. Minn. 2012) ………………………...… 16

*LaFleur v. Teen Help*, 342 F.3d 1145 (10th Cir. 2003) ………………………………………..… 2

*Lehman Bros*. *v. Schein*, 416 U.S. 386 (1974) …………………………………………..… 20

*Liess v. Lindemyer*, 354 N.W.2d 556 (Minn. App. 1984) …………………………….…….… 14

*Liljeberg v. Health Services Acquisition Corp*., 486 U.S. 847 (1988) …………………..… 2, 30

*Ly v. Nystrom*, 615 N.W.2d 302 (Minn. 2000) ………………………………………...… 13, 14

*Maywalt v. Parker & Parsley Petroleum Co*., 67 F.3d 1072 (2d Cir. 1995) …………………. 25

*Mendez v. Republic Bank*, No. 12-cv–2585, WL 3821532 (7th Cir. July 25, 2013) …………... 2

*Meyer v. Christie*, 634 F.3d 1152 (10th Cir. 2011) …………………………………...……. 3

*Mullane v. Cent. Hanover Bank & Trust Co*., 339 U.S. 306 (1950) …………...……… 23, 24

*Pepsi-Cola Bottling Co. of Pittsburg, Inc v. Pepsico, Inc*., 431 F.3d 1241 (10th Cir 2005) ….. 3

*Perl v. St. Paul Fire and Marine Ins. Co*., 345 N.W.2d 209 (Minn. 1984) (*Perl II*) …….. 4, 5, 6

*Rice v. Perl*, 320 N.W.2d 407 (Minn. 1982) (*Perl I*) …………………………………….…… 4, 7

*Safe Streets Alliance v. Hickenlooper*, 859 F.3d 865 (10th Cir. 2017) …………….……… 12

*Sanders v. Townsend*, 509 N.E.2d 860 (Ind. App. 1987) …………………………………….. 8

*Select Comfort Corp. v. Tempur Sealy Int'l , Inc*., 11 F. Supp. 3d 933 (D. Minn. 2014) ……. 16

*Shakopee Mdewakanton Sioux Cmty. v. City of Prior Lake*, 771 F.2d 1153
(8th Cir. 1985) ………………………………………………………………………...… 20

*Sharp Farms v. Speaks*, 917 F.3d 276 (4th Cir. 2019) ………………………………………. 24

*State by Humphrey v. Alpine Air Prods., Inc.*, 500 N.W.2d 788 (Minn. 1993) ………...……. 14

*State by Humphrey v. Philip Morris, Inc.*, 551 N.W.2d 490 (Minn. 1996) ……………..…… 14

*Todd Enters, LLC v. MidCountry Bank*, A12-1635 (Minn. App. Aug. 12, 2013) ……….…… 8

*U.S. v. Page*, 828 F.2d 1476 (10th Cir. 1987) ………………………………………………….. 28

*U.S. Industries, Inc. v. Touche Ross & Co*., 854 F.2d 1223 (10th Cir. 1988) …………………3

*Wiegand v. Walser Auto. Grp., Inc.*, 683 N.W.2d 807 (Minn. 2004) …………………….…… 14

*Williams v. Pennsylvania*, 579 U.S. __, 136 S.Ct. 1899, 195 L.Ed.2d 132 (2016) ………..… 29

*Withrow v. Larkin*, 421 U.S. 35, 47, 95 S. Ct. 1456, 43 L.Ed.2d 712 (1975) …………….....… 29

*Wood v. Georgia*, 370 U.S. 375 (1962) …………………………………………………...… 18

**Statutes**

18 U.S.C. § 1961, *et seq*. ………………………………………………………………....… 9

18 U.S.C. § 1964 ……………………………………………………………………….…… 10

28 U.S.C. § 455 ………………………………………………………………….. 21, 22, 29, 30

28 U.S.C. §§ 2201 and 2202 …………………………………………………………….…….. 9

Minn. Stat. § 8.31, subd. 3a ………………………………………………………….. 20

Minn. Stat. §§ 325D.43-48 ……………………………………………………….…….…… 20

Minn. Stat. § 325F.67 ……………………………………………………………….……… 20

Minn. Stat. §§ 325F.68-70 …………………………………………………………….………20

Minn. Stat. § 480.065 …………………………………………………………...………20, 21

**Other Authorities**

Code of Judicial Conduct, Canon 1 ……………………………………………………….. 18

Thomas D. Morgan, *Sanction and Remedies for Attorney Misconduct*, 19 S. ILL. U. L. J. 343 (1995) ………………………………………………………………………...……… 5

*1 Newberg on Class Actions* § 3:72 …………………………………………………….… 25

U.S. Const. amends V and XIV …. ……………………………………………………...…21

**Rules**

Fed. R. Civ. P. 23 …………………………………………………..…………………… 22, 23, 24

Fed. R. Civ. P. 60 …………………………………………………………………...…. 1, 2

D. Kan. Rule 7.1 ……………………………………………………………………...…. 1, 20

D. Kan. Rule 7.2 …………………………………………………………….……… 1

D. Kan. Rule 7.3(a) ……………………………………………………………...…………. 1

## I.      INTRODUCTION.

The *Kellogg* Class Plaintiffs ("Farmers") respectfully request under Local Rule 7.1 and Rule 60 of the Federal Rules of Civil Procedure that the Court correct a clerical error in the August 13, 2019 memorandum and order, Clerk Doc. 213, vacate the substantive rulings, certify a question of the correct public benefit test for the Minnesota statutory claims to the Minnesota Supreme Court, and vacate the March 1, 2019 memorandum and order and judgment, Clerk Doc. 168 and 169, the May 21, 2019 memorandum and order, Clerk Doc. 196, and the August 13 memorandum and order, recuse as the judicial officer in *Kellogg* and stay the proceedings pending remand to the District of Minnesota.[1]

## II.     RULE 60 MOTIONS ARE USED TO CORRECT FACTUAL AND LEGAL ERRORS IN DEPOSITIVE ORDERS AND ADDRESS A TRIAL COURT'S IMPROPER FAILURE TO DISQUALIFY.

Farmers respectfully move the Court under Fed. R. Civ. P. 60 to correct a clerical error and vacate the substantive rulings in the August 13 memorandum and order on the basis that the Court's rulings are a manifest disregard of the facts and the law. *See* Rule 60(a) (clerical mistakes; oversights and omissions); 60(b)(1) (mistake) and (6) (any other reason that justifies relief); D. Kan. Local Rule 7.3(a) (a party may seek reconsideration of a dispositive order under Rule 60). The Tenth Circuit has recognized that a district court should grant relief under Rule 60(b) in "exceptional circumstances" such as "where

---

[1].  Farmers respectfully request oral argument on the motions before the Court pursuant to D. Kan. Rule 7.2.

the judge has made a substantive mistake of law or fact in the final judgment or order. *See Dronsejko v. Thornton*, 632 F.3d 658, 670 (10th Cir. 2011) (quoting *LaFleur v. Teen Help*, 342 F.3d 1145, 1153 (10th Cir. 2003); *Cashner v. Freedom Stores, Inc*., 98 F.3d 572, 578 (10th Cir. 1996) (reiterating that "certain substantive mistakes in a district court's rulings may be challenged by a Rule 60(b)(1) motion," but holding that such a motion must be filed within the time frame required for the filing of a notice of appeal); *see also Mendez v. Republic Bank*, No. 12-cv–2585, WL 3821532, at *4 and *7 (7th Cir. July 25, 2013) ("[W]here a district court judge is convinced of a legal or factual error, there is no purpose in prohibiting the court from remedying that error itself under the authority of Rule 60(b)(1) (mistake). … This conclusion is consistent with the Federal Rules of Civil Procedure's goal of securing a 'just, speedy and inexpensive' resolution of disputes and also spares parties of the effort and expense of 'preparing an appeal and educating a new court on the particulars of their case.'"). Farmers also proceed under Rule 60 to address the Court's improper failure to disqualify as the judicial officer in *Kellogg*. *Liljeberg v. Health Services Acquisition Corp*., 486 U.S. 847 (1988) (Fed. R. Civ. P. 60(b) is the appropriate remedy for a trial court's improper failure to disqualify).

## III.   CROSS LAW FIRM, LLC IS A DEFENDANT.

Farmers request under Rule 60(a) that the Court correct a clerical error in the August 13 memorandum and order. Cross Law Firm, LLC was served with the *Kellogg* complaint on July 10, 2018 and the affidavit of service was filed on March 27, 2019,

2

Clerk Doc. 171.

## IV.   VACATE ORDER DISMISSING CIVIL CONSPIRACY CLAIM: A COMPLAINT CAN ALLEGE A CIVIL CONSPIRACY TO BREACH A FIDUCIARY DUTY.

Farmers request that the Court vacate the August 13 order dismissing Count XIV of the *Kellogg* amended complaint, the civil conspiracy claim. Farmers properly plead a breach of fiduciary duty claim in Count VIII of the amended complaint, ¶¶ 417-24, and Farmers properly plead a civil conspiracy claim in Count XIV, ¶¶ 453-57. The civil conspiracy claim incorporates the factual allegations in the breach of fiduciary duty claim, ¶¶ 453-57.

It is black letter law that a breach of a fiduciary duty is a tort. Minnesota courts and all courts recognize that a complaint, like the *Kellogg* amended complaint, can allege a civil conspiracy to breach a fiduciary duty. *See Harding v. Ohio Cas. Ins. Co.*, 41 N.W.2d 818, 824 (Minn. 1950) (liability for conspiracy was of necessity predicated upon an underlying civil wrong); *see also Meyer v. Christie*, 634 F.3d 1152, 1156 (10th Cir. 2011) (plaintiffs properly alleged "the independent tort of breach of fiduciary duty" and civil conspiracy for the breach of fiduciary duty) (citing *Pepsi-Cola Bottling Co. of Pittsburg, Inc v. Pepsico, Inc*., 431 F.3d 1241, 1255 (10th Cir 2005) ('claims sounding in tort [include] breach of fiduciary duty"); *Pepsi Cola*, 431 F.3d at 1268 (a civil conspiracy requires an underlying tort); *Duncan v. Bush*, 996 F.2d 310 (10th Cir. 1993) (reinstating conspiracy claim based on underlying tort of outrageous conduct); *U.S. Industries, Inc. v.*

3

*Touche Ross & Co.*, 854 F.2d 1223, 1239 (10th Cir. 1988) (jury properly considered claims for breach of fiduciary duty and conspiracy to breach fiduciary duty), *rev'd on other grounds* by *Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215, 1231 (10th Cir. 1996).

## V.   VACATE ORDER DISMISSING MINNESOTA COMMON LAW FRAUD CLAIMS: COMPENSATION CLAIMED BY LAWYERS WHO BREACH FIDUCIARY OBLIGATIONS IS A MONETARY DAMAGE TO CLIENTS.

Farmers request that the Court vacate the August 13 order dismissing the Minnesota common law fraud claims. The Court wholesale disregards, misapplies or misinterprets the Minnesota Supreme Court's *Perl* rulings by failing to acknowledge that Defendants' fee and expense award in the Syngenta MDL is a monetary damage to Farmers. *Perl v. St. Paul Fire and Marine Ins. Co.*, 345 N.W.2d 209, 212-13 (Minn. 1984) (*Perl II*) (attorneys' fees claimed by lawyers who breach fiduciary obligations are "money damages" to clients). The compensation claimed by a lawyer who has breached fiduciary obligations to a client is a monetary damage to the client, whether the lawyer claims the fee or has actually captured the fee and placed the fee into his or her pocket. *Id.* at 212 (when a lawyer breaches fiduciary obligations "the client is entitled to recover, as damages, the compensation paid."). And the Court manifestly errs by misreading *Rice v. Perl*, 320 N.W.2d 407, 410 (Minn. 1982) (*Perl I*), to equate compensation claimed by lawyers who breach fiduciary obligations – a monetary damage – with actual losses to the client in the transaction.

**A.    There are two forms of monetary damages for clients injured by a lawyer's breach of fiduciary obligations: (1) compensation claimed by the lawyer for the transaction; and (2) an actual loss that may occur on the transaction.**

To be clear, there are two forms of monetary damages for clients injured by a lawyer's deceit and a breach of fiduciary obligations: (1) the compensation claimed by the lawyer for the transaction, *Perl II*, 345 N.W.2d at 213; and (2) an actual loss that may occur on the transaction. A lawyer who breaches fiduciary obligations to a client is required to forfeit his compensation for the transaction regardless of whether the client suffered an actual loss in the transaction as a result of the breach. *See, e.g.*, *Perl II*, 345 N.W.2d at 212 ("the client is deemed injured even if no actual loss results"); *Burrow v. Arce*, 997 S.W.2d 229 (Tex. 1999) (attorney must forfeit his compensation when that compensation is earned in violation of fiduciary obligations; causation and actual damages need not be proven as prerequisites to obtaining forfeiture for an attorney's breach of fiduciary obligations); Thomas D. Morgan, *Sanction and Remedies for Attorney Misconduct*, 19 S. ILL. U. L. J. 343, 351 (1995) (fee forfeiture is available even where client has suffered no loss as a result of attorney's alleged misconduct).

**B.    Farmers show a monetary damage for the fraud claims through the $130 million in compensation awarded to Defendants in the Syngenta MDL settlement proceedings.**

Farmers adequately plead a monetary damage for the fraud claims. The monetary damage is the approximate $130 million in attorneys' fees and expenses awarded by the Court to Defendants from the Syngenta MDL common fund in December 31, 2018 and

July 16, 2019 orders.

Farmers' pro rata share of the Syngenta MDL common fund is Farmers' property. The Court cannot unilaterally give Farmers' property to Defendants as compensation in the MDL settlement proceedings – long after the *Kellogg* complaint and amended complaint were filed – and then say that Farmers are not injured and have no monetary damage because the Court gave Farmers' property to the Defendants. The Court cannot moot Farmers' *Kellogg* lawsuit claims through unilateral actions in the Syngenta MDL settlement proceedings. The Court cannot moot Farmers' claims through circular reasoning and logical fallacies.

> **C.** **The Court manifestly errs in dismissing Farmers' fraud claims on the basis that Farmers "will recover on the same basis" in the Syngenta MDL settlement if they had not been represented by Defendants.**

The Court contends in the August 13 order at p. 6, as a reason for dismissing Farmers' fraud claims, that Farmers do not have a monetary damage because Farmers "will recover on the same basis" in the Syngenta MDL settlement if they had not been represented by Defendants and subject to Defendants' schemes of deceit. The Court wholesale misses the point. Whether Farmers were allowed back into the Syngenta MDL settlement and will "recover on the same basis" in the MDL if they had not been represented by Defendants is irrelevant to Farmers' fraud claims. *Perl II*, 345 N.W.2d at 212 ("the client is deemed injured even if no actual loss results"). Farmers have suffered a monetary damage as a result of Defendants' deceit and a breach of fiduciary

6

obligations, the approximate $130 million fee and expense award by the Court to Defendants in the Syngenta MDL settlement proceedings, and Farmers are entitled to a complete forfeiture of that fee and expense award as a monetary damage. Defendants' compensation in the Syngenta MDL is derived from the MDL common fund which is *Farmers' property*. Whether Defendants claim the compensation or have actually captured the compensation and placed the compensation in their pockets has no bearing on the fact that Farmers have suffered a monetary damage as adequately pled in the fraud claims in the *Kellogg* amended complaint.

> **D.  The Court manifestly errs in equating compensation claimed by lawyers who breach fiduciary obligations – a monetary damage – with actual losses to the client in the transaction at issue.**

The Court contends in the August 13 order at p. 6, as a reason for dismissing Farmers' fraud claims, that in *Perl I* "all claims requiring proof of damages were summarily dismissed." Again, the Court wholesale misses the point. Whether "all claims requiring proof of damages were summarily dismissed" in *Perl I* is a passing reference to claims alleging a *loss on the transaction* and irrelevant to Farmers' fraud claims alleging a monetary damage for the *compensation* awarded by the Court to Defendants in the Syngenta MDL settlement proceedings. In *Perl I*, despite the lawyer's breach of his fiduciary obligations and deceit, the client did not challenge the personal injury settlement procured by the lawyer. Thus, as in *Kellogg*, the client did not allege a loss on the transaction. *See, e.g.*, Judicial Panel on Multidistrict Litigation ("MDL Panel") Oct. 3,

2018 Order, ECF No. 153, Nill 4th Decl., Ex. 19 at pp. 2-3 and n. 4 ("the *Kellogg*

plaintiffs [are] not objecting to the MDL settlement or any fees awarded thereunder" but

request "an escrow order holding disputed funds until the claims in *Kellogg* have been

resolved.").

 What is plain from the Minnesota Supreme Court's *Perl* rulings is that a lawyer

who breaches fiduciary obligations is required to forfeit the lawyer's compensation as a

monetary damage to the client. A forfeiture of the lawyer's compensation was required in

the *Perl* cases even though the client did not challenge the personal injury settlement

negotiated by the lawyer and never alleged an actual loss on the transaction. The same

situation is present in *Kellogg*. Farmers allege in the *Kellogg* amended complaint that

Defendants' attorney fee and expense award in the Syngenta MDL is a monetary damage

for Farmers' fraud claims. *See, e.g.,* Amended Complaint at ¶¶ 358-60. Farmers have

never challenged the terms of the Syngenta MDL settlement and never alleged an actual

loss on the transaction.

  **E.**  **The dismissal of the fraud claims while retaining the breach of fiduciary duty claim – a constructive fraud claim – is faulty reasoning.**

 The dismissal of Farmers' fraud claims is illogical. A breach of a lawyer's

fiduciary obligations through deceit, as occurred in *Kellogg*, Amended Complaint at ¶

421, is a constructive fraud. *See, e.g., Todd Enters, LLC v. MidCountry Bank*, A12-1635,

slip op. at p. 7 (Minn. App. Aug. 12, 2013) ("'constructive fraud" is essentially another

way of characterizing a breach of fiduciary duties"); *Sanders v. Townsend*, 509 N.E.2d

860, 865 (Ind. App. 1987) (constructive fraud may occur within the framework of a fiduciary relationship). While retaining Farmers' breach of fiduciary duty claim, a constructive fraud with a monetary damage, the Court has dismissed Farmers' federal claims under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961, *et seq*., and the Minnesota common law fraud claims with an assertion that Farmers have not shown an injury and a monetary damage. And yet, Farmers' breach of fiduciary duty claim is a constructive fraud and a constructive fraud is a fraud. Plainly stated, Farmers' breach of fiduciary duty claim is a fraud claim.

And while retaining Farmers' breach of fiduciary duty claim, a constructive fraud with a monetary damage, the Court concludes that Defendants' compensation award in the Syngenta MDL is not a monetary damage for Farmers' federal claims and Minnesota fraud claims. Either the Court misunderstands the *Perl* rulings and the essence of a fee forfeiture claim, which presents a monetary damage to the client even if the money is not yet in the lawyer's pocket, or the Court is of the troubling opinion that Defendants can breach their fiduciary obligations to Farmers with no consequence.

If the Court is intending to apply a fiction that Defendants can breach their fiduciary obligations to Farmers but are not entitled to a forfeiture of Defendants' fee and expense award in the Syngenta MDL as a monetary damage to Farmers, because the Court contends that the award comes from fee allocation pools created by the Court and

9

not from Farmers' pro rata share of the common fund, then the Court has gutted the

Minnesota Supreme Court's rulings in *Perl* and the essence of attorney fee forfeiture

actions across the United States and arguably has failed to acknowledge an entire area of

law regarding fraudulent conduct by lawyers. The Court simply cannot ignore Farmers'

lawsuit claims in *Kellogg* and the substantial evidence of Defendants' deceit through four

years of omissions and misrepresentations and misconduct, and then give Farmers'

ownership interest in the Syngenta MDL common fund to the Defendants and proclaim

that Farmers have no injury and no monetary damage.

**VI.   VACATE ORDER ASSERTING FARMERS HAVE NOT ALLEGED AN INJURY TO "BUSINESS OR PROPERTY" FOR RICO CLAIMS: FARMERS ALLEGE DECEIT AND FARMERS' SHARE OF THE SYNGENTA MDL COMMON FUND IS FARMERS' PROPERTY.**

Farmers request that the Court vacate the statement and conclusion in the August

13 order that Farmers have not alleged an injury to "business or property" for Farmers'

RICO claims. *See* 18 U.S.C. § 1964(c). Farmers allege a breach of fiduciary duty based

on Defendants' deceit. *See* Amended Complaint at ¶ 421. The same lawyer misconduct

giving rise to claims under Minnesota breach of fiduciary duty law is addressed in federal

law by Farmers' adequately pled RICO claims detailing Defendants' corrupt enterprise

and conspiracy to deceive and exploit Farmers. *Id.* at ¶ 325(c) (*Mail And Wire Fraud*)

and ¶ 335 (*Obstruction Of Justice*). And Farmers' ownership interest in the Syngenta

MDL common fund is Farmers' property. Defendants claim an attorneys' fee and

expense award from the Syngenta MDL common fund and, therefore, claim a fee and

10

expense award from Farmers' property.

### A. Farmers allege a breach of fiduciary duty based on Defendants' deceit and deceit confers standing for RICO claims.

The Court contends on page 16 of the August 13 order that Farmers "have never cited a case involving no pecuniary loss in which a mere breach of fiduciary duty was held to be sufficient to confer standing to pursue RICO claims … ."  This statement disregards the factual basis for Farmers' breach of fiduciary duty claim, Count VIII in the *Kellogg* amended complaint. Farmers allege a breach of fiduciary duty based on Defendants' deceit. *See* Amended Complaint at ¶ 421:

> Defendants violate their fiduciary obligations and injure Farmers by deceptively soliciting Farmers to sign 40 percent contingent fee retainer contracts and secretly excluding Farmers, without their knowledge and informed consent, from participating in class certification proceedings against Syngenta in the MDL court in Kansas and Minnesota. *See supra* ¶¶ 97-320. Defendants violate their fiduciary obligations to Farmers by misleading the class action courts to allow Defendants to automatically exclude Farmers from the MDL and Minnesota class actions, thereby depriving Farmers of due process and the opportunity to exercise their individual right to be part of the class or opt-out of it. *See supra* ¶¶ 203-40. Defendants violate their fiduciary obligations through undisclosed fee share agreements with class counsel and efforts to extract an unreasonable fee. *See supra* ¶¶ 203-320.

As stated, the same lawyer misconduct giving rise to claims under Minnesota breach of fiduciary duty law is addressed in federal law by Farmers' adequately pled RICO claims detailing Defendants' corrupt enterprise and conspiracy to deceive and exploit Farmers. *See* Amended Complaint at ¶ 325(c) (*Mail And Wire Fraud*) ("[M]isleading the MDL and Minnesota courts, through material misrepresentations and

11

omissions, that Defendants had satisfied their ethical and fiduciary obligations by procuring informed consent from individual Farmers to be automatically excluded from the MDL and Minnesota class proceedings."); *id*. at ¶ 335 (*Obstruction Of Justice*) ("In particular, Defendants used the Joint Prosecution Agreement to mislead the MDL court, through material misrepresentations and omissions, that Defendants had satisfied their ethical and fiduciary obligations by procuring informed consent from individual Farmers to be automatically excluded from the MDL class proceedings during the litigation as set forth in ¶¶ 160-88."); *see, e.g.*, *Safe Streets Alliance v. Hickenlooper*, 859 F.3d 865, 885 (10th Cir. 2017) (civil RICO claims must be read broadly at the pleading stage and "we only need to determine whether the [plaintiffs] plausibly alleged injuries to their *property rights*") (emphasis in original); *In re Epipen (Epinephrine Injection, USP) Mktg., Sales Practices & Antitrust Litig.*, MDL No. 2785, No. 17-md-2785-DDC-TJJ (D. Kan. 2018) (rejecting the defendants' motion to dismiss RICO at the pleading stage when plaintiffs have articulated a plausible claim of injury and causation); *Huyer v. Wells Fargo & Co.*, 295 F.R.D. 332, 342-44 (S.D. Iowa 2013) (injunctive relief is available for a RICO violation even if a present monetary injury has not occurred).

### B.    Farmers' share of the Syngenta MDL common fund is Farmers' property.

The Court's statement on page 16 of the August 13 order that Farmers have not alleged an injury to "business or property" for the RICO claims, 18 U.S.C. § 1964(c), is a manifest disregard for 138 years of common fund jurisprudence. The monetary damages

to Farmers are the attorneys' fees and expenses claimed by Defendants from the

Syngenta MDL common fund and awarded to Defendants by the Court in December 31,

2018 and July 16, 2019 orders. Those fee and expense awards are derived from fee

allocation pools derived from the Syngenta MDL common fund. Farmers' pro rata share

of the Syngenta MDL common fund is Farmers' property.

## VII. VACATE ORDER DISMISSING MINNESOTA STATUTORY CLAIMS: MINNESOTA SUPREME COURT ONLY REQUIRES A DETERMINATION OF WHETHER DEFENDANTS ENGAGED IN MISREPRESENTATIONS TO THE PUBLIC THROUGH ADVERTISEMENTS.

Farmers request that the Court vacate the August 13 order dismissing the

Minnesota statutory consumer fraud, false advertising and deceptive practice claims. The

Court manifestly erred in dismissing the claims through a determination that the *Kellogg*

lawsuit does not request injunctive relief and, therefore, does not show a public benefit to

allow Farmers to assert the claims. *See Ly v. Nystrom*, 615 N.W.2d 302 (Minn. 2000)

(private action cannot be brought through Minnesota consumer fraud and false

advertising statutes unless it provides a "public benefit").

### A. Private actions implicating public rights are strongly encouraged under Minnesota law interpreting Minnesota business and consumer protection statutes and the Minnesota private attorney general statute.

The Minnesota Supreme Court has repeatedly stated that the Minnesota consumer

protection statutes and the private attorney general statute exist to encourage lawsuits

directed at fraudulent practices. For example, the Minnesota Consumer Fraud Act and the

13

private attorney general statute together "reflect a clear legislative policy encouraging aggressive prosecution of statutory violations." *Group Health Plan v. Phillip Morris Inc.*, 621 N.W.2d 2, 9-10 (Minn. 2001) (quoting *State by Humphrey v. Philip Morris, Inc.*, 551 N.W.2d 490, 495 (Minn. 1996)); *Ly*, 615 N.W.2d at 308. "The purpose of the private attorney general statute is to 'eliminate financial barriers to the vindication of a plaintiff's rights . . . and to provide incentive for counsel to act as private attorney general.'" *Church of the Nativity of Our Lord v. WatPro, Inc.*, 491 N.W.2d 1, 8 (Minn. 1992) (quoting *Liess v. Lindemyer*, 354 N.W.2d 556, 558 (Minn. App. 1984)).

The Consumer Fraud Act is broader than common law fraud and reduces the burden on plaintiffs in order to "make it easier to sue for consumer fraud than it had been to sue for fraud at common law." *Wiegand v. Walser Auto. Grp., Inc.*, 683 N.W.2d 807, 812 (Minn. 2004) (quoting *State by Humphrey v. Alpine Air Prods., Inc.*, 500 N.W.2d 788, 790 (Minn. 1993)). Because it is a remedial statute, it should be broadly and liberally construed in favor of consumers. *Boubelik v. Liberty State Bank*, 553 N.W.2d 393, 402 (Minn. 1996); *Ly*, 615 N.W.2d at 308. Aggressive enforcement of the Consumer Fraud Act is necessary to remedy the unequal bargaining power between consumers and sellers. *Wiegand*, 683 N.W.2d at 812 (*citing Ly*, 615 N.W.2d at 308).

B.   **Minnesota Supreme Court only requires a determination of whether Defendants engaged in misrepresentations to the public through advertisements.**

The Court has compounded error by applying the wrong test. The Minnesota

14

Supreme Court only requires a determination of whether Defendants are engaged in misrepresentations to the public through advertisements. Nothing more is required. *Collins v. Minnesota School of Business*, 655 N.W.2d 320 (Minn. 2003) (claims addressing program offered to the public at large, misrepresentations in TV ads, and misleading sales and information presentations establish a public benefit); *Curtis v. Altria Group*, 792 N.W.2d 836, 849-51 (Minn. App. 2010) (allegation of advertisements to public at large establishes public benefit), *rev'd on other grounds*, 813 N.W.2d 891, n. 6 (Minn. 2012) (assuming that the consumer fraud claims satisfy the public benefit standard).

The Minnesota appellate courts – the Minnesota Supreme Court and Court of Appeals – have never imposed – and explicitly *rejected* – a request for an injunctive relief by plaintiffs as a requirement for Minnesota's public benefit test, *see Curtis*, 792 N.W.2d at 849-50 (emphasis added) (federal court opinion imposing injunctive relief requirement does "*not have any precedential effect*" and "we decline [to narrow] a person's right to pursue an action [under the private Minnesota attorney general statute] by expanding restrictive conditions [a request for injunctive relief] not plainly stated in the statute"), and the Minnesota state appellate courts are the courts of consequence.[2]

---

[2]. The Court relies on *Buetow v. A.L.S. Enters, Inc*., 888 F.Supp.2d 956, 961 (D. Minn. 2012), to impose a requirement that injured consumers must allege a request for injunctive relief. *Buetow* is a federal district court decision issued on August 17, 2012, a little more than two months after the Minnesota Supreme Court's *Curtis* ruling on May 30, 2012. The Minnesota Supreme Court in *Curtis* effectively affirmed the Court of

**C.** **Even if there would exist an injunction requirement – and there is no such requirement – Farmers' amended complaint requests injunctive relief, the MDL Panel recognized Farmers' request for injunctive relief, and Farmers have sought and shown a basis for injunctive relief.**

Even if there would exist an injunction requirement – and there is no such requirement – Farmers' amended complaint plainly requests injunctive relief and the MDL Panel has recognized Farmers' request for injunctive relief. For example, the MDL Panel recognized in the Oct. 3, 2018 Order, ECF No. 153, Nill 4th Decl., Ex. 19 at pp. 2-3 and n. 4, that "the *Kellogg* plaintiffs [are] not objecting to the MDL settlement or any fees awarded thereunder" but request "an escrow order holding disputed funds until the claims in *Kellogg* have been resolved." The MDL Panel thus identified and affirmed Farmers'

---

Appeals' ruling that a public benefit can be shown through advertising to the public and explicitly rejecting an injunction test. *See Curtis*, 792 N.W.2d at 849-50 (federal court opinion imposing injunctive relief requirement does "not have any precedential effect" and "we decline [to narrow] a person's right to pursue an action [under the private Minnesota attorney general statute] by expanding restrictive conditions [a request for injunctive relief] not plainly stated in the statute"), and *Curtis*, 813 N.W. 2d at 901 n. 6 (assuming that the consumer fraud claims satisfy the public benefit requirement). The Minnesota Supreme Court and the Court of Appeals are the courts of consequence and not a federal court decision which departs from the state court rulings. If the Court wants to consider Minnesota federal court rulings which accurately represent the position of the Minnesota appellate courts, the Court should consider *Select Comfort Corp. v. Tempur Sealy Int'l , Inc.*, 11 F. Supp. 3d 933, 937 (D. Minn. 2014) (citing *Khoday v. Symantec Corp.*, 858 F. Supp. 2d 1004, 1017 (D. Minn. 2012) (advertising to significant segment of the public establishes public benefit) and *Hudock v. LG Elecs. U.S.A., Inc.*, Civ. No. 16-1220, slip op. at 13 (D. Minn. 2017) (plaintiffs show public benefit through "mass marketed misrepresentations … to the public; also arguably, "[t]he result of this lawsuit may, either directly or indirectly, benefit the public by causing [defendants] to redress the allegedly fraudulent marketing").

prospective request for injunctive relief. Farmers are the masters of the *Kellogg* complaint and are not required to request injunctive relief on Defendants' timeline.

Indeed, Farmers filed a motion for injunctive relief while *Kellogg* was pending in the District of Minnesota. *See* Clerk Doc. 50 ("*Plaintiffs' Motion For Class Certification And Injunctive Relief*") (May 29, 2018). Farmers filed the motion to request that any attorney fee award to Defendants in the Syngenta MDL be held in escrow pending resolution of *Kellogg*. Farmers' motion for preliminary injunctive relief and a hearing on the motion were removed from the calendar when *Kellogg* was transferred out of the District of Minnesota. Even so, Farmers have already filed a motion and shown a basis for injunctive relief and that motion may be refiled at an appropriate time. The plain fact is that Farmers have and will request injunctive relief in *Kellogg*, if Defendants make any effort to capture their attorney fee award and demand payment by the Syngenta MDL Claim Administrator from the MDL common fund bank account pending resolution of *Kellogg*. The Court's finding of no public benefit through an assertion that *Kellogg* does not seek injunction relief is demonstrably wrong on the law and the facts.

**D.    The public benefit of *Kellogg* – a class action deterring attorney deceit – goes to the very heart of the legal profession.**

Beyond the Court's application of the wrong legal standard, a standard rejected by the Minnesota appellate courts,[3] and a plain disregard of the *Kellogg* amended complaint,

---

[3].   The *Erie* doctrine strikes a balance between federal and state power by restraining the federal judiciary to apply state law and defer to state interpretation of its

which requests injunctive relief, it is unfortunate that the Court cannot see the public benefit in a class action addressing attorney deceit and misconduct.

The public benefit of *Kellogg* goes to the very heart of the legal profession. *Kellogg* is a class action alleging that Defendants pursued a scheme of deceit targeting corn growers across the United States with allegations of a fraud upon the Syngenta MDL and Minnesota courts in furtherance of the scheme of deceit. *See In re AH Robins Co., Inc.*, 602 F. Supp. 243, 248 (D. Kan. 1985) (Canon 1 of the Code of Judicial Conduct for United States Judges imposes an *obligation* to "uphold the integrity of the judiciary" through "the prevention of any possible fraud from being perpetrated upon the courts.") (emphasis added) (quoting *Wood v. Georgia*, 370 U.S. 375, 383 (1962) ("The right of courts to conduct their business in an untrammeled way lies at the *foundation of our system of government* … .") (emphasis added)). Defendants solicited Farmers as clients through deceit and secretly traded their legal rights for money and favors. Defendants never disclosed to Farmers the money they agreed to pay MDL and Minnesota class counsel – a share of Farmers' recovery from Syngenta (Farmers' money) – in exchange for (1) the exclusion of Farmers from the class proceedings, and (2) agreements that class counsel would not contest Defendants' 40 percent contingent fee contracts with

---

laws when doing so. The Court's use of the wrong legal standard for the public benefit test is a form of judicial activism in violation of the *Erie* doctrine and federal and state powers.

individual farmers. At all times since the inception of Defendants' "mass tort …

individual suit" attorney fee fraud scheme, Defendants placed their self-dealing financial

interests above Farmers' interests.

## VIII. CERTIFY QUESTION OF CORRECT PUBLIC BENEFIT TEST FOR STATUTORY CLAIMS TO THE MINNESOTA SUPREME COURT: THE MINNESOTA SUPREME COURT SHOULD DECIDE A SIGNIFICANT ISSUE OF MINNESOTA PUBLIC POLICY.

If Defendants contest a plain reading of the Minnesota Supreme Court standard,

which does not impose a requirement that a consumer lawsuit must request injunctive

relief, Farmers request that the Court certify the question of the correct public benefit test

for the application of Minnesota's statutory consumer protection claims by private

litigants, to the Minnesota Supreme Court. As a matter of judicial prudence and

deference, the Court should allow the Minnesota Supreme Court to decide a significant

issue of Minnesota public policy; a correct interpretation of Minnesota law as enacted by

the Minnesota legislature.[4]

---

[4]. In an August 20, 2019 order, the Minnesota Supreme Court denied review of a ruling by the Court of Appeals in *Cedillo v. Igbanugo*, A18-0860 (Minn. App. May 20, 2019), affirming a February 13, 2018 decision by the Honorable Mel I. Dickstein in the Fourth Judicial District Court (Hennepin County) that the Minnesota Consumer Fraud Act applies to deceptive conduct by a law firm and that the defendant lawyers' argument to the contrary had "*no basis in law or public policy.*" *See Kellogg* Clerk Doc. 210 (Farmers' supplemental authority letter with Exhibits 1-4 (Minnesota court rulings and petition for further review and response). Thus, Defendants' argument that the Minnesota statutory claims do not apply to deceptive conduct by lawyers was rejected as frivolous by the Minnesota courts.

**A.      Question for certification.**

Farmers respectfully move the Court under Local Rule 7.1 and Minn. Stat. §

480.065 to certify to the Minnesota Supreme Court the following question:

> Whether misrepresentations by law firm defendants to the public through advertisements, town hall meetings, direct mail solicitations, websites, media interviews, and videos widely distributed to corn growers across the United States establish a public benefit sufficient for 60,000 corn growers to assert lawsuit claims against the defendants under the Prevention Of Consumer Fraud Act, Minn. Stat. §§ 325F.68-70, False Statement In Advertisement Act, Minn. Stat. § 325F.67, and Uniform Deceptive Trade Practices Act, Minn. Stat. §§ 325D.43-48, and through the private attorney general statute, Minn. Stat. § 8.31, subd. 3a.

**B.      Certification procedure.**

Pursuant to the Uniform Certification of Questions of Law Act (1997), Minn. Stat.

§ 480.065, the Minnesota Supreme Court may answer a question of law certified to it by

a federal court "if the answer may be determinative of an issue in pending litigation in the

certifying court and there is no controlling appellate decision, constitutional provision, or

statute of [the state of Minnesota]" that would resolve the issue. Minn. Stat. § 480.065,

subd. 3. The Eighth Circuit has indicated that the power to certify a question should be

utilized sparingly, such as when there is a particularly close question of state law lacking

controlling judicial or legislative guidance. *See Shakopee Mdewakanton Sioux Cmty. v.*

*City of Prior Lake*, 771 F.2d 1153, 1157 n.2 (8th Cir. 1985). It is clear, however, that the

decision ultimately "rests in the sound discretion" of the district court. *Lehman Bros. v.*

*Schein*, 416 U.S. 386, 391 (1974).[5]

## IX.   VACATE ALL ORDERS, DISQUALIFY AND STAY PROCEEDINGS PENDING DISQUALIFICATION AND REMAND TO THE DISTRICT OF MINNESOTA: THE COURT IS CONFLICTED AND A MATERIAL WITNESS TO CONTESTED FACTS AT TRIAL.

Farmers request that the Court vacate the March 1 order and judgment and the

May 21 and August 13 orders and recuse as the judicial officer in *Kellogg* pursuant to

Farmers' substantive and procedural rights under the Due Process Clause of the Fifth and

Fourteenth Amendments of the U.S. Constitution, U.S. Const. amends. V and XIV, and

the statutory mandates of 28 U.S.C. § 455(a) ("bias or partiality") and § 455(b)(1)

("personal knowledge of disputed evidentiary facts concerning the proceeding") and §

455(b)(5)(iv) ("likely to be a material witness in the proceeding").[6]

---

[5].  Several procedural requirements are mandated by Minnesota law in order to effectuate certification. Most pertinently, the certifying court must issue an order containing: (1) the question of law to be answered; (2)  the facts relevant to the question; (3) a statement acknowledging that the Minnesota Supreme Court may reformulate the question; and (4) the names and addresses of counsel of record and parties appearing without counsel. Minn. Stat. § 480.065, subd. 6.

[6].  Section 455 states, in pertinent part:

(a)     Any … judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

(b)     He shall also disqualify himself in the following circumstances:

(1)     Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding; …

**A. Defendants conspired to secretly exclude 60,000 Farmers – without their knowledge and informed consent – from participating in Syngenta MDL and Minnesota class proceedings with Fed. R. Civ. P. 23 protections including notice and opt-out procedures.**

Defendants schemed to use the mass tort, product liability model to dupe unsuspecting Farmers into signing 40 percent contingent fee retainer contracts with Defendants to pursue individual lawsuits in the Minnesota state courts. Farmers were secretly excluded, without their knowledge and informed consent, from participating in the Syngenta MDL and Minnesota class proceedings with Fed. R. Civ. P. 23 protections including notice and opt-out procedures. Amended Complaint at ¶¶ 203-32 (joint prosecution agreements between Defendants and other lawyers automatically excluding Farmers from Syngenta MDL and Minnesota class proceedings without Farmers' knowledge and informed consent).[7] *Id.* at ¶¶ 1-336 and 4th Nill Decl., Ex. 1-60.

---

(5)    He …
(iv)    Is to the judge's knowledge likely to be a material witness in the proceeding.

28 U.S.C. § 455(a), (b)(1) and (b)(5) (emphasis added).

[7]. Defendants did not even acknowledge the joint prosecution agreements to Farmers until 16 months had passed and then only in passing with no discussion of terms and litigation options. Amended Complaint at ¶¶ 213-32. And Defendants did more than just opt-out their already signed clients. Defendants advertised and solicited and signed Farmers to contingent fee contracts – Farmers who were putative members of the Syngenta MDL and Minnesota class actions – long after Defendants had already opted those very Farmers out of the class action proceedings without their knowledge and informed consent. Amended Complaint at ¶¶ 1-336 and 4th Nill Decl., Ex. 1-60. As a matter of law, Defendants breached their fiduciary and ethical obligations to Farmers. No rational court or reasonable person could conclude otherwise.

22

B.    **The Court is conflicted.**

The Court made a mistake in relying on private lawyer agreements, the joint

prosecution agreements, discussed at length at ¶¶ 203-32 of the *Kellogg* amended

complaint, to allow Defendants to automatically remove 60,000 corn growers from the

Rule 23 protections for absent class members. The fundamental issue is whether private

attorneys, representing individual clients, can agree to pay class counsel a portion of their

attorneys' fees to have their clients excluded from the class definition, and in turn avoid

the mandatory Rule 23 court-authorized class notice and opt-out process. The answer is

an emphatic no. More than a half century ago, the United States Supreme Court

*mandated* the due process standard that notice must be "reasonably calculated, under all

the circumstances, to apprise interested parties of the pendency of the action and afford

them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust

Co.*, 339 U.S. 306, 313 (1950). Twenty years later, the Supreme Court reaffirmed this

position, unequivocally stating, "[n]otice to identifiable class members *is not* a

discretionary consideration to be waived in a particular case. It is, rather, an unambiguous

requirement of Rule 23." *Eisen v. Carlisle and Jacquelin*, 417 U.S. 156, 176 (1974)

(emphasis added). Notice exists to vindicate absent class members' due process rights by

ensuring they – *and they alone* – are the final arbiter of whether to participate in the class.

*Id.* at 175; *see also Fager v. CenturyLink Commc'ns, LLC*, 854 F.3d 1167, 1171 (10th

Cir. 2016) (recognizing the *Mullane* due process standard is "coextensive with the requirements of Fed. R. Civ. P. 23(c)(2) which states that class-action notice must … include[] *individual notice* to all members who can be identified through reasonable effort.") (emphasis added).

The Court violated its fiduciary obligations to Farmers by not reviewing and rejecting the joint prosecution agreements as the product of collusion and an exchange of money and favors at the expense of absent class members.[8] *See* MDL Clerk Doc. 403 at p. 16 ("no basis for the Court to interject itself at this time into private contractual relationships"); Doc. 935 at 8-9 ("[no] requirement or proper reason for the Court to approve a side agreement [between Defendants and MDL class counsel"). The Court violated fiduciary obligations by allowing the automatic opt-outs from Syngenta MDL class proceedings. *See* Fed. R. Civ. P. 23(c)(2)(B) (requiring "individual notice" to absent class members "that the court will exclude from the class any member who requests exclusion") and 23(d) (safeguard the due process rights of putative class members). *See Sharp Farms v. Speaks*, 917 F.3d 276, 292-95 (4th Cir. 2019) (district court abused

---

[8]. The language in the joint prosecution agreements that class counsel would not contest Defendants' 40 percent contingent fee contracts with individual farmers is the height of collusion at the expense of absent class members. *See*, e.g., Amended Complaint at ¶ 224 (directing MDL class counsel to "refrain from interfering with or altering the terms and conditions of any fee agreement with any of [Defendants] clients.") (JPA at p. 14 ¶ iii).

discretion in failing to evaluate settlement agreement for *signs of collusion* between counsel at the expense of class members); *Kaufman v. Am. Express Travel Related Servs. Co.*, 877 F.3d 276, 283 (7th Cir. 2017) ("[W]e have repeatedly stated that district courts should act as the fiduciary of the class, subject to the high duty of care that the law requires of fiduciaries."); *Duhaime v. John Hancock Mutual Life Ins Co.*, 183 F.3d 1, 4-5 (1st Cir. 1999) (courts examine side agreements in class actions not to ensure the fairness of the agreement but to address whether there is a conflict of interest and protect the rights of absent class members); *Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1078 (2d Cir. 1995) ("the district court has a fiduciary responsibility to ensure that the settlement is fair and not a product of collusion, and that the class members' interests were represented adequately"); *Bennett v. Boyd Biloxi*, Civ. No. 14-0330, slip op. at p. 6 (S.D. Ala. July 8, 2016) (the lawyers who seek to intentionally exclude absent class members from class certification notice "*identify no authority empowering the Court to exclude particular class members from the class simply by saying they are excluded …* [m]ore fundamentally, however, the parties have not demonstrated that these individuals should be excluded from the class.") (emphasis added); *see also 1 Newberg on Class Actions* § 3:72, at 394 (explaining that "judges provide the primary oversight of class counsel, and they have long utilized the adequate representation requirement of Rule 23(a)(4) to do so"); (emphasis added); *General Motors Corp. v. Bloyed*, 916 S.W.2d 949, 954 (Tex. 1996) (trial court bears the burden to police class proceedings to minimize

conflicts of interest and protect absent class members).

The Court violates fiduciary obligations by ignoring the substantial evidence that Defendants used the joint prosecution agreements to exploit Farmers, who were putative members of the Syngenta MDL class action at the time the agreements were employed. The Court violates fiduciary obligations by giving Farmers' ownership interest in the Syngenta MDL common fund to the Defendants as compensation in the Syngenta MDL and then concluding through circular reasoning – a logical fallacy – that Farmers do not have an injury and a compensatory damage for their *Kellogg* lawsuit claims.

The Court violates fiduciary obligations by wholesale disregarding, misapplying or misinterpreting the Minnesota Supreme Court's *Perl* rulings and failing to acknowledge that Defendants' compensation in the Syngenta MDL is a monetary damage to Farmers. The Court violates its fiduciary obligations by inexplicably misreading *Perl I* to equate compensation claimed by lawyers who breach fiduciary obligations – a monetary damage – with actual losses to the client in the transaction.

The Court violates fiduciary obligations by apparently excusing Defendants' gross attorney deceit and misconduct through a "no harm, no foul" contention that Farmers will "recover on the same basis" in the Syngenta MDL if they had not been represented by Defendants. In an effort to excuse Defendants' gross misconduct through four years of deceit, the Court has gone where no other court has gone. In the grand history of 243 years of American jurisprudence, no other court has excused a scheme of deceit through a

26

conclusion that the ends justify the means.

The Court violates fiduciary obligations with an unfortunate claim that *Kellogg* does not present a public benefit. Defendants pursued their deceptive "mass tort … individual suit" contingent fee fraud scheme through town hall meetings, direct mail solicitations, websites, media interviews, and videos widely distributed to corn growers across the United States. Amended Complaint at ¶¶ 109-96. The public benefit of a class action deterring attorney deceit goes to the very heart of the legal profession.

### C.      The Court is a material witness to contested facts at trial.

The Court has personal knowledge of disputed evidentiary facts in *Kellogg*, personal knowledge gained in the Syngenta MDL litigation, and is likely to be a material witness at trial. Farmers plead fraud upon the court and an obstruction of justice as the explanation for why the Court allowed the automatic opt-outs and one of the reasons why Defendants breached their fiduciary obligations to Farmers. *See, e.g.*, Amended Complaint at ¶¶ 203-32 and 421 (Defendants violated their fiduciary obligations to Farmers "by *misleading the class action courts* to allow Defendants to automatically exclude Farmers from the MDL and Minnesota class actions, thereby depriving Farmers of due process and the opportunity to exercise their individual right to be part of the class or opt-out of it.") (emphasis added).

The Court's knowledge about what occurred that is relevant to the *Kellogg* lawsuit claims is extrajudicial. *Kellogg* and the Syngenta MDL cases are *different cases* and the

Court will likely be called in *Kellogg* to testify about events in the Syngenta MDL; hence, extrajudicial knowledge. *U.S. v. Page*, 828 F.2d 1476, 1481 (10th Cir. 1987) (§ 455(b)(1) calls for recusal when a judge has "personal knowledge of disputed evidentiary facts concerning the proceeding." …This rule applies to knowledge which the judge obtained extrajudicially, e.g., … by witnessing the events at issue in the proceeding."). The *Page* court defined extrajudicial knowledge as knowledge for "an opinion on the merits on some basis other than what the judge learned from his participation *in the case*." *Id.* (emphasis added).

Again, to be clear, the case before the Court is *Kellogg*. The Court will likely be called as a witness in *Kellogg* to testify about events personally involving the Court in critical decisions in the Syngenta MDL; that is, whether Defendants misled the Court through the language in the joint prosecution agreements and statements to exclude Farmers from the Syngenta MDL class proceedings in disregard of Farmers' due process rights; hence, extrajudicial knowledge.

The Court should acknowledge it made a mistake and recognize that *Kellogg* seeks to remedy that mistake. But rather than recognizing that *Kellogg* seeks to remedy a mistake, and that the *Kellogg* lawsuit claims should proceed on the merits as an independent action, the Court has consistently adopted the Defendants' mischaracterizations of Farmers' lawsuit claims and the facts of the amended complaint and the governing law, to deny Farmers their day in court. Farmers have lost confidence

that the Court is neutral and unbiased. There are reasonable grounds for Farmers' concerns as demonstrated in the repeated rulings of the Court denying the injury and the harm to Farmers due to Defendants' misconduct. *See* 28 U.S.C. § 455(a) ("Any … judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.").

> **D.      Constitutional due process and the mandates of 28 U.S.C. § 455 require that the Court vacate the March 1, May 21 and August 13 orders and stay further proceedings until the Court is recused and *Kellogg* is remanded to the District of Minnesota.**

Constitutional due process and the mandates of 28 U.S.C. § 455 compel the Court's recusal. Recently, the Supreme Court announced a new rule that there is "an impermissible risk of actual bias when a judge earlier had significant, personal involvement as a prosecutor in a critical decision regarding the defendant's case." *Williams v. Pennsylvania*, 579 U.S. __, 136 S. Ct. 1899, 195 L.Ed.2d 132 (2016). This new rule applies with equal force in *Kellogg* because the Court will likely be called as a witness in *Kellogg* to testify about events personally involving the Court in critical decisions in the Syngenta MDL; that is, whether Defendants misled the Court in the Syngenta MDL litigation through the language in the joint prosecution agreements and statements to exclude Farmers from the Syngenta MDL class proceedings in disregard of Farmers' due process rights. The Court is conflicted and the likelihood of bias "'is too high to be constitutionally tolerable.'" *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 872 (2009) (quoting *Withrow v. Larkin*, 421 U.S. 35 (1975).

Constitutional due process and 28 U.S.C. § 455 thus compel the Court to vacate the March 1 order and judgment and the May 21 and August 13 orders as the product of the Court's conflicted role and violations of Farmers' substantive and procedural due process rights and stay further proceedings until the Court is recused or disqualified by the Tenth Circuit or the Supreme Court of the United States or the MDL Panel and *Kellogg* is remanded to the District of Minnesota. The Court is conflicted and the *Kellogg* litigation is in the early stages and discovery has not commenced. Farmers should not have to incur "the time and expense to pursue [*Kellogg*] to completion, only to have the appellate court rule that the case must begin anew … [t]hus the safest course is to vacate [the Court's] substantive orders because 'justice must satisfy the appearance of justice.'" *Demodulation, Inc., v. United States*, No. 11-236C, slip op. at p. 3 (Fed. Cl. Feb. 10, 2014) (quoting *Liljeberg.,* 486 U.S. at 864).

## X.      CONCLUSION.

Farmers respectfully request that the Court grant Farmers' motions and vacate the March 1 order and judgment and the May 21 and August 13 orders and disqualify or recuse as the judicial officer in *Kellogg* and stay the proceedings pending remand to the District of Minnesota.

Dated: September 10, 2019

Respectfully submitted,

By: /s/ Douglas J. Nill

    Douglas J. Nill (MN #0194876)

DOUGLAS J. NILL, PLLC

30

d/b/a FARMLAW
2050 Canadian Pacific Plaza
120 South Sixth Street
Minneapolis, MN  55402-1801
(612) 573-3669
dnill@farmlaw.com

Counsel for Plaintiffs and Proposed
Class of Farmers